UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY MAYER,<br><br>        Plaintiff,<br><br>    v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, et al.,<br><br>        Defendants. | Case No.  25-cv-00182-NW   (SVK)<br><br>**CORRECTED ORDER ON DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 126, 127, 128, 129, 130, 139, 140, 141, 142, 143, 144, 145 |

Before the Court are nine discovery disputes filed at the close of fact discovery, seven by Plaintiff and two by Defendants.  These matters may all be resolved without further oral argument. Civ. L.R. 7-1(b).  Having considered the relevant facts, law and extensive litigation history between the Parties and in this action in particular, the Court rules as set forth herein.

For ease of reference, the disputes are summarized in the following table:

| Joint Submission Dkt. No. | Supplemental submissions Dkt. No. | Propounding Party | Dispute Subject Matter |
|---|---|---|---|
| 126 | 141 | Plaintiff | Pierre deposition and emails – challenge to attorney-client privilege |
| 127 | 141 | Plaintiff | Drexel deposition and emails – challenge to attorney-client privilege |
| 128 | 141 | Plaintiff | Pierre deposition and emails – challenge to attorney-client privilege |
| 129 | | Plaintiff | Defendants' document production |
| 130 | 143, 145 | Plaintiff | Defendants' supplemental interrogatory responses |

| 139 | | Defendant | Third-party production of documents - Argus Home Loans |
|---|---|---|---|
| 140 | | Defendant | Protective order re former in-house counsel |
| 142 | | Plaintiff | Defendant's document production |
| 144 | | Plaintiff | Defendants' 30(b)(6) deposition testimony |

Most of Plaintiff's dispute statements challenge Defendants' claims of attorney-client privilege, which Plaintiff seeks to abrogate and thereby gain additional documents and take additional depositions. At a short interim hearing to respond to specific questions raised by the Court, Plaintiff offered the following perspective:

> [T]here are these five pending discovery disputes, three of which we're talking about today. There are five more that are going to be filed in the next few days, and all of them are centered around the same concept of privilege. So, the reason I bring this up is because I -- we would suggest that the Court do all of these together because it's all the universal -- the resolution for all of these comes to the same thing, which is this blanket claim of privilege. And I just want to put in front of the Court that we have extensive evidence in this case that all of these witnesses and these things they're claiming are privileged in these emails, but they are not. They're acting as business agents, not giving legal advice.

Dkt. 138 (2/19/26 Hrg. Tr.) at 17:7-20. Plaintiff further urged:

> So, in reviewing these 10 discovery disputes, our position fundamentally is they have not met their burden to show that anything is privileged, and the Court can end it at that.

*Id.* at 18:4-7.

The Court concurs with Plaintiff's characterization that a core issue as to most of the disputes is Defendants' claim of privilege. Accordingly, the Court addresses the disputes set forth at Dkts. 126, 127, 128, 129, 140, 141[1] and 142 collectively, as Plaintiff requests.

## I.    RELEVANT FACTS

Plaintiff first sued Defendants in 2017 for failure to properly administer his home loan. Dkt. 34 (First Amended Complaint) ¶ 15. The Parties litigated the dispute for three years before

---

[1] Dkt. 141 was a Court-requested supplementation to address non-privilege related issues raised in Dkts. 126-128.

United States District Court
Northern District of California

United States District Court
Northern District of California

settling in 2020. *Id*. ¶ 17. In 2021 and again in 2024, Plaintiff filed motions to enforce the settlement agreement in state court, alleging failures of Defendants to properly carry out terms of the settlement agreement. *Id.* at ¶¶ 18-42, 43, and 49. In 2025, Plaintiff filed a new action in state court, which Defendants removed to this court. *Id.* at ¶¶ 52 and 54. The present action, like the motions to enforce that preceded it, alleges a parade of irregularities by Defendants in administering the terms of the 2020 settlement agreement.

## II.     ATTORNEY-CLIENT PRIVILEGE[2]

### A.     The appropriate legal standards

Relevant to the case at hand, the attorney-client privilege protects "confidential communications between a client and his or her attorney" in the course of the attorney-client relationship "regardless of whether the information transmitted is otherwise privileged." *DP Pham, LLC v. Cheadle*, 246 Cal. App. 4th 653, 664, 666 (2016) (citing *Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725, 732 (2009)). The protection the privilege provides is absolute and prevents the disclosure of any part of a privileged communication regardless of its content or any particularized need for disclosure. *DP Pham*, 246 Cal. App. 4th at 666 (citing *Kerner v. Super. Ct.,* 206 Cal. App. 4th 84, 111 (2012)).[3]

### B.     Establishing the privilege

In asserting privilege, a party must provide sufficient information to allow for evaluation of the assertion, such as each document for which privileged is claimed, its author, date of preparation, recipients and the specific privileged claimed. *See Bank of America*, *N.A. v. Super. Ct.*, 212 Cal. App. 4th 1076, 1098 (2013); *Hernandez v. Super. Ct.*, 112 Cal. App. 4th 284, 291 n.6 (2003). This information in a privilege log may satisfy a party's burden of establishing the

---

[2] Although Defendants' privilege log asserts both attorney-client privilege and attorney work-product protections, Plaintiff's arguments are directed only to attorney-client privilege, therefore the Court's analysis and holdings are similarly focused.

[3] In the Joint Submissions concerning attorney-client privilege issues, both sides rely primarily on California law. The Parties do not identify any meaningful differences between state or federal law on the relevant privilege issues in this case, and, as discussed in section II.D.5. below, the Court concludes that the outcome on the key points discussed below would be the same under federal law.

United States District Court
Northern District of California

preliminary facts necessary to invoke privilege. *See Bank of America*, 212 Cal. App. 4th at 1099-1101. Furthermore, "[t]he privilege is not limited to confidential communications between attorney and client, but may also encompass internal client communications that contain a discussion or summary of counsel's legal advice." *AdTrader, Inc. v. Google LLC,* 405 F. Supp. 3d 862, 865 (N.D. Cal. 2019) (citing *Zurich Amer. Ins. Co. v. Super. Ct.,* 155 Cal. App. 4th 1485, 1502, 1503 (2007); and *Ins. Co. of N. Am. v. Super. Ct.*, 108 Cal. App. 3d 758, 766 (1980)).

### C.    Challenging the privilege

"Once [the party claiming privilege] establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco,* 47 Cal. 4th at 733 (citing Cal. Evid. C. § 917(a)); *Wellpoint Health Networks, Inc. v. Super. Ct.*, 59 Cal. App. 4th 110, 123-24 (1997)). The court in *Ritchie v. Sempra Energy* found that:

> Here, there are no facts from which this Court could conclude that defendant is "over-reaching" by withholding non-privileged attachments or withholding relevant factual and investigative materials by attaching them to privileged documents. As noted above, defendant submitted enough information to support a *prima facie* claim of privilege as to all of the documents on the privilege log. Plaintiff has offered nothing but speculation that defendant has no viable claim of privilege as to any or all of the attachments listed on the privilege log.

No. 10CV1513-CAB(KSC), 2015 WL 12912030, at *8 (S.D. Cal. June 10, 2015).

Additionally, the Court cannot use in-camera review to determine whether privilege applies. "[I]t is neither customary nor necessary to review the contents of the communication in order to determine whether the [attorney-client] privilege applies...." *DP Pham*, 246 Cal. App. 4th at 666 (quoting *Cornish v. Super. Ct.*, 209 Cal. App. 3d 467, 480 (1989)). A court's determination of whether the privilege applies "does not involve the nature of the communications or the effect of disclosure but rather the existence of the relationship at the time the communication was made, the intent of the client and whether the communication emanates from the client." *DP Pham*, 246 Cal. App. 4th at 666 (citing *Cornish*, 209 Cal. App. 3d at 480; *Costco*, 47 Cal. 4th at 739).

### D.    Attorney-Client Privilege:  Discussion

Defendants' privilege log in this case provides the date prepared; a general description (*e.g.,* email); the subject matter (*e.g.*, Borrower's loan/litigation); the purpose of the communication; the author, recipients and cc's; and the basis for the privilege.  *See, e.g.,* Dkt. 128-3; 142-5; 142-6.  The logs also provide job titles for most, albeit not all, authors/recipients as required by the Court's standing order.  Accordingly, the Court finds that the privilege log provides sufficient factual basis to invoke the privilege*. Hernandez,* 112 Cal. App. 4th at 291 n.6.

The Court now turns to Plaintiff's challenges to Defendants' privilege log, which are repeated throughout the Joint Submissions and can be summarized as follows:

1.  "The evidence shows in-house and outside counsel were acting as business agents engaged in servicing the loan after the settlement agreement, not giving legal advice." Dkt. 127 at 5; Dkt. 128 at 6; Dkt. 140 at 9.[4]

2.  Documents withheld as privilege should be produced under the "crime-fraud" exception.  Dkt. 140 at 10; Dkt. 142 at 3.

3.   Defendants waived privilege by asserting "advice of counsel" to defeat punitive damages claims.  Dkt. 129 at 5.

4.  "The privilege log shows no attorney was included in the most of the communications."  Dkt. 126 at 4; Dkt. 128 at 2.

5.  The privileged documents are critical to Plaintiff's case.  Dkt. 127 at 3; 128 at 3.

6.  Defendants' "bare-bones boilerplate privilege logs" are asking this Court to "take their word for it."  Dkt. 140 at 9.

### 1.    Plaintiff does not carry his burden of demonstrating that defense counsel was not providing legal advice

The Court first addresses Plaintiff's primary, most-oft repeated, argument:  that Defendants' representatives were acting in a business not a legal capacity and therefore their communications were transmitting business advice and are not privileged.  Examples of Plaintiff's "business agents" argument are the following:

---

[4] The citations to Joint Submissions are exemplary, not exhaustive, as arguments are repeated across the submissions.

PHH's representative Verdooren testified repeatedly that PHHs actions at issue were from the "direction" and "approval" and "request" and "decision" and "advice" of in-house counsel, and that he did not know of any other decision-makers for essentially any of the relevant conduct. When an attorney acts as a business agent the attorney client and work product protections do not apply. *Wellpoint Health Networks v. Superior Court*, 59 Cal. App. 4th 110, 122 (1997) The settlement agreement was executed in April 2020 and the emails in the logs after that involve only the core servicing function of applying funds to the loan, sending billing statements, credit reporting, and other typical functions. There were no disputes or questions or legal issues about how to do this.

Dkt. 127 at 5. Similarly:

[t]he fact that in-house counsel were acting in a business and not legal capacity is demonstrated by the fact that PHH is withholding nearly 1,000 emails responsive to this Court's orders . . . It strains credulity that essentially 1,000 emails, essentially all responsive emails, are privileged where they are all related to PHH's efforts to perform its core servicing function of applying payments to the loan and sending statements and reporting to credit.

Dkt. 129 at 4-5.

Defendants respond that their counsels' involvement arose "during the implementation of a settlement agreement resolving years-long litigation . . . [T]he attorneys identified in Defendants' Privilege Log provided advice to resolve active litigation and to prevent further litigation on the same issues." Dkt. 127 at 8. Defendants point out that Plaintiff first moved in state court to enforce the 2020 settlement and that in 2024, the state court "recognized the Parties had been engaged in a dispute concerning the settlement agreement for more than three years and the multiple Motions to Enforce in the State Court action confirm the involvement of attorneys' [sic] throughout this entire process." *Id*.

The Court finds that Plaintiff has not carried his burden of dislodging attorney-client privilege on the proffered grounds that the communications can only be about servicing the loan and therefore cannot comprise attorney-client communications. The Parties are now approaching ten years of litigation around Plaintiff's loan, which, according to Plaintiff's own allegations, began in 2017, culminated, briefly, in a settlement agreement in 2020 and then quickly fell back into litigation in 2021, 2024 and most recently in 2025. Against this backdrop, Defendants' explanation of attorney-client communications in the course of servicing the loan for the express purpose of resolving and preventing litigation is highly credible.

United States District Court
Northern District of California

Further, the Court notes that Plaintiff cites extensively to facts regarding servicing of the loan – facts supported by document productions and witness testimony to date.  *See* Dkt. 126 at 3-4 ("The servicing notes, privilege logs, and testimony from Ms. Pierre show that she was involved in ensuring the $158,000 settlement reinstatement payment was applied, that she determined in 2020 that it was improperly applied, she requested that cashiering reverse and reapply the funds, and that this went on for many months, and that this long time period and the four reversals and reapplications over that many months was highly unusual."); Dkt. 129 at 4 ("[Mr. Verdooren] admitted that a main reason the Loan was not reinstated for several years after the settlement was the failure to apply the required $33,000 credit, and that PHH applied about $30,000 about two years late, and the remaining amount about four years late."); Dkt. 140 at 8 ("Verdooren's testimony established therefore that credit reporting was a material term of the settlement agreement known by PHH and its outside counsel Brian Paino to be critical for Plaintiff to refinance to pay the PHH loan in full, that the credit reporting was not done in the 30 days required, but 4 years late, and that this failure to report was intentional, that it directly caused Plaintiff's damages, and that in-house or outside counsel were the ones responsible and authorized to request the credit reporting, which includes Fantozzi.").  Plaintiff's recitation of these facts demonstrates that the underlying, non-privileged *facts* relating to how the loan has been handled have been made available to Plaintiff.  What has been properly withheld are the attorney-client communications that reflect advice or counseling regarding the loan.

Finally, at the interim hearing on February 19, 2026, the Court asked Defendants if they were claiming a blanket privilege over all communications related to the loan or whether defense counsel had in fact reviewed and evaluated each document for which privilege was being claimed. Dkt. 138 (2/19/26 Hrg. Tr.) at 11:20-12:15.  Counsel responded satisfactorily and noted that some emails for the individuals in question had been produced, indicative that emails had been reviewed and non-privileged emails produced.  *Id.* at 12:21-13:5.  In sum, Defendants have sustained their burden of establishing privilege for a large swath of email communications regarding the subject loan, and Plaintiff has not carried his burden of demonstrating otherwise.  Accordingly, Plaintiff's request to abrogate the claim of privilege, or to test the claim by reviewing the documents in-

United States District Court
Northern District of California

7

camera, is denied.  Plaintiff's Joint Submissions at Dkts. 126, 127, 128, 129 and 142 are **DENIED**.

### 2.    No crime-fraud exception

The crime-fraud exception to the attorney-client privilege is codified in California Evidence Code § 956 and is a very limited exception to the privilege.  *Geilim v. Super. Ct.*, 234 Cal. App. 3d 166, 174 (1991).  The proponent of the exception has the burden of proving the existence of crime or fraud.  *Id.*  "[M]ere assertion of fraud is insufficient; there must be a showing the fraud has some foundation in fact."  *BP Alaska Exploration Inc. v. Super. Ct.*, 199 Cal. App. 3d 1240, 1262 (1988).  More specifically, the proponent must make a *prima facie* showing that an attorney was retained and utilized to commit a crime or fraud and that privileged material is "factually related" to the subject matter of the crime or fraud.  *Id.* at 1262, 1268.  A *prima facie* showing is "one which will suffice for proof of a particular fact unless contradicted and overcome by other evidence.  In other words, evidence from which reasonable inferences can be drawn to establish the fact asserted, *i.e.*, the fraud."  *Id.* at 1262.

Plaintiff twice urges that the crime-fraud exception applies to Defendants' documents withheld as privileged.  First, in Dkt. 140, Plaintiff points to the fact that PHH failed to handle credit reporting and that only counsel can request credit reporting.  Dkt. 140 at 10.  From these two facts, Plaintiff concludes that (1) counsel are acting as business agents (Dkt. 140 at 10); (2) there must be an email reflecting advice to defraud Plaintiff by not reporting credit (*id.*); and (3) Defendants perpetrated this fraud for their own profit (*id.*).  In Dkt. 142, Plaintiff argues that "[t]he crime-fraud exception should apply because there are thousands of emails and dozens of people involved over five years to deal with the errors, all of which could be done in a day or two by a few people."  *Id.* at 3.  In both instances, Plaintiff proffers only argument from facts which would not, even if unrefuted, provide a sufficient basis to infer that counsel was engaged in the furtherance of a crime or fraud.[5]

---

[5] Throughout the Joint Submissions, Plaintiff suggests he has "extensive" additional evidence in support of an argument and often complains that the "page limitations and inability to submit evidence" limit his ability to prove his points.  *See, e.g.,* Dkt.142 at 6.  Plaintiff's complaint is not well founded.  Plaintiff has disregarded page limits by repeating arguments and seeking common

United States District Court
Northern District of California

### 3.    No waiver based on advice of counsel

Plaintiff attempts to argue that Defendants waived the attorney-client privilege by relying on advice of counsel.  Dkt. 129 at 5.  Plaintiff misunderstands, and as a result misapplies, the "advice of counsel" defense.  An "advice of counsel" defense arises where a party seeks to excuse or justify wrongful acts, or failure to act, by claiming it acted based upon an opinion of counsel.  *See Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162-63 (9th Cir. 1992).  Because the party is relying on an opinion of counsel as a defense, the privilege for communications regarding that opinion is waived.  *Id.*  The classic example is exactly that cited by Plaintiff – in the context of patent litigation a party obtains an opinion of counsel of non-infringement and asserts that opinion as a defense to willful infringement.  Dkt. 129 at 5 (citing *Genentech, Inc. v. Insmed Inc.*, 442 F. Supp. 2d 838, 840 (N.D. Cal. 2006)).  Here there are no facts to support the suggestion that an opinion of counsel is being relied upon as a defense.  Rather, there is evidence that attorneys advised Defendants regarding Plaintiff's loan, and that advice is protected as an attorney-client communication.

### 4.    The remainder of Plaintiff's arguments to abrogate the privilege are contrary to law

Plaintiff's 4th, 5th and 6th arguments summarized above — no. 4: no attorney included in the communication; no. 5: privileged documents are critical to Plaintiff's case; and no. 6: the Court is asked to take Defendants' word that the communications are privileged — are each contrary to law.  First, a communication need not reflect an attorney as author or recipient on its face to qualify as privileged.  *AdTrader,* 405 F. Supp. 3d at 865 (*citing Zurich,* 155 Cal. App. 4th at 1502, 1503) (privilege encompasses communications between client employees that reflect, discuss, or contain legal advice)).  Second, "[t]he protection the privilege provides is absolute and prevents the disclosure of any part of a privileged communication regardless of its content or any particularized need for disclosure."  *DP Pham*, 246 Cal. App. 4th at 666 (quoting *Kerner,* 206 Cal. App. 4th at 111).  Thus, the importance of a communication to opposing party's case does not

---

relief across seven Joint Submissions, totaling approximately 30 pages of argument by Plaintiff alone.  Nowhere in those 30 pages does Plaintiff offer a succinct, cogent factual proffer of such additional evidence.  The Court has largely indulged Plaintiff's submissions here at the close of discovery, and the request for yet additional submissions is denied.

extinguish the privilege. Finally, as noted above, Defendants' privilege logs are not "bare-bones," and Defendants have established the preliminary facts necessary to invoke the privilege. *Bank of America*, 212 Cal. App. 4th at 1098.

### 5. The outcome on the attorney-client privilege issues in this case is the same under federal law

The Court concludes that the outcome on these privilege issues would be the same under federal privilege law. Under federal law the burden of demonstrating that the privilege applies is on the party claiming the privilege. *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). A privilege log is one means by which the privilege may be established. *In re Grand Jury Investig.*, 974 F.2d 1068, 1070-71 (9th Cir. 1992). Even if a communication has the dual purpose of providing business and legal advice, it is privileged if the primary purpose is to give or receive legal advice. *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021). Moreover, communications may fall within the attorney-client privilege even if the attorney is not copied on every message. *See In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ML-03-052-JVS-(KESX), 2025 WL 2639195, at *4 (C.D. Cal. Sept. 5, 2025); *City of Roseville Employees' Retirement Sys. v. Apple*, No. 19-cv-02033-YGR (JCS), 2022 WL 3083000, at *16 (N.D. Cal. Aug. 3, 2022).

Before a court may engage in *in camera* review of withheld documents to determine if they are privileged or to determine if the crime-fraud exception applies, the party seeking *in camera* review must make a showing of "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence" to establish that the information is not privileged or that the crime-fraud exception applies. *United States v. Zolin*, 491 U.S. 554, 572 (1989) (internal quotation marks and citations omitted); *In re Grand Jury Invest.*, 974 F.2d at 1074-75.

Finally, there is no unavailability or necessity exception to the attorney-client privilege. *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989).

### III.    DKTS. 126, 127, 128, 129, 141[6] AND 142 ARE DENIED FOR ADDITIONAL REASONS

Although these Joint Submissions were, at Plaintiff's behest, addressed collectively, and denied collectively for the reasons set forth above, there are additional grounds for denying each of the Joint Submissions.

**Dkts. 126 and 128 (Pierre documents and deposition).** Both of these Joint Submissions argue for the full production of all emails reflecting communications with Ms. Pierre and for a second deposition. The first, Dkt. 126, approaches the Pierre ask from the starting point of her testimony regarding whether handling of Plaintiff's loan had been "escalated" and then quickly devolves into a challenge to the attorney-client privilege that resounds throughout all of Plaintiff's Joint Submissions. The second, Dkt. 128, is just a repetition of the challenge to the attorney-client privilege. Taking these two submissions together, as Plaintiff urged the Court to do, Plaintiff's disregard for this Court's standing order is made clear. Not satisfied with one bite at the apple, Plaintiff has attempted a second bite, repeating arguments and seeking the same relief. The Court will not reward this tactic. Additionally, given that Plaintiff points out that Ms. Pierre was not a decision-maker and that her deposition was taken as a 30(b)(1) witness regarding events years in the past, a further deposition would not be proportional to the needs of the litigation. For these additional reasons, the motions are denied.

**Dkt. 127 (Drexel documents and deposition)**. Plaintiff's Joint Submission tracks both Dkts. 126 and 128 so closely, that it is obvious that this issue could have been raised with the Pierre issues in a single submission. Again, Plaintiff's preference for quantity of argument, over quality, is his undoing. Additionally, Ms. Drexel was noticed as a 30(b)(1) witness regarding events years in the past. This motion is denied for the same reasons as Dkts. 126 and 128 above.

**Dkt. 141 (Court requested supplementation regarding Defendants' 30(b)(6) deposition)**. At the interim hearing on February 19, 2026, the Court directed the Parties to submit portions of Defendants' 30(b)(6) deposition transcript that addressed whether this deposition addressed issues directed to 30(b)(1) witnesses Pierre and Drexel. The Court has reviewed the

---

[6] Dkt. 141 was a Court requested supplementation to address non-privilege related issues raised in Dkts. 126-128.

submissions and finds that the testimony proffered by Plaintiff does not support his contention that Defendants made misrepresentations at the February 19 hearing as to the scope and content of the 30(b)(6) testimony.  The Court's rulings as to Dkts. 126, 127 and 128 stand.

**Dkt. 129 (Plaintiff's request for production nos. 30-49)**.  This submission requests that the Court reconsider its prior rulings at Dkts. 98 and 99 regarding Defendant's production of documents, and then, like the others, restates Plaintiff's challenge to the assertion of attorney-client privilege.  First, the Court's prior orders rejected certain of Plaintiff's requests for production as overbroad and not proportional to the needs of the litigation, and as captured in RFP nos. 30-49, they remain so.  The Court resolved this problem by ordering limited production by Defendants as proportional to the needs of the litigation.  Dkts. 98, 99; Fed. R. Civ. Proc. 26(b)(1). Reconsideration of a prior order is appropriate where there are new facts or law that have come to light since the order.  Civ. L.R. 7-9(b).  There are no new facts or law to justify reconsideration, and the Court declines to do so.  Plaintiff's submission is denied.

**Dkt. 142 (Defendant's supplemental production).**  Plaintiff argues that Defendants' supplemental production pursuant to this Court's prior orders at Dkts. 98 and 99 remains insufficient.  This submission is largely a repeat of the arguments presented in Dkt. 129 (as well as Dkts. 126-128 and 140) addressed above, and as such demonstrates Plaintiff's disregard for this Court's standing order and is therefore denied.  Defendants also raise the manner in which the dispute was raised, in particular the lack of opportunity to respond to arguments raised for the first time in Plaintiff's portion of the Joint Submission which was provided just hours before filing. The objective of the joint submission requirement is to allow each side an opportunity to consider the arguments of the other, which in the normal course informs meet and confer efforts and often leads to a negotiated resolution without court intervention.  Plaintiff does not address this conduct and, but for the fact that discovery is now closed, would warrant further action by the Court.

## IV.    DKT. 140:  DEFENDANTS' REQUEST FOR PROTECTIVE ORDER RE FORMER IN-HOUSE COUNSEL

Ms. Fantozzi is a former in-house counsel for Defendant PHH who represented PHH in negotiating the 2020 settlement agreement with Plaintiff.  Dkt. 140 at 2.  She left PHH in 2021.

United States District Court
Northern District of California

*Id*. In addition to the attorney-client privilege issues addressed above, Defendants argue that the subpoena, served before the close of discovery but noticing the deposition for after the close, is untimely. *Id*. at 4. Defendants buttress this argument with the fact that Plaintiff knew of Ms. Fantozzi's involvement at least as early the first session of the PHH 30(b)(6) deposition completed in December of 2025, allowing for timely notice. *Id*. at 5. Plaintiff does not address the timeliness issue. Accordingly, the Court concurs that the deposition notice of Ms. Fantozzi is untimely.

*** 

The Court now turns to the remaining Joint Submissions which do not arise from the attorney-client privilege.

## V. DKT. 130: DEFENDANTS' SUPPLEMENTAL INTERROGATORY RESPONSES

In this Joint Submission, Defendants stated that they would supplement their responses to the subject interrogatories seeking the identification of highest level personnel who either took or directed certain actions regarding Plaintiff's loan. Dkt. 130. At the February 19 hearing, the Court emphasized that Defendants' supplemental responses must identify specific persons. Dkt. 138 (2/19/26 Hrg. Tr.) at 23:17, 24:3-10. The responses were served as directed on February 20, 2026. Dkt. 143-1. As that date was also the last day to file a joint discovery submission with the Court, Plaintiff immediately complained to Defendants regarding the responses and promptly renewed his complaint first addressed in Dkt. 130. Dkts. 143; 143-2.

The manner in which Plaintiff has brought the continuation of this dispute to the Court's attention is not inappropriate. Defendants' objection on the basis that Plaintiff should have submitted a second joint submission, allowing an additional seven days for meet and confer is disingenuous. The dispute was already before the Court, and Defendants were well aware of their obligations, as evidenced by their acknowledgement of the need to supplement their responses. Dkt. 130.

The Court has reviewed the supplemental responses and Plaintiff's complaints regarding the same. Dkt. 143-1; 143-2. Defendants have complied with the Court's order at the hearing. The interrogatories identify the actors as to certain actions, who are primarily attorneys. Where

United States District Court
Northern District of California

there is no person who fits the description set forth in an interrogatory (*e.g.*, Interrogatory no. 29), Defendants so state.  Plaintiff's complaints are arguments challenging Defendants' identifications, which may be suitable for cross-examination but do not warrant further action in discovery.

## VI.     DKT. 139:  THIRD PARTY ARGUS HOMES

Defendants move to compel production of documents in support of Plaintiff's damages claims from third-party Argus Homes.  Argus Homes is represented by Plaintiff's counsel.  In the Joint Submission, filed on February 20, 2026, counsel represents that the documents will be ready for production "in the next week or so."  Dkt. 30.  Plaintiff also makes clear that the documents will reflect the redactions to third-party financial records previously allowed by this Court, which is a practical approach to forestall any dispute regarding relevance, proportionality or privacy.  It is the Court's sincere hope that this matter has resolved itself.  **If the documents have not yet been produced, they are to be produced within three (3) business days of the date of this Order**.

## VII.    DKT. 144:  PLAINTIFF'S MOTION TO COMPEL ADDITIONAL 30(b)(6) TESTIMONY

Plaintiff seeks to compel additional 30(b)(6) testimony on 31 of the 61 topics noticed to Defendant PHH.  Dkt. 144 at 1.  The Court evaluated Plaintiff's arguments as to all 31 categories and reviewed the highlighted 30(b)(6) transcript.  Defendants complain about the timing of the Joint Submission and lack of meaningful meet and confer and raise general objections to the proportionality of Plaintiff's deposition topics and categories for additional testimony.  *Id*. at 6-9.  Having reviewed the questions, responses and arguments for additional testimony, the Court is not persuaded that additional testimony is proportional to the needs of the case.  First, noticing 61 topics in a case arising out of the execution, or lack of execution, of terms of a settlement agreement strongly suggests a lack of proportionality, even allowing for Plaintiff's claims of bad faith and demand for punitive damages.  Second, a number of the disputed topics drew an instruction not to answer on the basis of attorney-client privilege, which is thoroughly addressed by the Court above.  Indeed, Plaintiff's ask in the Joint Submission is that the privilege objection be overruled wholesale and the witness instructed to answer.  *Id*. at 6.  This request demonstrates

United States District Court
Northern District of California

that this dispute is yet another restatement of Plaintiff's challenge to Defendants' privilege claims. For the reasons stated in this Order, Plaintiff's challenge is rejected.  The majority of the remainder of the 31 disputed topics address details which, though Plaintiff argues vehemently are critical to his case, in fact appear to be of tangential relevance, not proportional to the needs of the case and would require a mastery of detail beyond Defendants' 30(b)(6) obligations.  Fed. R. Civ. Proc. 30(b)(6).  Plaintiff's request for further deposition testimony is denied.

**SO ORDERED.**

Dated: March 11, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

15