Robert W. Norman, Jr. (SBN 232470)
Timothy A. Schneider (SBN 300816)
HOUSER LLP
9970 Research Drive
Irvine, California 92618
Telephone: (949) 679-1111
Facsimile: (949) 679-1112
E-Mail: tschneider@houser-law.com

Attorneys for Defendants, PHH MORTGAGE CORPORATION, NOW KNOWN AS ONITY MORTGAGE CORPORATION and HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| CORY MAYER,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A; PHH MORTGAGE CORPORATION; WESTERN PROGRESSIVE, LLC; DOES 1-20; and all persons unknown claiming any interest in the property, inclusive, and DOES 1 through 50, inclusive,<br><br>                    Defendants. | CASE NO.:  5:25-cv-00182-NW-SVK<br><br>**DEFENDANTS PHH MORTGAGE CORPORATION, NOW KNOWN AS ONITY MORTGAGE CORPORATION, AND HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2 NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT TO PLAINTIFF CORY MAYER'S FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF THE ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        July 15, 2026<br>Time:        9:00 a.m.<br>Judge:       Noel Wise<br>Courtroom:   3, 5th Floor<br>Place:       280 South 1st Street<br>             San Jose, California 95113 |

1
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TO THE COURT, CLERK, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 15, 2026, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of the above captioned court located at 280 South 1st Street, San Jose, California 95113, the Hon. Noel Wise presiding, Defendants PHH Mortgage Corporation, now known as Onity Mortgage Corporation ("PHH") and HSBC Bank USA, National Association, as trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR2 ("HSBC, As Trustee," and together with PHH, the "Defendants") pursuant to Federal Rule of Civil Procedure 56, will and hereby do move this Honorable Court for Summary Judgment, or, in the alternative Summary Adjudication, on Plaintiff Cory Mayer ("Plaintiff") First Amended Complaint ("Complaint"), on the grounds that there are no genuine issue of material fact as to Plaintiff's claims, and Defendants are entitled to judgment as a matter of law.

This motion is based on this Notice of Motion and Motion for Summary Judgment, or in the Alternative, Motion for Summary Adjudication of the Issues ("Motion"), the Supporting Memorandum of Points and Authorities, the Declaration of Benjamin Verdooren, the Declaration of Timothy A. Schneider, the Declaration of Brian Paino, the Statement of Undisputed Material Facts ("SUMF"), the First Amended Complaint, and the exhibits filed concurrently herewith, this Court's files concerning this action, those facts and documents of which judicial notice is proper, and such other further evidence that shall be presented at the time of the hearing.

DATED:  May 22, 2026

HOUSER LLP

/s/ Robert W. Norman, Jr.
Robert W. Norman, Jr.
Timothy A. Schneider
Attorneys for Defendants,
PHH MORTGAGE CORPORATION and  HSBC
BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE FOR DEUTSCHE ALT-A SECURITIES
MORTGAGE LOAN TRUST, SERIES 2006-AR2

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND................................................................................ 2

      A.    The Loan   .................................................................................................. 2

      B.    Plaintiff's Previous Lawsuit and the Parties' Settlement........................... 2

      C.    Plaintiff's Post-Settlement Payments and Failure to Submit Funds .................. 4

      D.    Plaintiff's Enforcement of the Settlement Agreement............................... 4

      E.    Defendants' Efforts to Resolve Plaintiff's Dispute and Release of Lien ............ 6

III.  LEGAL ARGUMENT........................................................................................... 6

      A.    Plaintiff's Claims are Mooted by the Discharge of His Loan, and Other Claims Similarly Fail Due to a Lack of Damages ............................................................. 6

            1.    This Case is Moot Because There is No Effective Relief for the Court to Grant Following the Discharge of the Loan and Reconveyance of the Deed of Trust......... 6

            2.    Any Claims Arising out of Conduct That Occurred Prior to the Settlement Agreement are Waived and Released ........................................................ 8

            3.    Plaintiff's Alleged Damages for Loss of Ability to Refinance are Speculative ......... 9

            4.    Plaintiff's Alleged Damages for Loss of Credit Expectancy are Speculative .......... 11

            5.    Plaintiff's Alleged Damages Related to Credit Reporting are Preempted................ 12

      B.    Plaintiff's Individual Claims in the First Amended Complaint Should Further Be Dismissed for Claim-Specific Reasons........................................ 13

            1.    Plaintiff's Claim for Breach of Contract Fails Because He Has No Damages......... 13

            2.    Plaintiff's Claim for Breach of Covenant of Good Faith and Fair Dealing Fails Because There Is No Unfair Interference ................................................. 13

            3.    Plaintiff's Claim for Declaratory Relief is Improper................................ 14

                  i.    Plaintiff's Claim is Duplicative and Superfluous ............................. 14

                  ii.   Plaintiff Improperly Seeks to Remedy Past Wrongs ....................... 15

            4.    Plaintiff's Claim for Violation of Business and Professions Code §17200 Fails Because There Are No Available Restitutionary Damages.................................... 15

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

5.   Plaintiff's Claim for Violation of the Rosenthal Act Fails ...................................... 16

    i.    Plaintiff Does Not Have Causally Linked Damages ...................................... 16

    ii.   The Escrow Impound Account and Advances Made are Proper ..................... 19

    iii.  The Statute of Limitations Has Expired ........................................................... 19

6.   Plaintiff's Claim for Intentional Interference with Contract Fails............................. 19

    i.    PHH Cannot Interfere to a Mortgage Loan it was Servicing........................... 20

    ii.   Plaintiff Has Not Suffered Damages as a Result of the Alleged

        Interference ...................................................................................................... 20

7.   Plaintiff's Claim for Slander of Title Fails ................................................................ 21

    i.    The Notice of Default and Notice of Trustee's Sale are Privileged ................ 22

    ii.   Plaintiff Does Not Have Recoverable Damages Because They Were Not

        Disclosed in His Rule 26 Initial Disclosures .................................................. 22

8.   Plaintiff's Claim for Violation of RESPA Fails Because There Are No Causally

    Linked Damages ........................................................................................................ 23

9.   Plaintiff Does Not Have Any Evidence to Establish Punitive Damages.................. 24

IV.  CONCLUSION  ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010 (9th Cir.2000) .......................................... 13

*Akopian v. JPMorgan Chase Bank, N.A.*, No. CV 14-05760-RGK (PLAx), 2014 WL 12591623
   (C.D. Cal. Sept. 24, 2014) ...................................................................................................... 14

*American Rivers v. National Marine Fisheries Service,* 126 F.3d 1118 (9th Cir.1997) ..................... 7

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994) ................................... 20

*Auerbach v. Great Western Bank*, 74 Cal.App.4th 1172 (1999) ...................................................... 9, 10

*Averbach v. Vnescheconombank*, 280 F.Supp.2d 945 (2003) ........................................................... 21

*Ball v. FleetBoston Fin. Corp.* (2009) 164 Cal.App.4th 794 .............................................................. 14

*Bank of New York v. Fremont General Corp.*, 523 F.3d 902 (2008) .................................................. 20

*Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112 (2001) .................................................................. 24

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ...................................................................... 15

*California Insurance Guarantee Association v. Superior Court*, 231 Cal.App.3d 1617 (1991) ....... 14

*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 137 ....................... 13

*Carswell v. JP Morgan Chase Bank N.A.*, 500 Fed.Appx. 580 (2012) .............................................. 23

*Cisneros v. Freedom Mortgage Corp.*, 2023 WL 8870507 (C.D. Cal. Dec. 14, 2023) ..................... 12

*Costa v. National Action Financial Services*, 634 F.Supp.2d 1069 (E.D. Cal. 2007) ....................... 18

*County of San Diego v. State* (2008)164 Cal.App.4th 580 ................................................................. 15

*Cruz v. Home Base*, 83 Cal.App.4th 160 (2000) ............................................................................... 25

*Curley v. Wells Fargo & Co.,* No. 13–03805, 2014 WL 7336462 (N.D.Cal. Dec. 23, 2014) ........... 14

*Daro v. Superior Ct.*, 151 Cal.App.4th 109 (2007) ........................................................................... 15

*Di Loreto v. Shumake*, 38 Cal.App.4th 35 (1995) ............................................................................. 20

*Donald v. Cafe Royale, Inc.,* 218 Cal.App.3d 168 (1990) ................................................................ 16

*Erlich v. Menezes*, 21 Cal.4th 543 (1999) ......................................................................................... 21

*Flate v. Mortgage Lenders Network USA, Inc.*, Case No. CV 15-08873-AB (FFMx), 2016 WL
   9686051 (C.D. Cal. March 4, 2016) ...................................................................................... 24

*General of America Ins. Co. v. Lilly*, 258 Cal.App.2d 465 (1968) .................................................... 14

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Gilliam v. Bank of America, N.A.* (C.D. Cal. 2018) 2018 WL 6537160 ............................................. 21

*Gonzalez v. Specialized Loan Servicing, LLC*, 691 F.Supp.3d 1162 (2023) ..................................... 14

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009)................................................ 12

*Hahn v. Select Portfolio Servicing, Inc.*, 424 F.Supp.3d 614 (2020)...................................................... 23

*Hood v. Superior Court*, 33 Cal.App.4th 319 (1995)................................................................. 14

*In re Breul*, 533 B.R. 782 (2015) ......................................................................................... 9

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003)................................................ 15

*Lal v. American Home Servicing, Inc.*, 680 F.Supp.2d 1218 (2010) ................................................. 23

*Levy v. JP Morgan Chase,* No. 10–01493, 2010 WL 4641033 (S.D.Cal. Nov. 5, 2010) .................. 14

*Loewy v. CMG Mortgage, Inc.*, 385 F.Supp.3d 1083 (2019)................................................................ 23

*Looksmart Group, Inc. v. Microsoft Corporation*, 386 F.Supp.3d 1222 (2019)................................. 22

*Madrid v. Perot Systems Corp.,* 130 Cal.App.4th 440 (2005) ................................................................. 16

*Manzanarez v. Madera Collection Services*, 722 F.Supp.3d 1074 (2024).......................................... 17

*Matthews v. Caliber Home Loans* (E.D. Cal. Jan. 31, 2020) 2020 WL 509070................................ 21

*Medina v. Two Jinn, Inc.*, 2024 WL 4485586 (N.D. Cal. Aug. 21, 2024).......................................... 12

*Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594 (2009) ...................................................... 20

*Mock v. Michigan Millers Mutual Ins. Co.*, 4 Cal.App.4th 306 (1992) .............................................. 24

*Nasseri v. Wells Fargo Bank, N.A.*, 147 F.Supp.3d 937 (2015).......................................................... 14

*Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001) .................................................................................. 9

*Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222 (2007)......................................... 8

*Nelson v. Tucker Ellis, LLP*, 48 Cal.App.5th 827 (2020) ...................................................................... 20

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811 (2011) ................................................................... 13

*Otay Land Co. v. Royal Indem. Co.* (2008) 169 Cal.App.4th 556 ....................................................... 15

*People ex rel. Kennedy v. Beaumont Investment, Ltd.,* 111 Cal.App.4th 102 (2003)........................ 16

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (2011)................................................................................. 7

*Ramanujam v. Reunion Mortgage, Inc.*, Case No. 5:09-cv-03030;JF/HRL, 2011 WL 446047 (N.D. Cal. Feb. 3, 2011)............................................................................................................................... 24

*Rasidescu v. Midland Credit Management, Inc.*, 435 F.Supp.2d 1090 (2006) .................................. 11

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Reichert v. General Ins. Co. of America.* (1990) 68 Cal.2d 822 ........................................................ 13

*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co.*, 56 Cal. App. 5th 413 (2020) ............................... 15

*Riggs v. Prober & Raphael*, 681 F.3d 1097 (9th Cir. 2012) .............................................................. 16

*Robbins v. CitiMortgage, Inc.* 2017 WL 6513662 (N.D. Cal. Dec. 20, 2017) .................................. 10

*Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952 (N.D. Cal. 2010) ........................... 14

*Salehi v. Surfside III Condominium Owners' Assn.*, 200 Cal.App.4th 1146 (2011) ........................... 8

*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331 .................................................................... 22

*Smith v. Home Loan Funding, Inc.*, 192 Cal.App.4th 1331 (2011) .................................................... 10

*Stratton v. Tejani*, 139 Cal.App.3d 204 (1982) ................................................................................. 10

*Sumner Hill Homeowners' Association, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal.App.4th 999

    (2012) ............................................................................................................................................. 21

*Tasaranta v. Homecomings Fin.*, No. 09-CV-01722-H (WMC), 2009 WL 3088335 (S.D. Cal. Sept.

    21, 2009) ........................................................................................................................................ 14

*The Kind & Compassionate v. City of Long Beach*, 2 Cal.App.5th 116 (2016) ................................ 20

*Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269 (1994) .................................................... 25

*Vasquez Perdomo v. Noem,* No. 2:25-CV-05605-MEMF-SP, 2026 WL 475985 (C.D. Cal. Feb. 19,

    2026) ................................................................................................................................................ 7

*Vestar Development II, LLC v. General Dynamics Corp.*, 249 F.3d 958 (2001) ........................... 9, 10

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (2001) ............................................... 22

**Statutes**

15 U.S.C. § 1681s-2 ............................................................................................................................ 12

15 U.S.C. § 1681s-2(a) ....................................................................................................................... 12

15 U.S.C. § 1681s-2(b) ....................................................................................................................... 12

15 U.S.C. § 1681s-2(c)(1)-(3) ............................................................................................................ 12

15 U.S.C. § 1681s-2(d) ....................................................................................................................... 12

15 U.S.C. § 1681t(b)(1)(F) ................................................................................................................. 12

15 U.S.C. § 1692e(2) ........................................................................................................................... 19

California Civil Code § 1788.17 .................................................................................................... 16, 19

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

California Civil Code § 1788.30(f) ................................................................................................ 19

California Civil Code § 2924(d) ................................................................................................... 22

California Civil Code § 2924(d)(1) .............................................................................................. 21

California Civil Code § 3294(a) ................................................................................................... 24

California Civil Code § 3294(b) ................................................................................................... 24

California Civil Code § 3300 ....................................................................................................... 11

California Civil Code § 3301 ..................................................................................................... 9, 11

California Civil Code § 3333 ..................................................................................................... 9, 11

California Code of Civil Procedure § 1060 .................................................................................. 15

**Rules**

FRCP Rule 26(e) ........................................................................................................................ 22

FRCP Rule 37 ............................................................................................................................. 22

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ........................................................................................................ 7

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In this case the Magistrate Judge has rightly described as a "breach of contract case" that is "not that complicated," Defendants bring this motion for summary judgment because, having given Plaintiff a free house and more to cure any possible breach, the only obstacle to dismissal is Plaintiff's overzealous effort to manufacture further damages and incur legal fees without justification.  To be certain, Defendants have now discharged Plaintiff's loan and released their lien, providing Plaintiff with a windfall. Plaintiff's loan had an undisputed principal balance of $447,655.82 plus interest, fees, and property tax advances that bring the monetary benefit to Plaintiff of $628,718.49. Plaintiff now owns his home free and clear of Defendants' first-position mortgage. Plaintiff will also keep the $234,600 he claims to have deposited in his attorneys' trust account for the arrears on the loan as well as the more than $75,000 he made in renting the property during the period of this dispute.

Plaintiff originally initiated this action because he was dissatisfied with the time it was taking for the parties to resolve their post-settlement contractual dispute related to the application of a "credit" to the loan of $33,120.95 despite being provided the credit in full prior to filing. Plaintiff now continues with this action despite Defendants' discharge of the loan and release of the lien. Plaintiff has been made whole, yet he continues to seek a minimum of $850,000 in damages, $6,000,000 in punitive damages, and an extravagant abundance of legal fees.

Throughout the case, Plaintiff employed scorched-earth discovery despite being told by the Magistrate Judge time and time again that the discovery was not proportional to the needs of the case. Plaintiff filed **25** discovery statements with the Magistrate Judge that were largely denied and also sought relief from the Magistrate Judge's rulings, which this Court denied **five** times.

This case should not continue to waste judicial resources where Plaintiff has been made whole. Defendants are entitled to summary judgment because: (1) Plaintiff does not have a live controversy because the loan is discharged and lien released; (2) Plaintiff does not have any recoverable damages because they are all speculative; and (3) Plaintiff's claims are precluded based on a waiver and release of claims in the settlement, federal law preemption, and statute of limitations.

/ / /

---

1

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## II.    FACTUAL BACKGROUND

### A.    The Loan

On March 1, 2006, Cory Mayer ("Plaintiff") obtained an Adjustable Rate Note in the amount of Four Hundred Fifty-Six Thousand Dollars ($456,000.00) from Pinnacle Financial Corporation d/b/a Tri-Star Lending Group (the "Note"). The Note was secured by a Deed of Trust on the real property located at 8650 Hihn Road, Ben Lomond, California 95005 (the "Property") dated March 1, 2006, and recorded on March 3, 2006, in the Official Records of Santa Cruz County as Instrument No. 2006-0012374 (the "Deed of Trust"). [SUMF 1] [Declaration of Benjamin Verdooren ("PHH Decl.") ¶3, Ex. 1-2; Declaration of Timothy A. Schneider ("Schneider Decl.") ¶6, Ex. 12 (83:19-85:19); First Amended Complaint, ECF 34 ("FAC") ¶9]. Plaintiff obtained an Interest Only Step Rate Loan Modification Agreement on December 1, 2009, after defaulting on his payment obligations under the Loan (the "Modification"). [PHH Decl. ¶4; Schneider Decl. ¶6, Ex. 12 (85:24-86:7); FAC ¶11-13]. The Modification created a new principal balance and altered certain terms of the Loan. The Note, Modification, and Deed of Trust are collectively referred to as the "Loan."

PHH Mortgage Corporation, now known as Onity Mortgage ("PHH"), was the servicer for the Loan and HSBC Bank USA, National Association, as trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR2 ("HSBC, as Trustee") was the owner of the Loan. PHH and HSBC, as Trustee are collectively referred to as "Defendants." [SUMF 34-35] [PHH Decl. ¶5-6].

### B.    Plaintiff's Previous Lawsuit and the Parties' Settlement

The Borrower defaulted on the Loan again following the Modification, and foreclosure was completed on November 1, 2016, which resulted in ownership in the Property transferring to HSBC, as Trustee. [PHH Decl. ¶7; Schneider Decl. ¶6, Ex. 12 (21:14-16); FAC ¶14]. Plaintiff filed his first action in the Superior Court of the State of California, County of Santa Cruz, Case No. 17CV00139 on January 13, 2017, for Wrongful Foreclosure and other enumerated claims against PHH, HSBC, as Trustee, and others (the "2017 Lawsuit"). [PHH Decl. ¶8; Schneider Decl. ¶6, Ex. 12 (21:14-16); Declaration of Brian Paino ("Paino Decl.") ¶3-4; FAC ¶15]. The parties resolved the 2017 Lawsuit by rescinding the foreclosure and entering into a Confidential Settlement and Release Agreement (the resolution of the 2017 Lawsuit will be referred to as the "Settlement" with the Confidential Settlement

and Release Agreement referred to separately as the "Settlement Agreement"). [SUMF 3] [PHH Decl. ¶10, Ex. 3; Schneider Decl. ¶6, Ex. 12 (91:13-92:22); Paino Decl. ¶5-6; FAC ¶17]. The Settlement Agreement contains a clear and unambiguous release of all known and unknown claims with a Civil Code § 1542 waiver for all claims that Plaintiff had, or could have had, against Defendants up to and including Plaintiff's execution of the Settlement Agreement on March 4, 2020. [*Id*.].

The Settlement involved four primary components, three of which are enumerated in the Settlement Agreement: (1) rescission of the foreclosure by Defendants; (2) reinstatement of the Loan by Plaintiff; (3) payment of settlement funds by Defendants; and (4) adjustment of Plaintiff's credit reporting for the Loan by Defendants. [PHH Decl. ¶10-11, Ex. 3; Schneider Decl. ¶6, Ex. 12 (91:13-94:1); Paino Decl. ¶5-6;  FAC ¶16-18] The reinstatement of the Loan contained within the Settlement Agreement was supported by a Mortgage Reinstatement Quote dated January 29, 2020 (the "Reinstatement Quote") that was provided to all parties to assist in the drafting and negotiating of the Settlement Agreement. [PHH Decl. ¶12, Ex. 4; Schneider Decl. ¶6, Ex. 12 (91:13-94:1); Paino Decl. ¶7]. The parties made a mistake in drafting the Settlement Agreement when incorporating the Reinstatement Quote, which ultimately led to post-Settlement discourse:

| Reinstatement Quote | | Settlement Agreement | |
|---|---|---|---|
| Principle | $14,670.91 | Principal | $14,670.91 |
| Interest | $128,178.13 | Interest | $128,178.13 |
| County Tax | $43,537.56 | Escrow Advances | $43,537.56 |
| | | Other Fees | $4,860.24 |
| Lien | ($33,120.95) | Credit | ($33,120.95) |
| Total Reinstatement | $153,265.65 | Total Reinstatement | $158,125.89 |

[PHH Decl. ¶13-14; Paino Decl. ¶8]. The discourse resulted from the parties' conversion of the term "Lien" on the Reinstatement Quote to "Credit" on the Settlement Agreement. [*Id*.]. After entering into the Settlement Agreement, Plaintiff took the position that the line-item labeled "Credit" should be treated as a discharge of those amounts from the Loan, but the parties never intended for any amounts to be discharged from the Loan as part of the Settlement. [PHH Decl. ¶13-14]. The intention of the parties was for the foreclosure to be rescinded and for Plaintiff to pay back all amounts that had become due. This intention was lost the moment Plaintiff took the position that the line-item labeled "Credit" should be treated as a discharge of those amounts from the Loan. The Parties –

through their attorneys – worked for years to try to resolve this dispute. [SUMF 43-44] [PHH Decl. ¶15-18; Paino Decl. ¶9-14]. This ultimately involved PHH later providing credits to the Loan in excess of $33,120.95. [*Id.*].

**C.    Plaintiff's Post-Settlement Payments and Failure to Submit Funds**

Plaintiff – through counsel – submitted funds in the amount of $168,468.78 to Defendants' counsel on or around May 13, 2020, which was sufficient to reinstate the Loan through February 19, 2020 and to cover the March 1, 2020, April 1, 2020, and May 1, 2020 monthly payments for the Loan. [PHH Decl. ¶19-21; Paino Decl. ¶15; FAC ¶25]. Plaintiff did not submit funds to Defendants – or their counsel – again until November 12, 2020; however, these November 12, 2020 funds were insufficient to cover the total amount due at that time because they did not include any amount for the payments due for taxes. [PHH Decl. ¶22-23; FAC ¶34]. These funds were destroyed at the mutual agreement of the parties' attorneys. [PHH Decl. ¶24; Paino Decl. ¶15-17]. A Notice of Default and Election to Sell Under Deed of Trust was recorded on August 24, 2023 in the Official Records of Santa Cruz County as Instrument No. 2023-0015928. SUMF 38] [PHH Decl. ¶26, Ex. 5; FAC ¶47]. A Notice of Trustee's Sale was recorded on August 24, 2023 in the Official Records of Santa Cruz County as Instrument No. 2023-0023167. SUMF 39] [PHH Decl. ¶27, Ex. 6; FAC ¶47]. No foreclosure sale of the Property has occurred. Plaintiff did not attempt to submit funds to Defendants again for nearly four years until October 9, 2024; however, those funds submitted by Plaintiff's counsel were insufficient to cover the total amount due. [PHH Decl. ¶25; Paino Decl. ¶18].

**D.    Plaintiff's Enforcement of the Settlement Agreement**

Plaintiff sought three times to enforce the Settlement Agreement in the same state court in which he brought the 2017 Lawsuit. [Schneider Decl. ¶6, Ex. 12 (184:1-12); Paino Decl. ¶19]. Plaintiff made his first attempt on December 16, 2021, which he withdrew after Defendants filed an Opposition. [Paino Decl. ¶20; FAC ¶43]. Plaintiff made his second attempt on January 10, 2024, which he withdrew. [Paino Decl. ¶21; FAC ¶49]. Plaintiff made his third and final attempt on March 18, 2024, which Defendants opposed and which was heard by the court on July 29, 2024. [Paino Decl. ¶22, Ex. 7]. The court issued an order on October 16, 2024, finding: (1) the Settlement Agreement does not address an escrow account or how the property taxes and insurance are to be paid or

structured; and (2) this appears to be a post-Settlement Agreement dispute and not part of the agreement before the court. In other words, the State Court determined Plaintiff was not entitled to relief under the Settlement Agreement for his complaints about the amounts due on the loan and the imposition of the escrow impound account.

Dissatisfied with the likely outcome of his third attempt after the July 29, 2024 oral argument, where the State Court indicated it was going to adopt its tentative ruling, Plaintiff initiated this new action in the same Superior Court of the State of California, County of Santa Cruz, on August 9, 2024, for breach of contract related to the implementation of the terms of the Settlement Agreement. [SUMF 33] [ECF 7-1; FAC ¶52]. Defendants removed the case to this Court, and in March 2025, Plaintiff engaged new counsel – Andrew Christensen. [ECF 1, 7, 18; FAC ¶54]. Following Plaintiff's engagement of Mr. Christensen, he has pursued extremely costly scorched-earth discovery on a case the Magistrate Judge has described as a "breach of contract case" that is "not that complicated" and for which Plaintiff has a "significant paper trail." [Schneider Decl. ¶6, Ex. 19 (27:11-16); FAC ¶17].

Plaintiff submitted **25** discovery statements and **five** motions for relief from discovery orders – all of which were denied. [Schneider Decl. ¶14 (Discovery Statements, ECF 35, 45, 47, 62-65, 68-70, 73, 76, 84, 90-92, 97, 116, 126-130, 142, 144) (Motions, ECF 106-108, 151, 153; Orders, ECF 111, 152, 155)]. The Court denied a number of the joint statements for Plaintiff's failure to comply with the Court's rules, others were unnecessary or moot because Defendants agreed to provide amended responses or documents prior to the filing of the joint statement, and another handful on other grounds, such as proportionality. [Schneider Decl. ¶14 (ECF 46, 55, 77, 81-82, 87, 93, 95, 98, 117, 150)]. The Magistrate Judge advised Plaintiff's counsel at least **six** times during a December 16, 2025 hearing that the discovery he sought was not proportional to the needs of the case. [Schneider Decl. ¶12, Ex. 18 (32:5-18, 53:18-55:14, 74:10-18, 76:8-12, 77:2-10, 80:18-25)]. Despite this, Plaintiff continued pursuing irrelevant and overbearing discovery with additional requests for more and more. This culminated at the close of discovery with a ruling from the Magistrate Judge that included additional commentary, such as "noticing 61 topics in a case arising out of the execution, or lack of execution, of terms of a settlement agreement strongly suggests a lack of proportionality" and that "the majority of the remainder of the 31 disputed topics address details which, though Plaintiff

argues vehemently are critical to his case, in fact appear to be of tangential relevance, not proportional to the needs of the case." [Schneider Decl. ¶14 (ECF 150)].

### E.    Defendants' Efforts to Resolve Plaintiff's Dispute and Release of Lien

The parties have made efforts to resolve the litigation, but were unable to reach a resolution after mediation with Judge Evelio Grillo and post-mediation discussions. [PHH Decl. ¶29, Schneider Decl. ¶15]. After those unsuccessful efforts, Defendants decided to voluntarily take action to make Plaintiff whole. No alternative seemed possible based on Plaintiff's (counsel's) view of this case.

Defendants discharged the Loan on April 22, 2026, and recorded a Substitution of Trustee and Deed of Reconveyance for the Deed of Trust on April 29, 2026. [SUMF 2] [PHH Decl. ¶30-34, Ex. 8-9]. At the time of discharge, Plaintiff's Loan had a principal balance of $447,655.82 plus accrued interest, fees, property tax advances, and recording fees for a total approximate payoff of $628,718.49. [*Id*.]. Plaintiff now owns the Property free and clear of Defendants' Deed of Trust and without any monetary obligations remaining on the Loan, including, for instance, no obligation to reimburse Defendants for the $37,523.88 in property taxes they paid on Plaintiff's behalf post-Settlement. [*Id*.]. Plaintiff will also keep the payments he claims to have deposited in his attorneys' trust account for the arrears on his Loan that total approximately $234,600. [Schneider Decl. ¶6, Ex. 12 (106:12-107:9)].

Additionally, Plaintiff profited from the Property from 2020 through the filing of this motion in an amount not less than $75,000 for the rental of a portion of the Property at $1,450/month. [Schneider Decl. ¶6, Ex. 12 (43:18—45:1)].

### III.    LEGAL ARGUMENT

### A.    Plaintiff's Claims are Mooted by the Discharge of His Loan, and Other Claims Similarly Fail Due to a Lack of Damages

1.    This Case is Moot Because There is No Effective Relief for the Court to Grant Following the Discharge of the Loan and Reconveyance of the Deed of Trust

Plaintiff's claims are moot because Defendants voluntarily forgave the balance on the Loan and released the Deed of Trust to terminate their relationship with Plaintiff. [SUMF 1-2] [PHH Decl. ¶3, 30-34, Ex. 1-2, 8-9, Schneider Decl. ¶6, Ex. 12 (83:19-85:19); FAC ¶9].

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Article III of the U.S. Constitution limits the judicial power to "Cases" and "Controversies," which requires that an actual controversy exist not only when a complaint is filed but throughout all stages of litigation. *See* U.S. Const. art. III, § 2, cl. 1. "A claim is moot if it has lost its character as a present, live controversy." *American Rivers v. National Marine Fisheries Service,* 126 F.3d 1118, 1123 (9th Cir.1997) (citations omitted). Thus, the Ninth Circuit has held that "[i]f an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Id.* (citation omitted). The Ninth Circuit has stated: "In other words, if events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (2011).

Defendants' voluntary lien release moots Plaintiff's claims for: (1) Breach of Contract, (2) Breach of the Implied Covenant of Good Faith and Fair Dealing, (3) Declaratory Relief, (4) Violation of Business and Professions Code, and (5) Intentional Interference in Contract because it resolves Plaintiff's dispute over the amount owed on the Loan and Defendants' compliance with the Loan and Settlement Agreement terms. To be clear, Plaintiff's alleged economic damages are now moot and no longer exist for: (1) Loan amounts charged in excess of those stated in the Settlement Agreement because all such amounts have now been waived and discharged; (2) $33,120.95 related to the "Credit" in the Settlement Agreement because those amounts have been discharged; (3) all other types of fees and costs related to the Loan incurred after the Settlement Agreement because they are discharged; (4) an inability to refinance at lower rates because the Loan was discharged and no refinance will ever be necessary; and (5) interest accrued on the Loan because all interest was waived and discharged. Plaintiff, simply stated, was made whole by Defendants' discharge of the Loan and reconveyance of the Deed of Trust.

As a result, Plaintiff has no ongoing relationship with Defendants, no pending foreclosure, and no open escrow account or balance on the Loan, leaving no actual, ongoing controversy capable of adjudication. *See, Vasquez Perdomo v. Noem,* No. 2:25-CV-05605-MEMF-SP, 2026 WL 475985, at *14 (C.D. Cal. Feb. 19, 2026) (noting a case may become moot if subsequent events made it clear the allegedly wrongful behavior cannot reasonably recur and events have eradicated the effects of the alleged violation) (internal citations omitted). Plaintiff's claims are moot.

2.      Any Claims Arising out of Conduct That Occurred Prior to the Settlement Agreement are Waived and Released

Plaintiff entered into the 2020 Settlement Agreement, while represented by counsel, and in so doing agreed to a complete waiver and release of all known and unknown claims against Defendants with a waiver of Civil Code § 1542. This release acts as a complete bar to recovery for any conduct of Defendants that occurred on or before the date of Plaintiff's signature (March 4, 2020). *Salehi v. Surfside III Condominium Owners' Assn.*, 200 Cal.App.4th 1146 (2011); *Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222 (2007). This includes any and all damages incurred prior to that date, any and all claims related to the establishment of the escrow impound account because it was created in February 2020, prior to the effective date of the Settlement Agreement, and any and all claims related to the advances made for property taxes by defendants pursuant to the Loan and escrow impound account established prior to the Settlement Agreement.

Most notably, PHH created an escrow impound account for taxes in February 2020, and sent an annual escrow statement dated February 11, 2020 to Plaintiff, c/o his previous attorney, Brian Liddicoat. [SUMF 4] [PHH Decl. ¶9; Schneider Decl. ¶6, Ex. 12 (175:18-183:25)]. Plaintiff's previous attorney acknowledged receipt of the statement, Plaintiff admitted that Brian Liddicoat would forward all Loan items to Plaintiff, and Plaintiff's current attorney admits that "nobody disputes that this letter was received by [Brian Liddicoat]" and that "the knowledge of [Plaintiff's] lawyers [is] imputed to him by law." [SUMF 4] [Schneider Decl. ¶6, Ex. 12 (175:18-183:25)].

Specifically, this waiver applies to Plaintiff's allegations related to Defendants': (1) alleged breach of the Loan by failing to give notice in writing of the change in mortgage payment and interest rate in 2015 and 2019 (ECF 34, ¶66); (2) alleged breach for the payment of property taxes "early" because it is premised on the theory that Defendants improperly established the escrow impound account in 2020 (ECF 34, ¶67, 80); (3) alleged improper business practice by imposing a "surprise escrow impound account" in 2020  (ECF 34, ¶102, 108); (4) alleged Rosenthal Act violation because "no impound was allowed or agreed to" in 2020 and the mortgage statements "incorrectly state that there is an escrow impound account (ECF 34, ¶113, 114, 116); and (5) alleged interference with the Loan for paying property taxes in advance based on the established escrow impound account (ECF

8

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

34, ¶125, 126). This reality further moots any damages claims for Plaintiff's claims for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Violation of Business and Professions Code, Rosenthal Act, and RESPA.

3.    Plaintiff's Alleged Damages for Loss of Ability to Refinance are Speculative

The threshold question in any damages analysis is whether the claimed injury meets the applicable certainty standard. California Civil Code § 3300 provides that for breach of contract, the measure of damages is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." California Civil Code § 3301 imposes a critical limitation: "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." For tort claims, California Civil Code § 3333 provides that damages are "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not" — even tort damages must be proven with reasonable certainty and cannot rest on speculation.

It is black-letter law that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Navellier v. Sletten*, 262 F.3d 923, 939 (9th Cir. 2001). These standards govern whether refinancing-related damages claims survive a challenge for speculative or theoretical damages. The fundamental principle, as articulated by the Ninth Circuit in *Vestar Development II, LLC v. General Dynamics Corp.*, 249 F.3d 958 (2001), is that under California's reasonable certainty requirement, "the proof must establish with reasonable certainty and probability that damages will result." A plaintiff must prove damages to a "reasonable certainty," which requires a factual foundation — not a hypothetical chain of inferences about what a willing lender might have offered and what benefits a borrower might have obtained. *Id.* at 961-62.

Where there is no evidentiary anchor – no actual refinancing offer, no documented lending denial, no specific loan terms to compare – the damage claims collapse into pure conjecture that cannot be maintained. *See Auerbach v. Great Western Bank*, 74 Cal.App.4th 1172, 1191 (1999). The type of evidence that courts have found sufficient includes: actual loan offers and documented denials (as in *In re Breul*, 533 B.R. 782, 795 (2015)) and documented contractual terms that establish the differential between the loan obtained and the loan the borrower should have received (as in *Smith v.*

*Home Loan Funding, Inc.*, 192 Cal.App.4th 1331, 1336 (2011)); *see also Stratton v. Tejani*, 139 Cal.App.3d 204, 214-15 (1982). Absent such a foundation, a damage claim for an inability to refinance is theoretical. *Vestar Development II, LLC*, 249 F.3d at 961-62 (2001) (the Ninth Circuit found that the alleged damages were speculative because the letter of understanding did not establish terms for the sale, but rather only a starting point from which negotiations would continue); *Auerbach*, 74 Cal.App.4th at 1191 (1999) (the Court of Appeal found the jury's aware was based on pure speculation because there was no proposal for modification to serve as the foundation for calculating the actual financial benefit that would have been received by the plaintiffs); *Robbins v. CitiMortgage, Inc.* 2017 WL 6513662 *17 (N.D. Cal. Dec. 20, 2017) (Judge Koh found that the plaintiff's damages theory would have required the Court to guess what interest plaintiff's money may have earned compared to interest on a loan the plaintiff never received was speculative).

This is directly on point with the undisputed facts here. Plaintiff has no evidence to establish damages related to his alleged inability to refinance because he did not receive an actual refinancing offer and has no documented evidence of a lending denial. Plaintiff admitted this time and time again in his deposition, stating he "never was officially approved," was never denied, and was never conditionally approved for a refinance between 2020 and 2024. [SUMF 5-7] [Schneider Decl. ¶6, Ex. 12 (147:8-157:18, 169:8:170:19, 172:4-174-10)

In fact, Plaintiff never actually submitted an application to be approved for a refinance. Plaintiff testified that his application was not submitted based on the assumption that he would be denied. [SUMF 8] [Schneider Decl. ¶6, 10-11 Ex. 12 (207:1-208:6), 16-17].

Plaintiff also has no evidence of any "complete applications for refinancing, including from 2020 to present, including ALL supporting documents submitted therewith, including tax returns" despite being ordered by the Court to produce this information on March 3, 2026. [ECF 148-1, Page 7-9]. Plaintiff's brokerage, Argus Homes Loans, including Phil Lewis, also failed to provide any evidence of Plaintiff's applications for refinancing despite Plaintiff's counsel representing these documents would be produced to the Court [SSUMF 8] [Schneider Decl. ¶10; ECF 139] and the Court's subsequent order for these documents to be produced. [SSUMF 8] [Schneider Decl. ¶10, Ex. 16; ECF 150, Page 14]. Plaintiff failed to produce any supporting documents because no such

documents exist.  Consequently, even if they hadn't been mooted by Defendants' discharge of the Loan, Plaintiff's alleged damages related to an inability to obtain new financing are theoretical and unrecoverable for Plaintiff's claims for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Violation of Business and Professions Code, Rosenthal Act, Intentional Interference with Contract, Slander of Title, and RESPA

4.    <u>Plaintiff's Alleged Damages for Loss of Credit Expectancy are Speculative</u>

Whether Plaintiff's alleged credit expectancy damages are recoverable follows the same pattern as the refinance damages under California Civil Code § 3300, 3301, and 3333 – they must be proven with reasonable certainty and cannot rest on speculation.

A clear statement on the non-recoverability of purely theoretical credit expectancy damages appears in *Rasidescu v. Midland Credit Management, Inc.*, 435 F.Supp.2d 1090, 1097 (2006), where the court found claims were unrecoverable because they were impermissibly theoretical. In *Rasidescu*, the Ninth Circuit explained that actual damages are those "existing in fact or reality," contrasted with "potential" or "hypothetical," and "it follows that 'actual damages' are those which compensate someone for the harm which he or she has been proven to currently suffer or from which the evidence shows he or she is certain to suffer in the future." *Rasidescu*, 435 F.Supp.2d at 1090.

Once again, this is directly on point with the undisputed facts here. Plaintiff has no evidence to establish damages related to credit loss because he was not denied any credit, and he refrained from obtaining new credit based on his assumption that he would not receive it. [SUMF 9] [Schneider Decl. ¶6, Ex. 12 (215:1-15)]. When asked in an interrogatory to describe how he suffered a "loss of credit expectancy," Plaintiff claimed he "was unable to get credit for his business or to fix up his home or to buy a new car." But at deposition he admitted he was never denied any credit opportunity, paid for his work truck in cash, and successfully secured credit to put in new floors in the Property. [SUMF 9-10] [Schneider Decl. ¶6, 11, Ex. 12 (215:1-15, 216:25-218:23), 17].  Plaintiff also admitted at deposition that he bought his wife a car after totaling hers while driving under the influence, and tellingly, he financed it with "a really bad interest rate", but that was in 2017 or 2018.

In addition to this testimony, Plaintiff has not provided any evidence of his "loss of credit expectancy" despite being ordered by the Court to produce any such evidence on March 3, 2026.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(ECF 148-1, Page 7-9, 12-13). [SUMF 9] [Schneider Decl. ¶11, Ex. 17; ECF 150]. This failure and speculative damages further moot Plaintiff's claims for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Violation of Business and Professions Code, Rosenthal Act, Intentional Interference with Contract, Slander of Title, and RESPA.

5.      Plaintiff's Alleged Damages Related to Credit Reporting are Preempted

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2, governs Defendants' duties as a furnisher of credit reporting information and preempts claims based on such credit reporting or seeking damages for such reporting. Specifically, that means the following claims premised on credit-reporting conduct are preempted in whole or in part: (1) Defendants' breach of contract for failure to properly report his credit; (2) Defendants' breach of the implied covenant that precluded Plaintiff from refinancing based on the credit reporting; (3) Defendants violated the Business and Professions Code and caused damages to Plaintiff because he allegedly lost the ability to refinance at lower rates based on the credit reporting; and (4) Defendants' intentional interference with contract caused Plaintiff damages because he was unable to refinance based on the credit reporting.

The FCRA contains various provisions that limit private claims against furnishers of credit information. First, § 1681s-2(d) limits enforcement of a furnisher's duty to provide accurate information to "Federal agencies and officials and [specific] State officials," while granting private actors only the right to enforce the duties of furnishers upon notice of a dispute from a Credit Reporting Agency under § 1681s-2(b). See §§ 1681s-2(a), 1681s-2(b), 1681s-2(c)(1)-(3), 1681s-2(d). *See also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009) (holding plaintiff has no private right of action to proceed against a credit furnisher for its initial failures in reporting, but only to challenge the furnisher's handling of a dispute received under § 1681s-2(b)).

District Courts in the Ninth Circuit have consistently found that § 1681t(b)(1)(F) "clearly eliminate[s] all state causes of action against furnishers of information" based on credit reporting unless there is an explicit exception. *See, e.g., Medina v. Two Jinn, Inc.*, 2024 WL 4485586, at *3 (N.D. Cal. Aug. 21, 2024) (citing numerous cases). Moreover, § 1681t(b)(1)(F) preempts, as a matter of law, all "state law claims assert[ing] credit reporting harms . . . ." *Cisneros v. Freedom Mortgage Corp.*, 2023 WL 8870507, at *6 (C.D. Cal. Dec. 14, 2023) (citing other holdings).

This Court thus should grant summary adjudication on all of Plaintiff's alleged credit damages for his first (Breach of Contract), second (Breach of the Implied Covenant of Good Faith and Fair Dealing), fourth (Violation of Business and Professions Code), and sixth (Intentional Interference with Contract) causes of action, including his alleged inability to refinance, because each is premised on the credit reporting for the Loan. [SUMF 11] [Schneider Decl. ¶3-5, Ex. 10-11; FAC ¶73, 75, 84, 107, 120, 132, 134, 142, 150]. Such damages may not be obtained because claims seeking credit-related damages or pursuing credit reporting conduct are preempted and precluded.

**B.      Plaintiff's Individual Claims in the First Amended Complaint Should Further Be Dismissed for Claim-Specific Reasons**

1.      Plaintiff's Claim for Breach of Contract Fails Because He Has No Damages

As noted above, the Magistrate Judge correctly deemed this a "breach of contract case" that's "not that complicated", and it's even less complicated now that Plaintiff's damages are mooted and the claim must be dismissed. The elements of breach of contract are well-known and include a requirement for Plaintiff to establish damages. *See Reichert v. General Ins. Co. of America.* (1990) 68 Cal.2d 822, 830; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388; *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). To establish contractual damages, a Plaintiff must establish "appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir.2000). Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury. *Id*. As noted above, between the discharge of the Loan, reconveyance of Deed of Trust, and theoretical damages, Plaintiff cannot demonstrate anything recoverable to sustain this claim. [SUMF 1-2, 5-10] [PHH Decl. ¶10, 28-32, Ex. 3, 8-9; Schneider Decl. ¶6, Ex. 12 (147:8-157:18, 169:8:170:19, 172:4-174-10].

2.      Plaintiff's Claim for Breach of Covenant of Good Faith and Fair Dealing Fails Because There Is No Unfair Interference

A "'breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself' and it has been held that '[b]ad faith implies unfair dealing rather than mistaken judgment." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1394 (1990);  *see Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 968 (N.D.

Cal. 2010). "[The] plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Levy v. JP Morgan Chase,* No. 10–01493, 2010 WL 4641033, at *3 (S.D.Cal. Nov. 5, 2010); *see also Curley v. Wells Fargo & Co.,* No. 13–03805, 2014 WL 7336462, at *5 (N.D.Cal. Dec. 23, 2014).

In the mortgage context, a borrower must frame the implied covenant claim around the servicer's bad faith exercise of discretion or conduct that goes beyond a technical contract breach— not merely a restatement that the servicer failed to provide accurate statements as required by the contract. *See Nasseri v. Wells Fargo Bank, N.A.*, 147 F.Supp.3d 937 (2015); *see also Gonzalez v. Specialized Loan Servicing, LLC*, 691 F.Supp.3d 1162 (2023). Plaintiff's claim for breach of the implied covenant is a restatement of the breach of contract claim, and there is no evidence that demonstrates Defendants engaged in any conduct beyond a technical contract breach in allegedly failing to apply the reinstatement funds or allegedly failing to issue correctly stated mortgage statements. *See Akopian v. JPMorgan Chase Bank, N.A.*, No. CV 14-05760-RGK (PLAx), 2014 WL 12591623, at *4 (C.D. Cal. Sept. 24, 2014); *Tasaranta v. Homecomings Fin.*, No. 09-CV-01722-H (WMC), 2009 WL 3088335, at *6 (S.D. Cal. Sept. 21, 2009). [SUMF 12] [FAC ¶80-82].

### 3.    Plaintiff's Claim for Declaratory Relief is Improper

"The declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action." *California Insurance Guarantee Association v. Superior Court*, 231 Cal.App.3d 1617, 1623-1624 (1991) (*quoting General of America Ins. Co. v. Lilly*, 258 Cal.App.2d 465, 470 (1968)); *see also Hood v. Superior Court*, 33 Cal.App.4th 319, 324 (1995). A dismissal of a claim for declaratory relief is proper where that claim is derivative of other non-viable claims. *Ball v. FleetBoston Fin. Corp.* (2009) 164 Cal.App.4th 794, 800; *Cal. Ins. Guar. Ass'n v. Sup. Ct.* (1991) 231 Cal.App.3d 1617, 1623.

### i.    Plaintiff's Claim is Duplicative and Superfluous

Plaintiff's claim for declaratory relief seeks to determine the same issues as his remaining claims, namely, whether Defendants have complied with the Settlement Agreement or violated any statutory provisions in the post-Settlement servicing of the Loan. [SUMF 13] [FAC ¶95, 97]. Plaintiff's declaratory relief claim is superfluous because the issues will be determined by the seven

other claims, namely Breach of Contract, Rosenthal Act, and RESPA. Plaintiff's declaratory relief claim also fails for the same reasons as the other claims because it is derivative.

ii.    Plaintiff Improperly Seeks to Remedy Past Wrongs

Declaratory relief is also not available to remedy past wrongs. California Code of Civil Procedure § 1060; *Otay Land Co. v. Royal Indem. Co.* (2008) 169 Cal.App.4th 556, 562. Declaratory relief operates prospectively to declare future rights, not to redress past wrongs. *County of San Diego v. State* (2008)164 Cal.App.4th 580, 607. Plaintiff's claim for declaratory relief is improper to the extent it seeks to redress a past wrong, such as the application of reinstatement funds and the amounts demanded in the mortgage statements. [SUMF 14] [FAC ¶95, 97].

iii.    Plaintiff's Claim Does Not Have Any Actual and Live Controversy Following Loan Discharge

Finally, Plaintiff claims "[t]here is an actual controversy regarding the rights of the parties and the amounts owed" on the Loan following the Settlement. (ECF 34, ¶87). There is no longer an "active controversy" for declaratory relief because Defendants have forgiven/discharged the Loan and released/reconveyed the Deed of Trust.  See *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co.*, 56 Cal. App. 5th 413, 433-434 (2020) (finding quiet title and declaratory relief actions were rendered moot after [the defendant] released the subject lien); Code Civ. Proc., § 1060. There is no live controversy or reasonable expectation of recurrence over future servicing. [SUMF 15-17] [PHH Decl. ¶30-34, Ex. 8-9; FAC ¶95, 97].

4.    Plaintiff's Claim for Violation of Business and Professions Code §17200 Fails Because There Are No Available Restitutionary Damages

The UCL "is not an all-purpose substitute for a tort or contract action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150 (2003).  To establish standing, Plaintiff must prove he "(1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). A plaintiff does not have standing if he would have suffered the same harm regardless of whether a defendant complied with the law. *Daro v. Superior Ct.*, 151 Cal.App.4th 109 (2007). Further, in the context of the UCL, Plaintiff is only entitled to restitution, which is limited to the return of property or funds in which Plaintiff has an

ownership interest. *Madrid v. Perot Systems Corp.,* 130 Cal.App.4th 440, 452 (2005), *citing People ex rel. Kennedy v. Beaumont Investment, Ltd.,* 111 Cal.App.4th 102 (2003). Plaintiff cannot establish an economic injury because it is undisputed that: (1) he has not lost the Property – in fact, he now owns the property free and clear of this Loan and Deed of Trust; and (2) Defendants did not take any money from Plaintiff following the reinstatement amount required pursuant to the terms of the Settlement Agreement. There is no money or property for Defendants to return to Plaintiff.

Plaintiff claims he "suffered injury in fact and direct financial loss caused by Defendants' actions because he was unable to become current and lost the ability to refinance at lower rates." This relief is unnecessary because it has all been resolved by the forgiven/discharged Loan and released/reconveyed Deed of Trust. *See Donald v. Cafe Royale, Inc.,* 218 Cal.App.3d 168, 184 (1990) (finding the request for injunctive relief is moot where the relief requested was already achieved). Plaintiff's default no longer exists, the Loan was forgiven, and there is no threat of foreclosure. There is no escrow impound account, there are no future property taxes or insurance owed to Defendants, no further monthly billing statements, and no future collection of late fees, foreclosure fees, attorney fees, or any other type of charge or fee because they have all been wiped out. There is no further relief available to Plaintiff. [SUMF 18-20] [PHH Decl. ¶19-25, 28, 30-34, Ex. 8-9].

5.    Plaintiff's Claim for Violation of the Rosenthal Act Fails

The purpose of the Rosenthal Act is to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts. *See* Cal. Civ. Code § 1788.17. The Rosenthal Act incorporates the requirements of the FDCPA. *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012), citing Cal. Civ. Code § 1788.17. Plaintiff's theory is that PHH sent "inaccurate and misleading billing statements from July 2020 to present." However, Plaintiff concedes that this was not the cause of any alleged emotional distress. [SUMF 21] [Schneider Decl. ¶5-6, Ex. 11-12 (215:1-15, 216:25-218:23)]. This lack of causality on top of the speculative nature of Plaintiff's damages is fatal to the claim.

i.    Plaintiff Does Not Have Causally Linked Damages

Federal courts in California have applied the Article III injury requirement to dismiss Rosenthal Act claims where the plaintiff failed to allege concrete injury. In *Manzanarez v. Madera*

---

16

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Collection Services*, 722 F. Supp. 3d 1074 (E.D. Cal. 2024), the Eastern District of California dismissed similar FDCPA claims for lack of Article III standing where the plaintiff alleged only that the defendant sent him an undated debt collection letter but failed to establish that he suffered any concrete harm—such as actual credit damage, out-of-pocket loss, or real emotional distress—from the alleged violation. *Manzanarez v. Madera Collection Services*, 722 F.Supp.3d 1074 (2024).

Plaintiff's Rule 26 Initial Disclosures – which have not been amended – state that he suffered emotional distress damages of "not less than $300,000 on account of the stress caused by the wrongdoing and the threat and fear of losing the house to foreclosure. This led Plaintiff to believe he was having heart attacks several times, and the stress caused severe anxiety causing serious harm in his family and personal life, including leading to him separating from his wife."

Plaintiff lacks credibility because his verified statements and testimony are either self-contradictory or contradicted by the testimony of his wife and family. Plaintiff lacks evidence to prove his emotional distress damages are causally linked or "real." [SUMF 21] [Schneider Decl. ¶5-6, Ex. 11-12 (215:1-15, 216:25-218:23)].

| **Plaintiff's Claim** | **Contradictory Evidence** |
|---|---|
| Plaintiff claims he lost sleep because of the stress caused by Defendants. | Plaintiff testified that he gets seven to eight hours of sleep every night. |
| Plaintiff claims the issues with PHH impacted his ability to work. | Plaintiff testified that he has worked full-time – if not more – consistently since 2020 |
| Plaintiff claims Defendants' actions caused marital strife, resulting in his wife moving out, he and his wife separating, and an inability to reconcile with his wife. | Plaintiff caused a car accident in October 2017 where he was charged with driving under the influence and spent the night in jail. Plaintiff claimed that his wife only suffered a broken ankle. In reality, Plaintiff's wife broke both her legs, fractured her neck, broke multiple ribs, and had a punctured lung. She was airlifted to the hospital, underwent emergency surgery, and spent six days in the hospital. She then spent six months in physical therapy before she started walking again. Plaintiff claims the car accident had no impact on his marriage; a position with which his wife and his father disagree. |
| Plaintiff claims his wife did not move out of the Property until the beginning of 2020 as a result of Defendants' conduct. | Plaintiff's wife confirmed she moved out of the Property in November 2018 shortly after she was able to walk again following the October 2017 car accident caused by Plaintiff. |

| Plaintiff claims he and his wife were on a path towards reconciling. | His wife disagreed and stated there has been "no real attempt" to reconcile, she "never tried moving back in," and she has considered filing for divorce. This is further demonstrated by the fact Plaintiff and his wife have never pursued any couples counseling. Moreover, Plaintiff's wife began dating other people in 2019, and Plaintiff began dating other people in 2020. |
|---|---|
| Plaintiff claims Defendants' actions caused issues with his friends. | Plaintiff testified he stayed with friends on his annual trips to Indonesia, he was recently invited to a bachelor's party, participates in holiday celebrations (including the 4th of July party that resulted in his second DUI), and even made new friends by picking up a hobby – flying remote controlled gliders with a group every Sunday. |

[SUMF 22--30] [Schneider Decl. ¶6, Ex. 12 (78:3-79:16, 225:16-235:24), 13 (16:13-17:1, 17:14-21, 18:16-20, 30:17-31:13, 31:25-32:6), 14 (38:2-39:10), 15 (24:19-25:1, 31:1-32:7)]; see also [Schneider Decl. ¶6, Ex. 12 (243:4-244:4), 13 (22:16-23:22), 14 (27:20-29:7)]. Plaintiff's claim for emotional distress is further diminished because he admitted that he has not had "any form of communication" directly with Defendants. Plaintiff's attorneys handled the management of Plaintiff's claims related to this lawsuit. [Schneider Decl. ¶6, Ex. 12 (110:11-25, 188:13-24)]

In similar situations where the record belies a plaintiff's allegations, courts have granted summary judgment on Rosenthal Act claims. *See, e.g.*, *Costa v. National Action Financial Services*, 634 F.Supp.2d 1069 (E.D. Cal. 2007) (the court found that plaintiff's description of her symptoms was insufficient: she claims "that she has occasional trouble sleeping to date," that she had not "seen any medical professionals as a result of her alleged ailments," did not "take any medications, prescription or over-the-counter." The court found this evidence "transitory in nature and of the type not recoverable." Most damagingly, the plaintiff had "no corroborating evidence — no witnesses to confirm her symptoms and no documentary evidence to support her claims. Without such evidence to buttress her assertions, plaintiff's claims cannot go forward.")

Plaintiff does not have any other evidence that he suffered concrete harm from the "inaccurate and misleading billing statements from July 2020 to present." Plaintiff has not demonstrated any actual credit damage; it is also not cognizable that any inaccurate and misleading billing statement sent only to Plaintiff or his counsel could cause credit damage. Plaintiff has not suffered any out-of-

pocket loss because he has not made and will never have to make any payment for the Loan or any amounts stated in the billing statements. There is no evidence that Plaintiff suffered emotional distress that is causally linked to the billing statements. Plaintiff has taken the position that his emotional distress has been ongoing for 10 years and that it was primarily caused by the threat and fear of losing his home – not because of billing statements related to a post-Settlement dispute that was being handled by his attorneys. [SUMF 21] [Schneider Decl. ¶6, Ex. 12 (215:1-15, 216:25-218:23)].

ii.    The Escrow Impound Account and Advances Made are Proper

PHH established an escrow impound account in February 2020 – prior to the effective date of the Settlement Agreement. [SUMF 4] [PHH Decl. ¶9; Schneider Decl. ¶6, Ex. 12 (175:18-183:25)]. Plaintiff cannot argue that the inclusion of an escrow impound account is now a violation of the Rosenthal Act when the establishment of the account was released and waived. The Deed of Trust, Paragraphs 3 and 4, expressly permit Defendants to advance funds for property taxes on an escrowed loan. [SUMF 31] [PHH Decl. ¶3, Ex. 2].

iii.    The Statute of Limitations Has Expired

The Court need not even reach the substance of this claim because it is time barred.  Plaintiff alleges Defendants violated the Rosenthal Act by falsely representing the status of the Loan (Civil Code § 1788.17, incorporating 15 U.S.C. § 1692e(2)) because the monthly billing statements sent from July 2020 are wrong because they incorrectly state that there is an escrow impound account, and the amount for escrow impound account is inaccurate. (ECF 34, ¶14). Rosenthal Act claims must be brought "within one year from the date of the occurrence of the violation." Civil Code § 1788.30(f). These actions fall outside of the one-year statute of limitation period because Plaintiffs did not file until August 9, 2024, after choosing to first make three unsuccessful attempts to enforce the same claims under the 2020 settlement agreement. [SUMF 33] [ECF 7-1; FAC ¶52].

6.    Plaintiff's Claim for Intentional Interference with Contract Fails

A plaintiff must establish five elements: (1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *The Kind & Compassionate v. City of Long Beach*, 2

19

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Cal.App.5th 116 (2016); *Nelson v. Tucker Ellis, LLP*, 48 Cal.App.5th 827 (2020); *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F.Supp.2d 1044 (2003).

          i.          <u>PHH Cannot Interfere to a Mortgage Loan it was Servicing</u>

The California Supreme Court's decision in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994) established that a contracting party cannot be held liable in tort for interfering with its own contract. A mortgage loan servicer typically acts as the loan owner's contracting party in administering the loan. Under California law, the representative of a contracting party may not be held liable for the tort of interfering with its principal's contract. *Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594 (2009). In that case, the California Court of Appeal held that an insurance claims administrator could not be liable for intentional interference with the very contract it was charged with administering, because it was not a "stranger" to that contract. PHH was the servicer of the Loan on behalf of HSBC, as Trustee. [SUMF 34-35] [PHH Decl. ¶5-6]. PHH had the power and authority to administer the Loan on behalf of the contracting party, HSBC, as Trustee. PHH cannot be liable for intentional interference with the Loan it was contracted to administer.

          ii.          <u>Plaintiff Has Not Suffered Damages as a Result of the Alleged Interference</u>

Resulting damage and causation are distinct, essential elements of intentional interference with a contract. A plaintiff cannot satisfy the damages element merely by showing that an interference occurred; the plaintiff must demonstrate that actual harm flowed from the defendant's conduct. The Ninth Circuit has confirmed, applying California law, that California uses the substantial factor test to determine causation in intentional tort cases, including intentional interference with contract. *Bank of New York v. Fremont General Corp.*, 523 F.3d 902 (2008).

Plaintiff has again alleged damages for his inability to refinance, emotional distress, and punitive damages, which are speculative or mooted (*see*, *infra*, Sections III.A. and III.C.). [SUMF 37] [FAC ¶132, 134]. Furthermore, emotional distress damages are not routinely recoverable in intentional interference with contract actions. In *Di Loreto v. Shumake*, 38 Cal.App.4th 35 (1995), the California Court of Appeals held that such damages "are not routinely recoverable for interference with prospective economic advantage or with contractual relations." The court rejected an emotional

distress award in an ordinary business dispute, reasoning that if emotional distress were available wherever a business contract was interfered with, it would be virtually impossible to identify a case in which they were not recoverable. The court recognized that emotional distress is at most available only in cases involving extreme and outrageous conduct that invades a specifically protected interest. *Id.* at 41-42.  In the Northern District, emotional distress claims are "generally not available where the alleged wrongdoing results only in economic injury to the plaintiff." *Averbach v. Vnescheconombank*, 280 F.Supp.2d 945, 960 (2003) (the court found that emotional distress damages are not available for tort claims for economic loss related to a breach of contract); *see also  Erlich v. Menezes*, 21 Cal.4th 543, 555 (1999) ("No California case has allowed recovery for emotional distress arising solely out of property damage; moreover, a preexisting contractual relationship, without more, will not support a recovery for mental suffering where the defendant's tortious conduct has resulted only in economic injury to the plaintiff.")

This is a case where Plaintiff is only claiming financial injury and does not have any non-economic injury; thus, emotional distress damages are unavailable in this District. [SUMF 36] [Schneider Decl. ¶6, Ex. 12 (226:16-229:16, 247:12-248:11)]. This is also not a case involving extreme and outrageous conduct. This is a case that involves a post-Settlement dispute where the parties worked together *through counsel* to try and resolve the issues raised by Plaintiff. Plaintiff's attempt to characterize this post-Settlement dispute as an intentional tort is misplaced.

7.    Plaintiff's Claim for Slander of Title Fails

To assert a claim for slander of title, a plaintiff must show (1) publication; (2) of a false statement; (3) the absence of privilege to make such a statement; and (4) disparagement of the plaintiff's land that is relied upon by a third party and, which results in a pecuniary loss to the plaintiff. *Gilliam v. Bank of America, N.A*. (C.D. Cal. 2018) 2018 WL 6537160, at *18. Under California law, the "mailing, publication, and delivery of notices" required as part of the nonjudicial foreclosure process are considered privileged communications. Cal. Civ. Code § 2924(d)(1); s*ee, e.g., Matthews v. Caliber Home Loans* (E.D. Cal. Jan. 31, 2020) 2020 WL 509070, at *8. The main thrust of a slander of title cause of action is protection from injury to the salability of property. *Sumner Hill Homeowners' Association, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal.App.4th 999, 1030 (2012).

i.    The Notice of Default and Notice of Trustee's Sale are Privileged

The Loan was in default, leading to the Notice of Default and Notice of Sale. California law is clear that these documents constitute "privileged" publications. Cal. Civ. Code § 2924(d); *Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1336 ("The recording of a notice of sale and notice of default are privileged)." [SUMF 38-39] [PHH Decl. ¶26-27, Ex. 5-6; FAC ¶47].

ii.    Plaintiff Does Not Have Recoverable Damages Because They Were Not Disclosed in His Rule 26 Initial Disclosures

Plaintiff does not have recoverable damages because he failed to disclose them in his Federal Rule of Civil Procedure, Rule 26 Initial Disclosures. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FRCP Rule 37 The Advisory Committee Notes describe this as a "self-executing," "automatic" sanction designed to "provide a strong inducement for disclosure of material." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (2001).

Because Rule 37(c)(1) explicitly covers evidence used on a motion (not merely at trial), it directly applies at the summary judgment stage. The Ninth Circuit confirmed in *Santa Clarita Valley Water Agency v. Whittaker Corp.* that "[i]f a party fails to disclose information required by Rule 26 then exclusion of the evidence under Federal Rule of Civil Procedure 37 is proper." *Id.*

Rule 26(e) imposes a continuing duty to supplement initial disclosures: a party must update its damages computation "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." FRCP Rule 26 The Northern District of California has held that when a party's damages theory shifts materially, Rule 26(e) requires supplementation of earlier disclosures, and failure to do so can trigger Rule 37(c)(1) sanctions. *Looksmart Group, Inc. v. Microsoft Corporation*, 386 F.Supp.3d 1222 (2019)

Plaintiff's Rule 26 disclosures do not make any reference to damages for "loss of a particular sale, impaired marketability, or depreciation in value of the property." [SUMF 40-41] [Schneider Decl. ¶3-4, Ex. 10]. Plaintiff is now precluded from offering any evidence of these damages at summary judgment, which is fatal to his claim.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

8. <u>Plaintiff's Claim for Violation of RESPA Fails Because There Are No Causally Linked Damages</u>

California federal courts applying Ninth Circuit precedent have consistently held that actual damages, causally linked to the specific RESPA violation, are a required element of a Section 2605 claim. The Ninth Circuit in *Carswell v. JP Morgan Chase Bank N.A.* affirmed dismissal of a § 2605 RESPA claim for failure to allege any actual damage, "which is required as an element of a RESPA claim," affirming that damages is not a mere remedial issue but a pleading and merits element. *Carswell v. JP Morgan Chase Bank N.A.*, 500 Fed.Appx. 580 (2012).

The Eastern District of California in *Lal v. American Home Servicing, Inc.*, 680 F.Supp.2d 1218 (2010) clarified the scope of this requirement: the damages must "be related to the RESPA violation itself." The court revised an earlier position that the incorporated cost of having to file suit was sufficient actual damage, holding that "[n]or does simply having to file suit suffice as a harm warranting actual damages." That is, if filing a lawsuit inherently constituted actual damages, every RESPA suit would automatically satisfy the damages element, which courts have rejected. *Lal v. American Home Servicing, Inc.*, 680 F.Supp.2d 1218 (2010).

The Southern District of California in *Loewy v. CMG Mortgage, Inc.*, 385 F.Supp.3d 1083 (2019) granted summary judgment where plaintiffs could not demonstrate damages causally linked to delays in responding to qualified written requests, even though a substantial financial loss existed, because that loss was "wholly unrelated" to the alleged RESPA violation. The court cited the Ninth Circuit for the proposition that the failure to provide evidence of actual damages resulting from an alleged violation is fatal to a RESPA claim. *Loewy v. CMG Mortgage, Inc.*, 385 F.Supp.3d 1083 (2019). Similarly, *Hahn v. Select Portfolio Servicing, Inc.*, 424 F.Supp.3d 614 (2020) confirmed that actual damage is a required element of a RESPA claim, declining to find RESPA liability even where the borrowers suffered real distress, because the harm was not causally attributable to the particular servicing violation alleged.

Plaintiff does not have any evidence to support a claim for damages related to the allegation that PHH was "charging far too much for escrow impound" and that he suffered "damages caused by the rejection of his payments for the last five years." [SUMF 42] [Schneider Decl. ¶5-6, Ex. 11, 12

(215:1-15, 216:25-218:23, 225:16-235:24)]. Any damages related to additional loan amounts assessed – such as late fees and interest – resulting from the rejection of any payment are now moot following the discharge of the Loan because Plaintiff did not pay any additional amounts and will never have to do so. Finally, and to the extent Plaintiffs seek to recover emotional damages, such a request is improper and unsupported. At least one court in this district has held that emotional distress damages are not recoverable under RESPA because such damages are not pecuniary in nature. *See Ramanujam v. Reunion Mortgage, Inc.*, Case No. 5:09-cv-03030;JF/HRL, 2011 WL 446047, *5 (N.D. Cal. Feb. 3, 2011). There must exist a direct link between the damages and the alleged misconduct. Here, to the extent Plaintiffs suffered any emotional harm, he contends it was due to Defendants' alleged failure to comply with the Settlement Agreement and his subsequent inability to refinance. *See Flate v. Mortgage Lenders Network USA, Inc.*, Case No. CV 15-08873-AB (FFMx), 2016 WL 9686051, *3-4 (C.D. Cal. March 4, 2016) (citing multiple cases). Plaintiff has taken the position his emotional distress has been ongoing for 10 years and was primarily caused by the threat and fear of losing his home – not because of allegedly overstated escrow amounts related to a post-Settlement dispute that was being handled by his attorneys.

9.  <u>Plaintiff Does Not Have Any Evidence to Establish Punitive Damages</u>

There is no "clear and convincing evidence" of malice, oppression, or fraud by Defendants in order to award punitive damages.  Civil Code § 3294(a); *Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112, 1118-19 (2001). "There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called willful or wanton." *Mock v. Michigan Millers Mutual Ins. Co.*, 4 Cal.App.4th 306, 328 (1992).

Further, in the specific context of corporate entities such as Defendants, Plaintiff must prove "advance knowledge and conscious disregard, authorization [or] ratification" of the alleged wrongful conduct, or an act of oppression, fraud, or malice by an "officer, director, or managing agent of the corporation." Civil Code § 3294(b).  Plaintiff must show that an officer, director or managing agent "actually knew about the misconduct and its oppressive character," as one cannot ratify "that which it does not actually know about." *Cruz v. Home Base*, 83 Cal.App.4th 160, 163, 168 (2000).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff has no evidence to support punitive damages. This dispute derives from the parties' disagreement about the verbiage in the Settlement Agreement negotiated by both parties' prior counsel (*see, infra*, Section II.A.1.). The disagreement arose based upon amounts that PHH advanced for Plaintiff's past-due property tax advances. Rather than evidence of malice, oppression, or fraud, the evidence shows Defendants credited the account more than the amount labeled "Credit" in the Settlement Agreement and, ultimately, discharged the Loan and reconveyed the Deed of Trust. Merely because Plaintiff was dissatisfied with Defendants' efforts does not mean that Defendants acted with malice. *See Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1287-88 (1994) (a plaintiff's dissatisfaction with a defendant's performance, however genuine, does not establish malice).  In fact, in *Tomaselli*, the court expressly noted "Surely the retention of outside legal counsel to investigate a questionable case cannot be deemed malicious." *Id*. [SUMF 43-44] [PHH Decl. ¶15-18; Paino Decl. ¶9-14].

## IV.    CONCLUSION

Plaintiff's case is moot. There are no recoverable damages following Defendants' voluntary discharge of the loan and release of the lien. Plaintiff should not be permitted to continue to waste judicial resources on an action where he has already received a massive benefit that is not commensurate with his claims and disproven theoretical damages. Summary judgment is appropriate.

DATED:  May 22, 2026          **HOUSER LLP**

/s/ Robert W. Norman, Jr.
Robert W. Norman, Jr.
Timothy A. Schneider
Attorneys for Defendants
PHH MORTGAGE CORPORATION and  HSBC
BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE FOR DEUTSCHE ALT-A SECURITIES
MORTGAGE LOAN TRUST, SERIES 2006-AR2