Robert W. Norman, Jr. (SBN 232470)
Timothy A. Schneider (SBN 300816)
HOUSER LLP
9970 Research Drive
Irvine, California 92618
Telephone: (949) 679-1111
Facsimile: (949) 679-1112
E-Mail: tschneider@houser-law.com

Attorneys for Defendants, PHH MORTGAGE CORPORATION, NOW KNOWN AS ONITY MORTGAGE CORPORATION and HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| CORY MAYER,<br><br>    Plaintiff,<br><br>vs.<br><br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A; PHH MORTGAGE CORPORATION; WESTERN PROGRESSIVE, LLC; DOES 1-20; and all persons unknown claiming any interest in the property, inclusive, and DOES 1 through 50, inclusive,<br><br>    Defendants. | CASE NO.:  5:25-cv-00182-NW<br><br>**DECLARATION OF BENJAMIN VERDOOREN IN SUPPORT OF DEFENDANTS PHH MORTGAGE CORPORATION, NOW KNOWN AS ONITY MORTGAGE CORPORATION AND HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2 NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT TO PLAINTIFF CORY MAYER'S FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF THE ISSUES**<br><br>Date:       July 15, 2026<br>Time:      9:00 a.m.<br>Judge:     Noel Wise<br>Courtroom: 3, 5th Floor<br>Place:     280 South 1st Street<br>           San Jose, California 95113 |

1

DECLARATION OF BENJAMIN VERDOOREN

# DECLARATION OF BENJAMIN VERDOOREN

I, Bejamin Verdooren, hereby declare as follows:

1.      I am employed as a Senior Loan Analyst by Onity Group, Inc. f/k/a Ocwen Financial Corporation, whose wholly owned subsidiary is PHH Mortgage Corporation, now known as Onity Mortgage Corporation ("PHH"), and am authorized to make this declaration on behalf of PHH. I make this declaration based on my personal knowledge of the facts contained herein. My personal knowledge includes my review of the Servicing Records described below.

2.      In the regular performance of my job functions at PHH, I am familiar with the business records maintained by PHH for the purpose of servicing mortgage loans, collecting payments, and pursuing any delinquencies (the "Servicing Records"). PHH's Servicing Records typically include electronic data compilations and imaged documents pertaining to the loans it services. Based on my training and my general knowledge of the processes by which they are created and maintained, PHH's Servicing Records were made at or near the time by, or from, information provided by persons with knowledge of the activity and transactions reflected in such records and are kept in the ordinary course of business activity regularly conducted by PHH. It is the regular practice of PHH's mortgage servicing business to make and update its Servicing Records. I have access to and have reviewed PHH's Servicing Records.

**The Loan**

3.      The borrower Cory Mayer ("Plaintiff") executed a Note in the amount of Four Hundred Fifty-Six Thousand Dollars ($456,000.00) from Pinnacle Financial Corporation d/b/a Tri-Star Lending Group (the "Note"), which was secured by a Deed of Trust (the "Deed of Trust") on the real property located at 8650 Hihn Road, Ben Lomond, California 95005 (the "Property"). Attached as **Exhibit 1** is a true and accurate copy of the Note. Attached as **Exhibit 2** is a true and accurate copy of the Deed of Trust.

4.      Plaintiff obtained an Interest Only Step Rate Loan Modification Agreement on December 1, 2009 after defaulting on his payment obligations under the Loan (the "Modification"). The Modification created a new principal balance and altered certain terms of the Loan. The Note, Modification, and Deed of Trust are collectively referred to as the "Loan."

5. On or about February 16, 2013, Ocwen Loan Servicing, LLC acquired the servicing rights to the Loan from GMAC Mortgage, LLC. Ocwen Loan Servicing, LLC subsequently merged with and into PHH on June 1, 2019. By virtue of this merger, PHH became the servicer of the Loan.

6. This Loan was part of a pool of securitized mortgage loans owned by the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR2. HSBC Bank USA, National Association, is the trustee for the Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR2 (collectively referred to as "HSBC, as Trustee"). The Loan was placed into the securitized trust, Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR2, on or about June 30, 2006.

**Plaintiff's Previous Lawsuit and the Parties Settlement**

7. A foreclosure was completed on November 1, 2016, which resulted in ownership in the Property transferring to HSBC, as Trustee.

8. Plaintiff filed an action in the Superior Court of the State of California, County of Santa Cruz, Case No. 17CV00139 on January 13, 2017 for alleged Wrongful Foreclosure and other enumerated claims against PHH, HSBC, as Trustee, and others (the "2017 Lawsuit").

9. PHH created an escrow impound account for taxes in February 2020.

10. Plaintiff, PHH, and HSBC, as Trustee (the "Parties") resolved the 2017 Lawsuit by rescinding the November 1, 20216 foreclosure and entering into a Confidential Settlement and Release Agreement (the resolution of the 2017 Lawsuit will be referred to as the "Settlement" with the Confidential Settlement and Release Agreement referred to separately as the "Settlement Agreement"). Attached as **Exhibit 3** is a true and accurate copy of the Settlement Agreement.

11. The Settlement involved four primary components, three of which are enumerated in the Settlement Agreement: (1) rescission of the foreclosure by Defendants; (2) reinstatement of the Loan by Plaintiff; (3) payment of settlement funds by Defendants; and (4) adjustment of Plaintiff's credit reporting for the Loan by Defendants.

12. The reinstatement of the Loan contained within the Settlement Agreement was supported by a Mortgage Reinstatement Quote dated January 29, 2020 (the "Reinstatement Quote"). Attached as **Exhibit 4** is a true and accurate copy of the Reinstatement Quote.

DECLARATION OF BENJAMIN VERDOOREN

13. The Settlement Agreement that was jointly prepared and executed by the Parties differed from the Reinstatement Quote as follows:

| Reinstatement Quote | | Settlement Agreement | |
|---|---|---|---|
| Principle | $14,670.91 | Principal | $14,670.91 |
| Interest | $128,178.13 | Interest | $128,178.13 |
| County Tax | $43,537.56 | Escrow Advances | $43,537.56 |
| | | Other Fees | $4,860.24 |
| Lien | ($33,120.95) | Credit | ($33,120.95) |
| Total Reinstatement | $153,265.65 | Total Reinstatement | $158,125.89 |

The Parties used the term "Credit" on the Settlement Agreement for what was identified as a "Lien" on the Reinstatement Quote.

14. The use of the term "Credit" instead of "Lien" resulted in confusion between the Parties after execution of the Settlement Agreement. Plaintiff took the position that the line-item labeled "Credit" should be treated as a discharge of those amounts from the Loan.

15. PHH worked with outside counsel (McGlinchey Stafford PLLC and Hinshaw & Culbertson LLP), between August 2020 and December 2024 to address the disputes raised by Plaintiff concerning the interpretation and implementation of the Settlement Agreement.

16. PHH was working with outside counsel in an attempt to amicably resolve the disputes raised by Plaintiff concerning the interpretation and implementation of the Settlement Agreement, which included a dispute over the meaning and effect of the term "Credit" in the Settlement Agreement, a dispute over the credit reporting for the Loan, and a dispute over the escrow impound account creation and charges.

17. As part of PHH's attempts to resolve the disputes with Plaintiff, between December 2021 and October 2024, PHH credited the Loan amounts in excess of $33,120.95, the amount stated for "Credit" in the Settlement Agreement.

18. PHH provided the following credits to the Loan between December 2021 and October 2024: $99.05 on December 31, 2021, $30,787.55 on January 6, 2022, $2,404.68 on November 15, 2022, $343.22 on March 16, 2023, and $3,341.22 on October 23, 2024.

4
DECLARATION OF BENJAMIN VERDOOREN

**Plaintiff's Post-Settlement Payments and Failure to Submit Funds**

19. Plaintiff – through counsel – submitted funds in the amount of $168,468.78 to Defendants' counsel on or around May 13, 2020.

20. The $168,468.78 in funds were applied to the Loan on or around May 29, 2020 and were sufficient to reinstate the Loan through February 19, 2020 as stated in the Settlement Agreement and to cover the March 1, 2020, April 1, 2020, and May 1, 2020 monthly payments for the Loan.

21. Following application of the funds in the amount of $168,468.78, the Loan was due for the June 1, 2020 monthly payment.

22. On or around November 16, 2020, Plaintiff's counsel Pamela Simmons submitted to PHH's counsel, McGlinchey Stafford PLLC, funds in the amount of $24,133.41. This was the first attempt by Plaintiff or Plaintiff's counsel to make a payment for the Loan following the payment of $168,468.78 made on May 13, 2020.

23. The funds in the amount of $24,133.41 submitted on or around November 16, 2020 were not sufficient to cover the past due amounts for the Loan. The funds were sufficient to cover the principal and interest portion of the monthly payments between June 1, 2020 and November 1, 2020, but did not include sufficient amounts for the property taxes that Onity advanced on Plaintiff's behalf.

24. The funds in the amount of $24,133.41 submitted on or around November 16, 2020 were destroyed at the mutual agreement of PHH's counsel and Plaintiff's counsel.

25. PHH and PHH's counsel did not receive any further payments from Plaintiff or Plaintiff's counsel until an attempt was made on October 9, 2024.

26. A Notice of Default and Election to Sell Under Deed of Trust was recorded on August 24, 2023 in the Official Records of Santa Cruz County as Instrument No. 2023-0015928. Attached as **Exhibit 5** is a true and accurate copy of the Notice of Default and Election to Sell Under Deed of Trust.

27. A Notice of Trustee's Sale was recorded on August 24, 2023 in the Official Records of Santa Cruz County as Instrument No. 2023-0023167. **Exhibit 6** is a true and accurate copy of the Notice of Trustee's Sale.

DECLARATION OF BENJAMIN VERDOOREN

28. PHH did not receive and apply any payments from Plaintiff or Plaintiff's counsel on the Loan following the application of the $168,468.78 in funds received in May 2020.

**PHH and HSBC, as Trustee's Efforts to Resolve Plaintiff's Dispute and Release of Lien**

29. The Parties completed mediation with Judge Evelio Grillo on March 9, 2026, and engaged in post-mediation settlement discussions. The Parties were unable to reach a resolution.

30. PHH discharged the Loan on April 22, 2026. At the time of discharge, Plaintiff's Loan had a principal balance of $447,655.82 plus accrued interest, fees, property tax advances, and recording fees for a total approximate payoff of $628,718.49. This includes a total of $37,523.88 in property taxes paid by PHH for the Property from April 3, 2020 through April 22, 2026.

31. Following PHH's discharge of the Loan on April 22, 2026, the Loan reflects a $0.00 principal balance and Plaintiff is not obligated to make any further payments.

32. A Substitution of Trustee and Deed of Reconveyance for the Deed of Trust was recorded on April 29, 2026 in the Official Records of Santa Cruz County as Instrument No. 2026-0009502. **Exhibit 8** is a true and accurate copy of the Substitution of Trustee and Deed of Reconveyance for the Deed of Trust.

33. As of April 29, 2026, PHH discharged the Loan and released the Deed of Trust.

34. On or about May 4, 2026, PHH mailed a letter to Plaintiff informing him that PHH discharged the Loan and released the Deed of Trust. The letter informed Plaintiff the principal balance of the Loan is $0.00, there are no outstanding payments due, and no future payments will be required. The letter also informed Plaintiff that he owns the Property free and clear of the Loan. The letter also informed Plaintiff that PHH is not making any claim to the amounts Plaintiff claims to have deposited in his attorneys' client-trust account and is not making any claim for reimbursement of the property taxes advanced on his behalf. **Exhibit 9** is a true and accurate copy of the May 4, 2026 letter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 22nd day of May 2026, in Dallas, Texas.

_____

Benjamin Verdooren

6

DECLARATION OF BENJAMIN VERDOOREN

# EXHIBIT 1

# ADJUSTABLE RATE NOTE
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

MAYER
Loan #: ■■■■■
MIN: 10006270■■■■29258

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| MARCH 1, 2006 | SCOTTS VALLEY | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

**8650 HIHN ROAD, BEN LOMOND, CA 95005**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $456,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP**. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.875%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **MAY 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **APRIL 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2611 TECHNOLOGY DRIVE, ORLANDO, FL 32804** or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,612.50. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **APRIL, 2011**, and on that day every **6TH** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"),

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
**Single Family Fannie Mae Uniform Instrument**

| | 184.76 | Page 1 of 4 | Form 3520 1/01 |
|---|---|---|---|

Mayer001119

**EXHIBIT 1
PAGE 1 OF 1**

as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE AND ONE-HALF** percentage points (**3.500%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **12.875%** or less than **3.500%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) (**2.000%**) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **12.875%**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family-Fannie Mae Uniform Instrument
184.76                         Page 2 of 4                         Form 3520 1/01

Mayer001120

EXHIBIT 1
PAGE 2 OF 2

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family-Fannie Mae Uniform Instrument

184.76                              Page 3 of 4                              Form 3520 1/01

Mayer001121

EXHIBIT 1
PAGE 3 OF 3

intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

3/1/06

- BORROWER - CORY MICHAEL MAYER - DATE -

*[Sign Original Only]*

WITHOUT RECOURSE, PAY TO THE
ORDER OF:

DONNA MANCAUSKAS, VP
PINNACLE FINANCIAL CORPORATION
D/B/A TRI-STAR LENDING GROUP

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family-Fannie Mae Uniform Instrument
184.76                              Page 4 of 4                              Form 3520 1/01

Mayer001122

EXHIBIT 1
PAGE 4 OF 4

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

MAYER
Loan #: ▮▮▮▮▮▮
MIN: 10006270▮▮▮29258

MERS Phone: 1-888-679-6377

PROPERTY ADDRESS: 8650 **HIHN ROAD, BEN LOMOND, CA 95005**

THIS ADDENDUM is made this **1ST** day of **MARCH, 2006**, and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to **PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP** (the Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay interest by making payments every month for the first **120** payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next **240** payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the **FIRST** day of each month beginning on **MAY 1, 2006**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before principal. If, on **APRIL 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at **2611 TECHNOLOGY DRIVE, ORLANDO, FL 32804**, or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$2,612.50**. This payment amount is based on the original principal balance of the Note. This payment amount may change.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE AND ONE-HALF** percentage point(s) (**3.500%**) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment

603E
▮▮▮    4169.12    Page 1 of 2    (06/04)

Mayer001123

EXHIBIT 1
PAGE 5 OF 5

amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of interest for the first **120** payments, **5.000%** of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

3/1/06

- [BORROWER - CORY MICHAEL MAYER - DATE -

603E
4169.12                    Page 2 of 2                    (06/04)

Mayer001124

EXHIBIT 1
PAGE 6 OF 6

# EXHIBIT 2

RECORDED AT THE REQUEST OF
FIRST AMERICAN TITLE COMPANY

*4405- 2067526*

Recording Requested By /
Return To:
PINNACLE FINANCIAL
CORPORATION
2611 TECHNOLOGY DRIVE
ORLANDO, FL 32804

Prepared By:
JEFFERY SUTTLES
PINNACLE FINANCIAL
CORPORATION
7600 NORTH 16TH STREET SUITE
205
PHOENIX, AZ 85020
(602) 674-0722

**2006-0012374**

| | |
|---|---|
| Recorded | REC FEE      60.00 |
| Official Records | |
| County of | |
| Santa Cruz | |
| GARY E. HAZELTON | |
| Recorder | |
| | JBD |
| 08:00AM 03-Mar-2006 | Page 1 of 18 |

[Space Above This Line For Recording Data]

# DEED OF TRUST

MAYER
Loan #: ███2925
PIN: 072-284-30
MIN: 10006270████29258

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **MARCH 1, 2006**, together with all Riders to this document.
**(B) "Borrower"** is **CORY MICHAEL MAYER, A SINGLE MAN**. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP**. Lender is a **CORPORATION** organized and existing under the laws of **FLORIDA**. Lender's address is **2611 TECHNOLOGY DRIVE, ORLANDO, FL 32804**.
**(D) "Trustee"** is **FIRST AMERICAN TITLE INSURANCE COMPANY**.
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated **MARCH 1, 2006**. The Note states that Borrower owes Lender **FOUR HUNDRED FIFTY-SIX THOUSAND AND 00/100** Dollars (U.S. **$456,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **APRIL 1, 2036**.
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify] **INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER, PREPAYMENT PENALTY RIDER** | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and

**CALIFORNIA** –Single Family-- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
☜ 312.59 Page 1 of 11 Form 3005 1/01

Mayer001125

**EXHIBIT 2
PAGE 1 OF 18**

█2925

administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **SANTA CRUZ**:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**
which currently has the address of **8650 HIHN ROAD BEN LOMOND**, California **95005** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by

Mayer001126

EXHIBIT 2
PAGE 2 OF 18

2925

Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
312.59                                    Page 3 of 11                                    Form 3005 1/01

Mayer001127

EXHIBIT 2
PAGE 3 OF 18

2925

Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of

CALIFORNIA --Single Family-- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

312.59                            Page 4 of 11                            Form 3005 1/01

Mayer001128

EXHIBIT 2
PAGE 4 OF 18

2925

loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
312.59                                    Page 5 of 11                                    Form 3005 1/01

Mayer001129

EXHIBIT 2
PAGE 5 OF 18

■2925

Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the

**CALIFORNIA** --Single Family-- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Mayer001130

EXHIBIT 2
PAGE 6 OF 18

restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

<a></a>    312.59                                          Page 7 of 11                                          Form 3005 1/01

Mayer001131

EXHIBIT 2
PAGE 7 OF 18

2925

or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and

CALIFORNIA --Single Family-- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

312.59                                 Page 8 of 11                                 Form 3005 1/01

Mayer001132

EXHIBIT 2
PAGE 8 OF 18

■2925

obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Mayer001133

EXHIBIT 2
PAGE 9 OF 18

2925

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  3/1/06
- BORROWER - CORY MICHAEL MAYER - DATE -

CALIFORNIA --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
312.59                                  Page 10 of 11                                  Form 3005 1/01

Mayer001134

EXHIBIT 2
PAGE 10 OF 18

2925

[Space Below This Line For Acknowledgment]

State of **CA**

County of **SANTA CRUZ**

On _____3/1/06_____, before me, _____Rosmary Vukich_____ a Notary Public, personally appeared **CORY MICHAEL MAYER, A SINGLE MAN**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s), whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____Rosemary Vukich_____ (Seal)
Notary Public

My Commission Expires: 12/23/09

ROSEMARY VUKICH
COMM. # 1627404
Notary Public-California
County of Santa Cruz
My Comm. Exp. Dec. 23, 2009

**CALIFORNIA** --Single Family-- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
312.59    Page 11 of 11    **Form 3005 1/01**

Mayer001135

**EXHIBIT 2**
**PAGE 11 OF 18**

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

MAYER
Loan #: ████2925
MIN: 10006270███29258

THIS ADJUSTABLE RATE RIDER is made this **1ST** day of **MARCH, 2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**8650 HIHN ROAD, BEN LOMOND, CA 95005**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **6.875%**. The Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of **APRIL, 2011** and on that day every **6TH** month thereafter. Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (as published in *The Wall Street Journal*)
-Single Family- **Fannie Mae UNIFORM INSTRUMENT**
✍ 745.30                          Page 1 of 3                          FORM 3138 01/01

Mayer001136

EXHIBIT 2
PAGE 12 OF 18

■2925

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE AND ONE-HALF** percentage points (**3.500%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.875%** or less than **3.500%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points (**2.000%**) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **12.875%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

>    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

>    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

>    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (as published in *The Wall Street Journal*)
-Single Family- **Fannie Mae UNIFORM INSTRUMENT**

745.30                              Page 2 of 3                              FORM 3138 01/01

Mayer001137

EXHIBIT 2
PAGE 13 OF 18

2925

transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

- BORROWER - CORY MICHAEL MAYER - DATE -

3/1/06

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX** (as published in *The Wall Street Journal*)
-Single Family- **Fannie Mae UNIFORM INSTRUMENT**
745.30                              Page 3 of 3                              **FORM 3138 01/01**

Mayer001138

EXHIBIT 2
PAGE 14 OF 18

# INTEREST ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

MAYER
Loan #: ███2925
MIN: 1000627█████29258

**THIS ADDENDUM** is made this **1ST** day of **MARCH, 2006**, and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to **PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP** (the "Lender").

**THIS ADDENDUM** supercedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **THREE AND ONE-HALF** percentage points (**3.500%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During this Interest Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest on the lower principal balance. At the end of the Interest Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest Only Period, my payment amount will not be reduced due to voluntary prepayments.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

- BORROWER - CORY MICHAEL MAYER - DATE -     3/1/06

FH6D03U
5062.29                          Page 1 of 1                          7/03

Mayer001139

EXHIBIT 2
PAGE 15 OF 18

Date: **MARCH 1, 2006**

Borrower(s): **CORY MICHAEL MAYER**

Property Address: **8650 HIHN ROAD, BEN LOMOND, CA 95005**

## PREPAYMENT PENALTY RIDER

**MAYER**
Loan #: ███2925
MIN: 1000627█████29258



(Do not sign this rider before you read it. This security instrument rider provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.)

THIS PREPAYMENT PENALTY RIDER IS MADE THIS **1ST** day of **MARCH, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP**.

**ADDITIONAL COVENANTS:** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a full Prepayment or partial Prepayments of my obligation. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If, within the **12**-month period beginning with the date you execute the Note (the "Penalty Period"),

Prepayment Penalty Rider - CA
3516.26                              Page 1 of 2

Mayer001140

EXHIBIT 2
PAGE 16 OF 18

2925

you make a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds twenty percent (20%) of the original principal loan amount, you will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment penalty will be assessed for any prepayment made after the Penalty Period.

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 0 month(s) of the term of the Note, no prepayment penalty will be assessed. In order to avoid the imposition of a prepayment penalty, I will be required to provide the Note Holder with evidence acceptable to the Note Holder of such sale. For purposes of this exception to the imposition of a prepayment penalty, a sale of the property to a person or entity with whom I have a personal or business relationship (such as a family member, builder, developer or employer) will be presumed NOT to be a bona fide sale of the Property to an unrelated third party.

All other terms and conditions of the Security Instrument remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in the Prepayment Penalty Rider.

_____  3/1/06
- BORROWER  CORY MICHAEL MAYER - DATE -

Prepayment Penalty Rider - CA
3516.26                          Page 2 of 2

Mayer001141

EXHIBIT 2
PAGE 17 OF 18

Order Number: **4405-2067526**
Page Number: 5

## LEGAL DESCRIPTION

Real property in the unincorporated area of the County of Santa Cruz, State of California, described as follows:

BEING A PART OF LOT 10, AS THE SAME IS SHOWN UPON THAT CERTAIN MAP ENTITLED "LARITA OAKS, A RECORD OF SURVEY MAP OF LANDS IN THE ZAYANTE RANCHO", FILED FOR RECORD IN THE OFFICE OF THE COUNTY RECORDER OF SANTA CRUZ COUNTY ON SEPTEMBER 6, 1955 IN MAP BOOK 33 AT PAGE 36, SANTA CRUZ COUNTY RECORDS, AND MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A STATION ON THE SOUTHWESTERN BOUNDARY OF LANDS CONVEYED TO HARRY W. ARNOLD, ET UX., BY DEED RECORDED IN VOLUME 1257, PAGE 136, OFFICIAL RECORDS OF SANTA CRUZ COUNTY, FROM WHICH A ½ INCH IRON PIPE AT THE MOST WESTERN CORNER OF LAND CONVEYED TO ARNOLD BEARS NORTH 35° 33' WEST 9.85 FEET DISTANT; THENCE FROM SAID POINT OF BEGINNING SOUTH 54° 27' WEST 130.68 FEET TO A SPIKE ON THE CENTER LINE OF HIHN ROAD, AS SHOWN ON SAID MAP; THENCE ALONG SAID LAST MENTIONED CENTER LINE, NORTH 32° 06' WEST 90.01 FEET TO A SPIKE AT THE MOST WESTERN CORNER OF SAID LOT 10; THENCE ALONG THE NORTHERN BOUNDARY OF SAID LOT 10, NORTH 54° 27' EAST (AT 25.05 FEET A ½ INCH IRON PIPE) 125.26 FEET TO A ½ INCH IRON PIPE AT THE NORTHERN CORNER OF LANDS DESCRIBED AS PARCEL A IN DEED CONVEYING LANDS TO C. M. JACOBSON, ET UX., RECORDED IN VOLUME 1216, PAGE 423, OFFICIAL RECORDS OF SANTA CRUZ COUNTY; THENCE ALONG THE NORTHEASTERN BOUNDARY OF SAID LAST MENTIONED LANDS SOUTH 35° 33' EAST 89.85 FEET TO THE PLACE OF BEGINNING.

EXCEPTING THEREFROM SO MUCH THEREOF AS DESCRIBED IN THE DEED FROM BERNICE J. MIDKIFF TO THE COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA, A BODY POLITIC RECORDED MARCH 27, 1964, IN VOLUME 1607, PAGE 201, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

APN: 072-284-30

Mayer001142

**EXHIBIT 2**
**PAGE 18 OF 18**

# EXHIBIT 3

## CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement and its Exhibit (collectively, the "Agreement") is made and entered into as of the last day set forth on the signature page ("Effective Date") by and between PHH Mortgage Corporation ("PHH"), successor by merger to Ocwen Loan Servicing, LLC ("Ocwen"), and HSBC Bank USA, National Association as trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2 ("HSBC Bank," and together with Ocwen, the "Defendants"), and Cory Mayer ("Borrower") (individually, a "Party," and collectively, the "Parties") for the purpose of resolving by compromise and settlement of all claims, controversies, alleged liabilities, and disputes between them.

## RECITALS

This Agreement is entered into with reference to the following facts:

A. On about March 1, 2006, Borrower executed a $456,000.00 note ("Note") in favor of Pinnacle Financial Corporation d/b/a/ Tri-Star Lending Group secured by a deed of trust ("Deed of Trust") encumbering the real property commonly known as 8650 Hihn Road, Ben Lomond, CA 95005 ("Property"), which is more fully described in the Deed of Trust and assigned APN 072-284-30. (The Note, Deed of Trust, and associated origination documents are collectively referred to as the "Loan Documents," setting forth the terms of the "Loan.")

B. On March 29, 2016, a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") was recorded in the Santa Cruz County, California Recorder's Office as instrument no. 2016-0010672 in connection with the Loan and the Property.

C. On or about November 1, 2016, the Property was sold to the current note holder HSBC Bank at a non-judicial foreclosure sale (the "Foreclosure Sale") conducted pursuant to the terms of the Deed of Trust.

D. PHH is the current servicer of the Loan, which is identified by the Loan Number ▬▬7676. Ocwen serviced the Loan until it merged with PHH on June 1, 2019.

E. Western Progressive, LLC, is a named defendant in Borrower's below-described lawsuit and is the Trustee under the Deed of Trust, hereinafter referred to as "Western Progressive."

F. Following the Foreclosure Sale, the Property sustained damage from a winter storm and Borrower repaired the damage at his expense. Borrower then filed a claim on the Farmers Insurance homeowner's insurance policy. Farmers Insurance then issued a check for payment on the claim in the amount of $21,369.04 payable to "Ocwen Loan Servicing LLC and Cory Mayer" (the "Insurance Check"). The Insurance Check has been held in trust by Borrower's attorney pending resolution of the Action, as defined below.

G. Certain disputes have arisen between Borrower, Defendants, and Western Progressive regarding Borrower's default on the Loan. Those disputes are more fully set forth in the pleadings filed in the Superior Court of California for the County of Santa Cruz (the "Superior

1401115.3

---

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                                    Page 1 of 9

Mayer001725

EXHIBIT 3
PAGE 1 OF 9

Court") action entitled *Cory Mayer v. Ocwen Loan Servicing, LLC, et al.,* which was assigned Case Number 17CV00139, hereinafter to be referred to as the "Action."

H.  Subsequent to the filing of the Action, on October 28, 2019, a Notice of Rescission of Trustee's Deed Upon Sale was recorded against the Property whereby the Foreclosure Sale was rescinded. As of the date of this Agreement, the unpaid principal balance on the Loan is $466,851.32 (the "Unpaid Principal Balance").

I.  Each Party to this Agreement is fully apprised of the facts set forth in these Recitals and of the facts and contentions raised in the Action, and in all other aspects of the dispute between or among the Parties, whether pleaded or not, and possibilities of each action and matter described herein.

J.  Each Party denies all allegations, claims and defenses made by the other Party in the Action.

K.  Notwithstanding the above, solely in order to avoid the cost, delay and uncertainty of further litigation, the Parties desire to compromise and settle all disputes and claims which exist or which may exist between and among them arising out of the facts, matters, and events set forth above, without admitting any liability and settle their rights and obligations in connection with the Loan Documents.

## AGREEMENTS, RELEASES, AND PROMISES

**THEREFORE,** in consideration of the facts and general releases and promises contained herein, and for other good and valuable consideration, the sufficiency and receipt of which is acknowledged by each Party hereto, the Parties promise and agree as follows:

1.  **Borrower's Obligation to Reinstate:** Borrower acknowledges, understands, and agrees that the total amount required to reinstate the Loan as of February 19, 2020, is $158,125.89 (the "Reinstatement Amount"), consisting of the following:

| | |
|---|---|
| Principal | $14,670.91 |
| Interest | $128,178.13 |
| Escrow Advances | $43,537.56 |
| Other Fees | $4,860.24 |
| Credit | $(33,120.95) |
| **Total:** | **$158,125.89** |

Within thirty (30) days of the Effective Date, Borrower shall tender the Reinstatement Amount to PHH. PHH agrees to accept the Insurance Check, as may be reissued from time-to-time, indorsed and delivered to PHH by Borrower and to apply the funds toward the Reinstatement Amount, and Borrower hereby authorizes and agrees to the application of the Insurance Check toward the Reinstatement Amount. Upon the application of the Reinstatement Amount to the Loan, the Unpaid Principal Balance will be reduced to $452,180.41 and the Loan will be contractually due for the March 1, 2020 monthly payment.

1401115.3

---

Mayer001726

EXHIBIT 3
PAGE 2 OF 9

2. **Payment of Settlement Funds:** PHH agrees to pay $75,000 by check made payable to Borrower or Borrower's counsel within thirty (30) days of (a) the Effective Date or (b) the date upon which Borrower or his counsel, Law Offices of Simmons and Purdy, delivers to PHH a W-9 form, whichever is later.

3. **Dismissal of Action:** Borrower agrees to dismiss the Action with prejudice and without costs. Borrower shall execute the Stipulation for Voluntary Dismissal ("Stipulation") attached as **Exhibit A** to this Agreement simultaneously with his execution of this Agreement and file the Stipulation with the Superior Court within 10 days of receipt of the payment discussed in Paragraph 2 above, and agrees to cooperate in filing any other papers with the Superior Court that may be necessary to obtain a dismissal of the Action *with prejudice.*

4. **Attorneys' Fees:** Each Party shall bear their own attorneys' fees and costs incurred. If any Party hereto commences any action arising out of this Agreement, including, without limitation, any action to enforce or interpret this Agreement, the prevailing party or parties in such action shall be entitled to recover its reasonable attorney's fees and other expenses incurred in such action. Any award of attorney's fees hereunder shall not be computed according to any court schedule, but, instead, shall be in such amount as to fully reimburse all attorney's fees actually incurred in good faith, regardless of the size of the judgment, since it is the intention of all Parties to compensate fully the prevailing party for all attorney's fees paid or incurred in good faith.

5. **Credit Reporting:** Within thirty (30) days of PHH's receipt of the Reinstatement Amount, PHH will submit Universal Data Forms to all three major credit reporting agencies reporting the Loan as paid as agreed from the time Ocwen began servicing the Loan through the Effective Date. PHH shall provide copies of all three Universal Data Forms to Borrower within thirty (30) days of the date they are submitted to the credit reporting agencies. Borrower acknowledges and agrees that the credit reporting agencies are separate entities from PHH and that PHH cannot guarantee, warrant, or take responsibility for the performance of the credit reporting agencies in changing, deleting, or making entries in relation to any credit information. Borrower warrants, declares, and covenants that he/she understands the limitations on PHH in this regard and that any action or inaction on the part of the credit reporting agencies shall not constitute a breach of this Agreement by PHH, nor shall it provide the basis for any claims against PHH, which claims are hereby specifically and expressly waived, discharged and released.

6. **Confidentiality:** The Parties and their attorneys represent, warrant and agree that the terms and contents of this Agreement and all information and evidence elicited or exchanged during the Action and in negotiating this Agreement are and shall be treated as confidential and shall not be disclosed, in any way used or described or characterized to any other person or entity except as follows: (a) Borrower may only disclose the contents or terms of the Agreement to his accountants and other tax preparers, to the Internal Revenue Service, to his attorneys, or if otherwise compelled by a court of law; and (b) PHH and Defendants may disclose the contents or terms of the Agreement under the same circumstances, to governmental entities to which they report, or as otherwise required in the normal course

1401115.3

---

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                      Page 3 of 9

Mayer001727

EXHIBIT 3
PAGE 3 OF 9

of their business. This confidentiality provision and agreement is a material term of this Agreement, breach of which the Parties hereby agree will cause the Parties irreparable harm. If Borrower or Borrower's attorneys are required by an appropriate order of a competent court to disclose the terms of this Agreement to individuals other than those set forth above, Borrower shall notify PHH and Defendants' counsel, in writing, at least fifteen (15) days prior to such disclosure.

7. **Release by Borrower:** Except for the obligations and rights expressly set forth and reserved in Paragraph 12 of this Agreement, in consideration of the recitals, covenants and agreements set forth in this Agreement, and other good and valuable consideration, receipt of which is hereby acknowledged, upon the Effective Date of this Agreement, Borrower, for and on behalf of himself and his present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estate, or any and all other persons who could claim through him (collectively, the "Releasors") hereby unconditionally, irrevocably, forever and fully releases, acquits, and forever discharges PHH, Ocwen, HSBC Bank, and Western Progressive, and their predecessors, principals, parents, heirs, successors, assigns, subsidiaries, affiliates, commonly controlled entities, companies, enterprises, ventures, partners, insurers, investors, attorneys, officers, shareholders, directors, agents, representatives employees, clients, administrators, executors, personal representatives, the beneficiary and investor in the Loan, and their predecessors, heirs or successors in interest and assigns, and each of them (the "Releasees"), of and from any and all claims, demands, actions, causes of action, suits, liens, debts, obligations, promises, agreements, costs, damages, liabilities, and judgments of any kind, nature, or amount whether in law or equity, whether known or unknown, anticipated or unanticipated, liquidated or unliquidated, including any and all claimed or unclaimed compensatory damages, consequential damages, interest, costs, expenses and fees (including reasonable or actual attorneys' fees) which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Action, the Property, the Note, the Deed of Trust, or the Loan. Borrower also specifically waives and releases any right of rescission under the federal Truth in Lending Act ("TILA") and any other claims he may have, whether known or unknown, fixed or contingent, under TILA, the Home Ownership and Equity Protection Act ("HOEPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Equal Credit Opportunity Act ("ECOA"), the Fair Credit Reporting Act ("FCRA"), or their implementing regulations, or any corresponding state law statute or provision concerning the Note, the Deed of Trust, the Loan, and/or the Action. It is the intention and effect of this release to discharge all claims that the Releasors have against the Releasees up until and including the date of the execution of this Agreement.

8. **Release of Unknown Claims:** Borrower acknowledges and agrees that he may hereafter discover facts different from, or in addition to, those facts known to him or which he now believes to be true with respect to any and all of the claims, demands, actions, causes of action, suits, liens, debts, obligations, damages, liabilities, judgments, costs, expenses, and fees (including reasonable attorney's fees) existing on the effective date of this Agreement. Borrower nevertheless agrees that the releases set forth herein have been negotiated and

1401115.3

---

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                    Page 4 of 9

Mayer001728

EXHIBIT 3
PAGE 4 OF 9

agreed upon, notwithstanding such acknowledgment and agreement, and hereby expressly waive any and all rights which he may have under any federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution. Borrower understands and acknowledges the significance and consequences of this waiver and assumes full responsibility for any and all damages, losses, costs, and expenses they may incur hereafter as a result of any of the facts, matters, and events referred to in the Recitals set forth above.

Borrower hereby expressly waives California *Civil Code* §1542, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Borrower acknowledges that he has read and understands and acknowledges the significance and consequence of any waiver of California *Civil Code* §1542, and assumes full responsibility for any and all damages, losses, costs and expenses he may incur hereafter as a result of any of the facts, matters, and events referred to in the Recitals set forth above.

11. **Limited Release by Defendants**: Defendants release Borrower as to any claims resulting from the Foreclosure Sale.

12. **Release Limitations:** This Agreement does not release: (1) claims arising out of the failure of either Party to perform in conformity with the terms of this Agreement; (2) any future disputes between Borrower and PHH and Defendants, including their successors and assigns, which arise out of or relate to the Parties' continuing relationship as mortgagor and mortgagee; and (3) PHH and Defendants' (including their successors' and assigns') right to foreclose.

13. **Warranties and Representations:** The Parties hereto warrant and represent that (a) he, she, or it is the sole owner of all rights, claims, damages, actions, causes of action, suits and defenses, as the case may be, at law or in equity, he, she, or it has or may have or that were asserted or could have been asserted in the action, and (b) he, she, or it has not assigned, transferred, conveyed, or purported to assign, transfer, or convey to any person or entity any right, claim, action, cause of action, suit (at law or in equity), defense, demand, debt, liability, account, or obligation herein released, or any part thereof, or which would, absent such assignment, transfer or conveyance, be subject to the releases set forth in this Agreement.

1401115.3

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                                      Page 5 of 9

Mayer001729

EXHIBIT 3
PAGE 5 OF 9

14. **Acknowledgments:** Each of the Parties acknowledge and agree that:

    a.  This Agreement is entered into and executed voluntarily by each of the Parties hereto and without any duress or undue influence on the part of, or on behalf of, any such Party.

    b.  Each of the Parties hereto has been represented by counsel of his/their own choice, or has had the opportunity to be represented by counsel and to seek advice in connection with the negotiations for, and in the preparation of, this Agreement and that he, she, or it has read this Agreement and that he, she or it is fully aware of its contents and legal effects. All Parties who are representing themselves are warned to obtain the advice of an attorney before signing this Agreement.

    c.  The drafting and negotiation of this Agreement has been undertaken by all Parties hereto and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by all of the parties hereto with no presumption in favor of one party over another in the event of any ambiguity.

15. **Tax Consequences:** This Agreement is enforceable regardless of its tax consequences. The Parties understand and agree that the payment set forth in this Agreement reflect the settlement of disputed legal claims and that PHH and Defendants make no representations regarding the Agreement's tax consequences. Borrower, however, specifically agrees that he is solely responsible for any and all taxes, interest and penalties due and owing, if any, should the payment, or any portion thereof, be taxable.

16. **Compromise of Disputed Claims:** It is understood and agreed that this Agreement is the compromise of disputed claims, and that the terms of settlement contained herein and the releases executed are not intended to be and shall not be construed as admissions of any liability or responsibility whatsoever and each released Party expressly denies any liability or responsibility whatsoever.

17. **Severability:** If any of the provisions of this Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions shall not be affected thereby.

18. **Binding Effect:** This Agreement shall be binding on, and shall inure to the benefit of, the Parties hereto and their respective administrators, representatives, successors, and assigns.

19. **Governing Law:** This Agreement shall be governed by the laws of the State of California and any question arising hereunder shall be construed or determined according to such law. Notwithstanding any such dismissal(s) agreed to herein, the Court in the Action shall retain jurisdiction to enforce this settlement pursuant to a motion filed under California *Code of Civil Procedure* §664.6.

20. **Further Assurances:** The Parties agree to do all acts and things and to make, execute, acknowledge and deliver such written documents, instructions and/or instruments in such form as shall from time to time be reasonably required to carry out the terms and provisions

1401115.3

Mayer001730

**EXHIBIT 3**
**PAGE 6 OF 9**

of this Agreement, including but not limited to, the execution, filing or recording of any reporting documents, affidavits, deeds or agreements. The Parties further agree to give reasonable cooperation and assistance to any other party or parties hereto in order to enable such other Party or Parties to secure the intended benefits of this Agreement.

21. **Counterparts**: This Agreement may be executed by the Parties in any number of counterparts, including by way of facsimile, and each of which shall be deemed to be an original and all of which, collectively, shall be deemed to be one and the same instrument.

22. **Integration Clause**: This Agreement contains the entire agreement between and among the Parties hereto, and supersedes all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, between or among them relating to the subject matter of this Agreement. This Agreement may not be amended orally, nor shall any purported oral amendment (even if accompanied by partial or complete performance in accordance therewith) be of any legal force or effect or constitute an amendment of this Agreement, but rather this Agreement may be amended only by an agreement in writing signed by the parties.

23. **Time Is Of The Essence**: Time is of the essence with respect to the performance of any and all provisions of this Agreement.

24. **Headings and Captions**: The headings and captions inserted into this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

25. **Effective Date**: This Agreement shall be deemed effective on the Date that it is signed by all Parties hereto.

14011115.3

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                    Page 7 of 9

Mayer001731

EXHIBIT 3
PAGE 7 OF 9

IN WITNESS WHEREOF, each of the Parties hereto has executed this Agreement on the date set forth opposite his, her, or its name below. **THE UNDERSIGNED HEREBY CERTIFY THAT THEY HAVE READ AND FULLY UNDERSTAND ALL OF THE TERMS, PROVISIONS, AND CONDITIONS OF THIS AGREEMENT AND HAVE EXECUTED THIS AGREEMENT VOLUNTARILY.**

Dated: _03, 04_ , 2019

Cory Mayer

PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC

Dated: _4-6_ , 2020

Name: _Benjamin Verdoorn_
Title: _Senior Loan Analyst_

HSBC Bank USA, National Association as trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2

by PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, its attorney-in-fact

Dated: _4-6_ , 2020

Name: _Benjamin Verdoorn_
Title: _Senior Loan Analyst_

1401115.3

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                    Page 8 of 9

Mayer001732

EXHIBIT 3
PAGE 8 OF 9

APPROVED AS TO FORM:

Dated: March 26, 2020 , 2019x

*BRIAN D. LIDDICOAT*

BRIAN D. LIDDICOAT
Attorney for Cory Mayer

**McGLINCHEY STAFFORD**

Dated: April 17 , 2020

BRIAN A. PAINO
Attorneys for PHH Mortgage Corporation,
successor by merger to Ocwen Loan
Servicing, LLC, and HSBC Bank USA,
National Association as trustee for Deutsche
ALT-A Securities Mortgage Loan Trust,
Series 2006-AR2

1401115.3

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**                    Page 9 of 9

Mayer001733

EXHIBIT 3
PAGE 9 OF 9

# EXHIBIT 4



PHH Mortgage Services                                    Tel   877-744-2506
1 Mortgage Way                                           Fax  856-917-8300
Mt. Laurel, NJ 08054

01/29/2020

Account Number ███7676

Property Address: 8650 HIHN RD
BEN LOMOND CA 95005

Borrower(s): CORY M MAYER

## MORTGAGE REINSTATEMENT QUOTE

Dear Requestor,

We represent the Plaintiff in the current or anticipated foreclosure action in connection with the above-referenced loan.

This letter is in response to a request we received for a reinstatement quote on the above-referenced account. Please Note: We will not delay in the filing of foreclosure and will not delay or dismiss any pending foreclosure action while awaiting your reinstatement payment.

See below for a breakdown of the total amount needed to reinstate this mortgage account.

1.  The Total Amount Due to Reinstate, listed in the chart below, must be remitted no later than 02/19/2020. Please see the following pages of this letter for additional information about submitting funds.

2.  If funds are not received by 02/19/2020, additional funds may be required to reinstate the account. If funds are received timely and the account is reinstated, the next regular payment is due on 03/01/2020.

| Description | Amount |
|---|---|
| Principle | 14,670.91 |
| Interest | 128,178.13 |
| County Tax | 43,537.56 |
| Lien | (33,120.95) |
| **Total Amount Due to Reinstatement** | **153,265.65** |

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*
### *Log in to MortgageQuestions.com --- your servicing website connection.*

Mayer001596

# EXHIBIT 4
# PAGE 1 OF 3



PHH Mortgage Services
1 Mortgage Way
Mt. Laurel, NJ 08054

Tel  877-744-2506
Fax  856-917-8300

Please Note: There are other amounts due on this mortgage account. Repayment of these amounts is not required to reinstate the mortgage at this time; however, the account obligations under the mortgage documents must still be fulfilled by the time of payoff.

| Description | Amount |
|---|---:|
| Accrued Late Charges | 1,346.71 |
| Late Charges Forecasted | 171.61 |
| Appraisal Fee | 310.00 |
| Attorney Mail Costs | 54.49 |
| Broker's Price Opinion | 440.00 |
| Court Costs | 125.00 |
| Inspection Fee | 137.25 |
| Miscellaneous Property Preservation Fees | 66.25 |
| Notice Of Sale | 24.00 |
| Publication Fee | 1,224.09 |
| Recording Fees | 174.00 |
| Title Search | 786.84 |
| **Total Other Amounts Outstanding and Due** | **4,860.24** |

The Important Notices on the following pages should be read carefully.

If the account continues to be past due, additional collection expenses, late charges and fees may continue to accrue until the account is reinstated, as permitted under state and federal law.

For any questions regarding this reinstatement quote contact 877-744-2506.

Sincerely,
PHH Mortgage

Enclosure

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**Log in to MortgageQuestions.com --- your servicing website connection.**

Mayer001597

# EXHIBIT 4
# PAGE 2 OF 3



PHH Mortgage Services                                         Tel  877-744-2506
1 Mortgage Way                                               Fax  856-917-8300
Mt. Laurel, NJ 08054

**IMPORTANT NOTICES**

- Total other amount due calculation: The total of other amounts outstanding and due includes expenses have incurred in connection with the mortgage obligations. These expenses may include attorney fees and costs, property preservation expenses, inspections and other expenses.

- We will not delay or dismiss any pending foreclosure action while awaiting your reinstatement payment, and additional fees and costs authorized by your contract and applicable law may accrue between the date of this letter and the date of reinstatement.  In addition, these charges do not include any escrow shortage(s) that may have accrued or will accrue hereafter.  At the same time, some of the estimated or amounts projected to become due may not accrue by the time you reinstate the loan, meaning that you would not be charged for them if you reinstate before they accrue.

- Certified funds are required. Payment must be provided via certified funds such as Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check, Money Order, Attorney's Escrow Check, MoneyGram or Western Union. All other forms of payment will be returned, and the reinstatement amount will not be accepted.

- YOU MUST CONTACT THIS OFFICE BEFORE TENDERING ANY FUNDS TO VERIFY THE EXACT AMOUNT DUE.

**CONVENIENT PAYMENT OPTIONS**

| **Wire Transfer** |
| --- |
| M & T Bank<br>1 MT Plaza, Buffalo, NY, 14203<br>ABA: 022000046 / Account No.: 9865548821<br>Credit to: PHH Mortgage Services |

| **Overnight Mail** |
| --- |
| Mail Certified Funds Check to:<br>PHH Mortgage Services<br>Attention: Mail Stop SV-20<br>1 Mortgage Way<br>Mount Laurel, NJ 08054<br>Attn: Cashiering / Payoff Department |

*All checks/money orders should be made payable to PHH Mortgage Services. The mortgage account number, borrower's name and property address should be included on the front of any check or money order.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

***Log in to MortgageQuestions.com --- your servicing website connection.***

Mayer001598
# EXHIBIT 4
# PAGE 3 OF 3

# EXHIBIT 5

2023-0015928  Page 1 of 4

TS No.: 2023-00089-CA

**RECORDING REQUESTED BY:**
Premium Title of California

**WHEN RECORDED MAIL TO:**
Western Progressive, LLC
7730 Market Center Ave, Suite 100
El Paso, TX 79912

TS No.: 2023-00089-CA

APN No.:072-284-30

2023-0015928    8/24/2023 11:00 AM
OFFICIAL RECORDS OF Santa Cruz County
Sheri Thomas, Recorder
RECORDING FEE: $101.00
COUNTY TAX: $0.00
CITY TAX: $0.00
240 ER PREMIUM TITLE OF C/    NDEF
Electronically Recorded    4 PGS
RCD160

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $ 178,903.80 as of 09/11/2023 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Version 1.1 CA NOD 0219                                    Page 1 of 3

Mayer001481

EXHIBIT 5
PAGE 1 OF 4

2023-0015928  Page 2 of 4

TS No.: 2023-00089-CA

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

HSBC Bank USA, National Association as trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2, By PHH Mortgage Corporation its attorney in-fact

C/O Western Progressive, LLC
7730 Market Center Ave, Suite 100
El Paso, TX 79912
Servicer Phone: 877-744-2506

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That Western Progressive, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 03/01/2006, executed by, CORY MICHAEL MAYER, A SINGLE MAN, as Trustor, to secure certain obligations in favor of PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP AS LENDER MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS BENEFICIARY., recorded 03/03/2006, as Instrument No. 2006-0012374, in Book ---, Page ---, of Official Records in the Office of the Recorder of Santa Cruz County, California describing land therein as: As more particularly described on said Deed of Trust.

Version 1.1 CA NOD 0219

Page 2 of 3

Mayer001482

EXHIBIT 5
PAGE 2 OF 4

2023-0015928  Page 3 of 4

TS No.: 2023-00089-CA

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
# DEED OF TRUST

**Street Address or other common designation of real property:**

**8650 HIHN ROAD, BEN LOMOND, CA 95005**

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of $ 456,000.00. A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

Installment of Principal and Interest plus impounds and/or advances which became due on 06/01/2020 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.

Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.

Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has delivered to said duly appointed Trustee, a written request to commence foreclosure, and has deposited with said duly appointed Trustee, a copy of the deed of trust and other documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

2.The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code §2923.5 and Civ. Code §2923.55 to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

See attached Declaration.

Dated: August 23, 2023

Western Progressive, LLC, as Trustee for beneficiary

Karita Robinson Trustee Sale Assistant

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Version 1.1 CA NOD 0219                                                                                      Page 3 of 3

Mayer001483

EXHIBIT 5
PAGE 3 OF 4

TS No.: 2023-00089-CA

### California Declaration of Compliance
### (Civ. Code § 2923.5 and Civ. Code § 2923.55)

Borrower(s): CORY MICHAEL MAYER
Property Address: 8650 HIHN RD, BEN LOMOND, CA 95005

The undersigned declares as follows:

       I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect one of the following.

    ☐   The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.5 and Civ. Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

    ☒   The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.5 and Civ. Code § 2923.55 to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

    ☐   The mortgage servicer was not required to comply with California Civil Code § 2923.5 and Civ. Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

    ☐   California Civil Code Section 2923.55 does not apply because the loan is not secured by a first lien mortgage or deed of trust on residential real property that meets the criteria in California Civil Code Section 2924.15(a)(1) ("owner occupied") or Section 2924.15 (a)(2) ("occupied by tenant").

Signed and Dated:

By: PHH Mortgage Corporation as Servicer for HSBC Bank USA, National Association as trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2

| | | |
|---|---|---|
| Oscar Giraldo | /s/. *Oscar Giraldo* | August 11, 2023 |
| Print Name | Signature | Date |
| Contract Management Coordinator | | |

Mayer001484

EXHIBIT 5
PAGE 4 OF 4

# EXHIBIT 6

2023-0023167  Page 1 of 4

TS No.: 2023-00089-CA

RECORDING REQUESTED BY
**Premium Title of California**

AND WHEN RECORDED MAIL TO:
**Western Progressive, LLC**
**7730 Market Center Ave, Suite 100**
**El Paso, TX 79912**

**2023-0023167      12/4/2023 10:32 AM**
OFFICIAL RECORDS OF Santa Cruz County
Sheri Thomas, Recorder
RECORDING FEE:  $101.00
COUNTY TAX:  $0.00
CITY TAX:  $0.00
240 ER PREMIUM TITLE OF C,      NTSA
**Electronically Recorded**      4 PGS
RCD160

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **2023-00089-CA**
A.P.N.: **072-284-30**
Property Address: **8650 HIHN ROAD, BEN LOMOND, CA 95005**

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE §2923.3(a) and (d), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IMPORTANT NOTICE TO PROPERTY OWNER:**
YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 03/01/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Trustor: **CORY MICHAEL MAYER, A SINGLE MAN**
Duly Appointed Trustee: **Western Progressive, LLC**
Deed of Trust Recorded **03/03/2006** as Instrument No. **2006-0012374** in book ---, page--- **and** of Official Records in the Office of the Recorder of **Santa Cruz** County, California,
Date of Sale: **01/18/2024** at **01:45 PM**
Place of Sale:      **At the courtyard steps to the Santa Cruz County Courthouse, 701 Ocean Street, Santa Cruz, CA 95060**

**Estimated amount of unpaid balance, reasonably estimated costs and other charges: $570,054.67**

Version 1.2 CA NOS 1220

Mayer001489

EXHIBIT 6
PAGE 1 OF 4

2023-0023167  Page 2 of 4

TS No.: 2023-00089-CA

## NOTICE OF TRUSTEE'S SALE

THE TRUSTEE WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

More fully described in said Deed of Trust.

Street Address or other common designation of real property: **8650 HIHN ROAD, BEN LOMOND, CA 95005**
A.P.N.: **072-284-30**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is:
**$570,054.67**.

**Note:** Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

Mayer001490

EXHIBIT 6
PAGE 2 OF 4

2023-0023167  Page 3 of 4

TS No.: 2023-00089-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(866)-960-8299** or visit this Internet Web site https://www.altisource.com/loginpage.aspx using the file number assigned to this case **2023-00089-CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Mayer001491

EXHIBIT 6
PAGE 3 OF 4

2023-0023167  Page 4 of 4

TS No.: 2023-00089-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction, if conducted after **January 1, 2021**, pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **(866)-960-8299**, or visit this internet website https://www.altisource.com/loginpage.aspx, using the file number assigned to this case **2023-00089-CA** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than **15 days** after the trustee's sale. Third, you must submit a bid, by remitting the funds and affidavit described in Section 2924m(c) of the Civil Code, so that the trustee receives it no more than **45 days** after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

**Western Progressive, LLC, as Trustee for beneficiary**
**C/o 1500 Palma Drive, Suite 238**
**Ventura, CA 93003**
**Sale Information Line:  (866) 960-8299**
https://www.altisource.com/loginpage.aspx

Date: November 30, 2023        Monique Patzer, Trustee Sale Assistant

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Version 1.2 CA NOS 1220                                                    Page 4 of 4

Mayer001492

EXHIBIT 6
PAGE 4 OF 4

# EXHIBIT 8

RECORDING REQUESTED BY

NAME: DocSolutionUSA

WHEN RECORDED MAIL TO:

NAME:    DOCSOLUTIONUSA

ADDRESS:    2316 SOUTHMORE

CITY / STATE / ZIP: PASADENA, TX 77502

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

**Electronically Recorded**

## 2026-0009502

**Santa Cruz County Recorder**
**Sheri Thomas, Recorder**

04/29/2026 07:35 AM
DOCSOLUTIONUSA, LLC DBA DOCS

Doc Type: STRU   Total Pages: 3

Recording Fee: $190.00
Transfer Tax:  $0.00
Total Fee:  $190.00
RCD178

(SPACE ABOVE FOR RECORDER'S USE)

SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

EXHIBIT 8
PAGE 1 OF 3

Document #2026-0009502  Page 2 of 3

RELEASE PREPARED BY AND
AFTER RECORDING RETURN TO:

**DS DocSolutionUSA**

DocSolutionUSA, LLC dba DocSolution, Inc.
2316 Southmore
Pasadena, TX 77502
713-941-4928

DocSolution, Inc. did not prepare a title search of the property encumbered by the security instrument described herein. The preparer of this document makes no representation as to the status of the title, loan history, property use or zoning regulations concerning described assigned, transferred, released, or conveyed nor any matter except the validity of the form of this instrument. Information herein was provided to preparer by Grantor/Grantee and/or their agent. No boundary survey was made at the time of this assignment, transfer or conveyance.

88801074767688-ER



### SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE

Property Address: 8650 HIHN ROAD, BEN LOMOND, CA  95005
Parcel # 072-284-30
HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2, the current holder of the obligations (hereinafter "BENEFICIARY") secured by that certain Deed of Trust, described as follows:

| | |
|---|---|
| Trustor: | CORY MICHAEL MAYER, A SINGLE MAN |
| Original Trustee: | FIRST AMERICAN TITLE INSURANCE COMPANY |
| Original Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP, its successors and assigns |
| Dated: | 3/1/2006 |
| Amount: | $456,000.00 |
| Recorded: | 3/3/2006 in SANTA CRUZ County, State of CA as Instrument or Auditor No. 2006-0012374 |

Does hereby substitute "BENEFICIARY" as trustee in lieu of the above named Trustee under said Deed of Trust.  "BENEFICIARY" hereby accepts said appointment as Trustee under said Deed of Trust and, as successor Trustee, pursuant to the request of said Owner and Holder and in accordance with provisions of Deed of trust, does hereby reconvey without warranty to the person or persons legally entitled thereto, all estate now held by it under said Deed of Trust.

Executed ___27___ day of __April___ ,_2026_

HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2 by its attorney in fact, Onity Mortgage Corporation f/k/a PHH Mortgage Corporation

BY: _____
(Beneficiary and as Trustee)
NAME: CAROL CRISWELL
TITLE:  ASSISTANT SECRETARY

EXHIBIT 8
PAGE 2 OF 3

Document #2026-0009502  Page 3 of 3

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned, a Notary Public on this day personally appeared Carol Criswell, ASSISTANT SECRETARY, known to me (or proved to me on the oath of ——————————), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said Onity Mortgage Corporation f/k/a PHH Mortgage Corporation, as attorney in fact for HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2, a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office, this ___27___ day of ___April___, A.D. 2026

_____
NOTARY PUBLIC, STATE OF TEXAS
NOTARY NAME: Adriana Cantu



Adriana Cantu
My Commission Expires
11/6/2029
Notary ID 135538578

**HOLDER'S ADDRESS:**
1661 Worthington Road, Suite 100, West Palm BeachWest Palm Beach, FL 33407

Mortgage Funding date 3/1/2006 in the amount of $456,000.00

EXHIBIT 8
PAGE 3 OF 3

# EXHIBIT 9



Onity Mortgage | PO Box 24738
West Palm Beach, FL 33416

Tel: 1-855-516-3887
Fax: 1-856-917-8300

CORY M MAYER
8650 HIHN RD
BEN LOMOND CA 95005-9100

**Property Address:**
8650 HIHN RD
BEN LOMOND CA 95005-9100

May 4, 2026

Account Number: ███ 7676

Dear Mr. Mayer,

On behalf of Onity Mortgage Corporation ("Onity"), formerly known as PHH Mortgage Corporation, we write with an update on your mortgage loan, which is documented by the Adjustable Rate Note dated March 1, 2006 in the original principal balance of $456,000.00, that was secured by a Deed of Trust recorded on March 3, 2006 with the Santa Cruz County Recorder as Instrument No. 2006-0012374.

We understand there have been disputes related to your loan beginning in 2016. As you know, the parties resolved a previous dispute in 2020 and entered into a Settlement Agreement. However, additional disputes have arisen related to the reinstatement and payments on your loan following that settlement. Onity has worked to resolve these issues since 2020, though we understand you disagree.

As of April 22,2026, in an effort to bring finality to the loan, Onity has waived all amounts that were due pursuant to the terms of the Note to satisfy the obligations in full, and the loan is now liquidated. This letter confirms the principal balance of your loan, which previously was $447,655.82, is now $0.00, there are no outstanding amounts due, and no future payments will be required.

We also write to notify you that the Deed of Trust for your loan has been released and is no longer a lien on your property, 8650 High Road, Ben Lomond, CA 95005. Enclosed is the Substitution of Trustee and Deed of Reconveyance that was recorded with the Santa Cruz County Recorder on April 29, 2026. This document confirms that HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2, who was the current holder of the obligations secured by the Deed of Trust recorded on March 3, 2006 with the Santa Cruz County Recorder as Instrument No. 2006-0012374, reconveyed the Deed of Trust in its entirety. You now own the property free and clear of the mortgage loan.

We are informed of your position in the current litigation that you have deposited amounts for the arrears owed for the loan into your attorneys' client trust account that may total approximately $234,600. Onity is not making any claim to those amounts, nor are we asking you to reimburse any property taxes advanced by us on your behalf.

While we very much regret our prior efforts to resolve your loan were unsuccessful, we trust the discharge of your loan and reconveyance of the deed of trust, which eliminates your debt in full while you retain all deposits you've made, allows you to enjoy the property free and clear of our lien for as long as you stay in your home.

Sincerely,

Benjamin Verdooren

NMLS: 2726                        www.MortgageQuestions.com

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

EXHIBIT 9
PAGE 1 OF 4

RECORDING REQUESTED BY

NAME: DocSolutionUSA

WHEN RECORDED MAIL TO:

NAME:    DOCSOLUTIONUSA

ADDRESS:  2316 SOUTHMORE

CITY / STATE / ZIP:  PASADENA, TX 77502

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

**Electronically Recorded**

## 2026-0009502

**Santa Cruz County Recorder**
**Sheri Thomas, Recorder**

04/29/2026 07:35 AM
DOCSOLUTIONUSA, LLC DBA DOCS

Doc Type: STRU   Total Pages: 3

Recording Fee: $190.00
Transfer Tax:  $0.00
Total Fee:  $190.00
RCD178

(SPACE ABOVE FOR RECORDER'S USE)

SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

EXHIBIT 9
PAGE 2 OF 4

Document #2026-0009502  Page 2 of 3

RELEASE PREPARED BY AND
AFTER RECORDING RETURN TO:

**DS DocSolutionUSA**

DocSolutionUSA, LLC dba DocSolution, Inc.
2316 Southmore
Pasadena, TX 77502
713-941-4928

DocSolution, Inc. did not prepare a title search of the property encumbered by the security instrument described herein. The preparer of this document makes no representation as to the status of the title, loan history, property use or zoning regulations concerning described assigned, transferred, released, or conveyed nor any matter except the validity of the form of this instrument. Information herein was provided to preparer by Grantor/Grantee and/or their agent. No boundary survey was made at the time of this assignment, transfer or conveyance.

88███767688-ER

### SUBSTITUTION OF TRUSTEE AND DEED OF RECONVEYANCE

Property Address: 8650 HIHN ROAD, BEN LOMOND, CA  95005
Parcel # 072-284-30
HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2, the current holder of the obligations (hereinafter "BENEFICIARY") secured by that certain Deed of Trust, described as follows:

| | |
|---|---|
| Trustor: | CORY MICHAEL MAYER, A SINGLE MAN |
| Original Trustee: | FIRST AMERICAN TITLE INSURANCE COMPANY |
| Original Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR PINNACLE FINANCIAL CORPORATION D/B/A TRI-STAR LENDING GROUP, its successors and assigns |
| Dated: | 3/1/2006 |
| Amount: | $456,000.00 |
| Recorded: | 3/3/2006 in SANTA CRUZ County, State of CA as Instrument or Auditor No. 2006-0012374 |

Does hereby substitute "BENEFICIARY" as trustee in lieu of the above named Trustee under said Deed of Trust.  "BENEFICIARY" hereby accepts said appointment as Trustee under said Deed of Trust and, as successor Trustee, pursuant to the request of said Owner and Holder and in accordance with provisions of Deed of trust, does hereby reconvey without warranty to the person or persons legally entitled thereto, all estate now held by it under said Deed of Trust.

Executed  27  day of  April  ,2026

HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2 by its attorney in fact, Onity Mortgage Corporation f/k/a PHH Mortgage Corporation

BY: _____
(Beneficiary and as Trustee)
NAME: CAROL CRISWELL
TITLE:  ASSISTANT SECRETARY

EXHIBIT 9
PAGE 3 OF 4

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned, a Notary Public on this day personally appeared Carol Criswell, ASSISTANT SECRETARY, known to me (or proved to me on the oath of _____ ), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said Onity Mortgage Corporation f/k/a PHH Mortgage Corporation, as attorney in fact for HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2, a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office, this __27__ day of __April__, A.D. __2026__

_____
NOTARY PUBLIC, STATE OF TEXAS
NOTARY NAME: Adriana Cantu



Adriana Cantu
My Commission Expires
11/6/2029
Notary ID 135538578

**HOLDER'S ADDRESS:**
1661 Worthington Road, Suite 100, West Palm BeachWest Palm Beach, FL 33407

Mortgage Funding date 3/1/2006 in the amount of $456,000.00

EXHIBIT 9
PAGE 4 OF 4