Robert W. Norman, Jr. (SBN 232470)
Timothy A. Schneider (SBN 300816)
HOUSER LLP
9970 Research Drive
Irvine, California 92618
Telephone: (949) 679-1111
Facsimile: (949) 679-1112
E-Mail: tschneider@houser-law.com

Attorneys for Defendants, PHH MORTGAGE CORPORATION, NOW KNOWN AS ONITY MORTGAGE CORPORATION and HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| CORY MAYER,<br><br>    Plaintiff,<br><br>    vs.<br><br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A; PHH MORTGAGE CORPORATION; WESTERN PROGRESSIVE, LLC; DOES 1-20; and all persons unknown claiming any interest in the property, inclusive, and DOES 1 through 50, inclusive,<br><br>    Defendants. | CASE NO.:  5:25-cv-00182-NW<br><br>**DECLARATION OF BRIAN PAINO IN SUPPORT OF DEFENDANTS PHH MORTGAGE CORPORATION, NOW KNOWN AS ONITY MORTGAGE CORPORATION AND HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2 NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT TO PLAINTIFF CORY MAYER'S FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF THE ISSUES**<br><br>Date:  July 15, 2026<br>Time:  9:00 a.m.<br>Judge:  Noel Wise<br>Courtroom: 3, 5th Floor<br>Place:  280 South 1st Street<br>     San Jose, California 95113 |

1
DECLARATION OF BRIAN PAINO

**DECLARATION OF BRIAN PAINO**

I, Brian Paino, hereby declare as follows:

1.    I am an attorney duly licensed to practice before all courts in the State of California and I am an attorney with the law firm, Hinshaw & Culbertson LLP ("Hinshaw"), counsel for PHH MORTGAGE CORPORATION, NOW KNOWN AS ONITY MORTGAGE CORPORATION ("PHH") and HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2 ("HSBC, as Trustee," and together with PHH, the "Defendants"). I have been an attorney with Hinshaw & Culbertson LLP since March 2024.

2.    In the regular performance of my job functions, I have access to and am familiar with business records maintained by Hinshaw.  I have personal knowledge of the manner in which these business records are created.  These records (which include data compilations, electronically imaged documents, and other documents) are: (a) made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, persons with knowledge of the activity and transactions reflected in such records; and (b) kept as a regular practice and in the ordinary course of business regularly conducted by Hinshaw. It is the regular practice of Hinshaw to make and receive such records. I have make this declaration based upon my personal knowledge of the facts stated herein or knowledge that I obtained through my review of and in reliance upon Hinshaw's business records concerning this action.

**The 2017 Lawsuit and Settlement**

3.    Plaintiff Cory Mayer ("Plaintiff") filed an action in the Superior Court of the State of California, County of Santa Cruz, Case No. 17CV00139 on January 13, 2017, for alleged wrongful foreclosure and other enumerated claims against "Defendants (the "2017 Lawsuit").

4.    McGlinchey Stafford  ("McGlinchey") represented Defendants in the 2017 Lawsuit. I was an attorney with McGlinchey between September 2014 and March 2024, and was one of the attorneys working on the 2017 Lawsuit for McGlinchey, as counsel for Defendants.

5.    Plaintiff, PHH, and HSBC, as Trustee (the "Parties") resolved the 2017 Lawsuit by rescinding the November 1, 2016 foreclosure that was the subject of that action and entering into a

Confidential Settlement and Release Agreement (the "Settlement Agreement"). Attached as **Exhibit 3** is a true and accurate copy of the Settlement Agreement.

6.    The settlement involved four primary components, three of which are enumerated in the Settlement Agreement: (a) rescission of the foreclosure by Defendants; (b) reinstatement of the Loan by Plaintiff; (c) payment of settlement funds by Defendants; and (d) adjustment of Plaintiff's credit reporting for the Loan by Defendants.

7.    The reinstatement of the Loan contained within the Settlement Agreement was supported by a Mortgage Reinstatement Quote dated January 29, 2020 (the "Reinstatement Quote"). Attached as **Exhibit 4** is a true and accurate copy of the Reinstatement Quote. The Reinstatement Quote was provided to Plaintiff's counsel in the 2017 Lawsuit as part of the drafting of the Settlement Agreement.

8.    The Settlement Agreement that was jointly prepared by the Parties differed from the Reinstatement Quote as follows:

| Reinstatement Quote | | Settlement Agreement | |
|---|---|---|---|
| Principle | $14,670.91 | Principal | $14,670.91 |
| Interest | $128,178.13 | Interest | $128,178.13 |
| County Tax | $43,537.56 | Escrow Advances | $43,537.56 |
| | | Other Fees | $4,860.24 |
| Lien | ($33,120.95) | Credit | ($33,120.95) |
| Total Reinstatement | $153,265.65 | Total Reinstatement | $158,125.89 |

The Parties used the term "Credit" on the Settlement Agreement for what was identified as a "Lien" on the Reinstatement Quote.[1]

9.    Plaintiff's counsel, Pamela Simmons, raised issues concerning PHH's compliance with the Settlement Agreement.

10.    I, along with other attorneys at McGlinchey, worked with Plaintiff's counsel, including Pamela Simmons and Brian Liddicoat, between August 2020 and March 2024 to address the disputes raised by Plaintiff concerning the Settlement Agreement.

---

[1] The Reinstatement Quote also included a table, on a separate page, listing "Other Amounts Outstanding and Due" totaling $4,860.24.

3
DECLARATION OF BRIAN PAINO

11.    Hinshaw started representing Defendants with respect to the post-Settlement dispute with Plaintiff in or around April 2024.

12.    I, along with other attorneys at Hinshaw, worked with Plaintiff's counsel, Pamela Simmons, between March 2024 and December 2024 to address the disputes raised by Plaintiff concerning the Settlement Agreement.

13.    I was working with Plaintiff's counsel in an attempt to amicably resolve the disputes raised by Plaintiff concerning the Settlement Agreement. I (along with other colleagues at McGlinchey and then at Hinshaw) made these efforts between August 2020 and December 2024.

14.    As part of these efforts to resolve the disputes with Plaintiff, it is my understanding that between December 2021 and October 2024, PHH credited the Loan amounts in excess of $33,120.95, the amount stated for "Credit" in the Settlement Agreement.

**The Payments Received by my Office from Plaintiff's Counsel**

15.    Plaintiff's counsel, Pamela Simmons, submitted funds in the amount of $168,468.78 to my firm on or around May 13, 2020. I forwarded those funds to PHH.

16.    On or around November 16, 2020, Plaintiff's counsel Pamela Simmons submitted to me, funds in the amount of $24,133.41. This was the first attempt by Plaintiff or Plaintiff's counsel to make a payment to my law firm following the payment of $168,468.78 made on May 13, 2020.

17.    The funds in the amount of $24,133.41 submitted on or around November 16, 2020 were destroyed at the mutual agreement of myself and Plaintiff's counsel, Pamela Simmons.

18.    My office did not receive any further payments from Plaintiff or Plaintiff's counsel until an attempt was made on or about October 9, 2024.

**Plaintiff's Attempts to Enforce the Settlement Agreement**

19.    Plaintiff sought three times to enforce the Settlement Agreement in the same state court in which he brought the 2017 Lawsuit.

20.    Plaintiff made his first attempt on December 16, 2021, which he withdrew after my office filed an Opposition on behalf of Defendants.

21.    Plaintiff made his second attempt on January 10, 2024, which he withdrew.

22.     Plaintiff made his third and final attempt on March 18, 2024, which my office opposed on behalf of Defendants and which was heard by the court on various dates, including on July 29, 2024. The court issued an order on October 16, 2024, finding, in part, that it was a post-Settlement dispute and that the Settlement Agreement does not address an escrow account issues or how the property taxes and insurance are to be paid or structured. Attached as **Exhibit 7** is a true and accurate copy of the October 16, 2024 court order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21st day of May 2026, in Mission Viejo, California.

_____
Brian Paino

DECLARATION OF BRIAN PAINO

# EXHIBIT 3

## CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement and its Exhibit (collectively, the "Agreement") is made and entered into as of the last day set forth on the signature page ("Effective Date") by and between PHH Mortgage Corporation ("PHH"), successor by merger to Ocwen Loan Servicing, LLC ("Ocwen"), and HSBC Bank USA, National Association as trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2 ("HSBC Bank," and together with Ocwen, the "Defendants"), and Cory Mayer ("Borrower") (individually, a "Party," and collectively, the "Parties") for the purpose of resolving by compromise and settlement of all claims, controversies, alleged liabilities, and disputes between them.

## RECITALS

This Agreement is entered into with reference to the following facts:

A. On about March 1, 2006, Borrower executed a $456,000.00 note ("Note") in favor of Pinnacle Financial Corporation d/b/a/ Tri-Star Lending Group secured by a deed of trust ("Deed of Trust") encumbering the real property commonly known as 8650 Hihn Road, Ben Lomond, CA 95005 ("Property"), which is more fully described in the Deed of Trust and assigned APN 072-284-30. (The Note, Deed of Trust, and associated origination documents are collectively referred to as the "Loan Documents," setting forth the terms of the "Loan.")

B. On March 29, 2016, a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") was recorded in the Santa Cruz County, California Recorder's Office as instrument no. 2016-0010672 in connection with the Loan and the Property.

C. On or about November 1, 2016, the Property was sold to the current note holder HSBC Bank at a non-judicial foreclosure sale (the "Foreclosure Sale") conducted pursuant to the terms of the Deed of Trust.

D. PHH is the current servicer of the Loan, which is identified by the Loan Number ███7676. Ocwen serviced the Loan until it merged with PHH on June 1, 2019.

E. Western Progressive, LLC, is a named defendant in Borrower's below-described lawsuit and is the Trustee under the Deed of Trust, hereinafter referred to as "Western Progressive."

F. Following the Foreclosure Sale, the Property sustained damage from a winter storm and Borrower repaired the damage at his expense. Borrower then filed a claim on the Farmers Insurance homeowner's insurance policy. Farmers Insurance then issued a check for payment on the claim in the amount of $21,369.04 payable to "Ocwen Loan Servicing LLC and Cory Mayer" (the "Insurance Check"). The Insurance Check has been held in trust by Borrower's attorney pending resolution of the Action, as defined below.

G. Certain disputes have arisen between Borrower, Defendants, and Western Progressive regarding Borrower's default on the Loan. Those disputes are more fully set forth in the pleadings filed in the Superior Court of California for the County of Santa Cruz (the "Superior

1401115.3

---

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                                    Page 1 of 9

Mayer001725

EXHIBIT 3
PAGE 1 OF 9

Court") action entitled *Cory Mayer v. Ocwen Loan Servicing, LLC, et al.,* which was assigned Case Number 17CV00139, hereinafter to be referred to as the "Action."

H. Subsequent to the filing of the Action, on October 28, 2019, a Notice of Rescission of Trustee's Deed Upon Sale was recorded against the Property whereby the Foreclosure Sale was rescinded. As of the date of this Agreement, the unpaid principal balance on the Loan is $466,851.32 (the "Unpaid Principal Balance").

I. Each Party to this Agreement is fully apprised of the facts set forth in these Recitals and of the facts and contentions raised in the Action, and in all other aspects of the dispute between or among the Parties, whether pleaded or not, and possibilities of each action and matter described herein.

J. Each Party denies all allegations, claims and defenses made by the other Party in the Action.

K. Notwithstanding the above, solely in order to avoid the cost, delay and uncertainty of further litigation, the Parties desire to compromise and settle all disputes and claims which exist or which may exist between and among them arising out of the facts, matters, and events set forth above, without admitting any liability and settle their rights and obligations in connection with the Loan Documents.

## AGREEMENTS, RELEASES, AND PROMISES

**THEREFORE**, in consideration of the facts and general releases and promises contained herein, and for other good and valuable consideration, the sufficiency and receipt of which is acknowledged by each Party hereto, the Parties promise and agree as follows:

1. **Borrower's Obligation to Reinstate:** Borrower acknowledges, understands, and agrees that the total amount required to reinstate the Loan as of February 19, 2020, is $158,125.89 (the "Reinstatement Amount"), consisting of the following:

| | |
|---|---:|
| Principal | $14,670.91 |
| Interest | $128,178.13 |
| Escrow Advances | $43,537.56 |
| Other Fees | $4,860.24 |
| Credit | $(33,120.95) |
| **Total:** | **$158,125.89** |

Within thirty (30) days of the Effective Date, Borrower shall tender the Reinstatement Amount to PHH. PHH agrees to accept the Insurance Check, as may be reissued from time-to-time, indorsed and delivered to PHH by Borrower and to apply the funds toward the Reinstatement Amount, and Borrower hereby authorizes and agrees to the application of the Insurance Check toward the Reinstatement Amount. Upon the application of the Reinstatement Amount to the Loan, the Unpaid Principal Balance will be reduced to $452,180.41 and the Loan will be contractually due for the March 1, 2020 monthly payment.

1401115.3

---

Mayer001726

EXHIBIT 3
PAGE 2 OF 9

2. **Payment of Settlement Funds:** PHH agrees to pay $75,000 by check made payable to Borrower or Borrower's counsel within thirty (30) days of (a) the Effective Date or (b) the date upon which Borrower or his counsel, Law Offices of Simmons and Purdy, delivers to PHH a W-9 form, whichever is later.

3. **Dismissal of Action:** Borrower agrees to dismiss the Action with prejudice and without costs. Borrower shall execute the Stipulation for Voluntary Dismissal ("Stipulation") attached as **Exhibit A** to this Agreement simultaneously with his execution of this Agreement and file the Stipulation with the Superior Court within 10 days of receipt of the payment discussed in Paragraph 2 above, and agrees to cooperate in filing any other papers with the Superior Court that may be necessary to obtain a dismissal of the Action *with prejudice.*

4. **Attorneys' Fees:** Each Party shall bear their own attorneys' fees and costs incurred. If any Party hereto commences any action arising out of this Agreement, including, without limitation, any action to enforce or interpret this Agreement, the prevailing party or parties in such action shall be entitled to recover its reasonable attorney's fees and other expenses incurred in such action. Any award of attorney's fees hereunder shall not be computed according to any court schedule, but, instead, shall be in such amount as to fully reimburse all attorney's fees actually incurred in good faith, regardless of the size of the judgment, since it is the intention of all Parties to compensate fully the prevailing party for all attorney's fees paid or incurred in good faith.

5. **Credit Reporting:** Within thirty (30) days of PHH's receipt of the Reinstatement Amount, PHH will submit Universal Data Forms to all three major credit reporting agencies reporting the Loan as paid as agreed from the time Ocwen began servicing the Loan through the Effective Date. PHH shall provide copies of all three Universal Data Forms to Borrower within thirty (30) days of the date they are submitted to the credit reporting agencies. Borrower acknowledges and agrees that the credit reporting agencies are separate entities from PHH and that PHH cannot guarantee, warrant, or take responsibility for the performance of the credit reporting agencies in changing, deleting, or making entries in relation to any credit information. Borrower warrants, declares, and covenants that he/she understands the limitations on PHH in this regard and that any action or inaction on the part of the credit reporting agencies shall not constitute a breach of this Agreement by PHH, nor shall it provide the basis for any claims against PHH, which claims are hereby specifically and expressly waived, discharged and released.

6. **Confidentiality:** The Parties and their attorneys represent, warrant and agree that the terms and contents of this Agreement and all information and evidence elicited or exchanged during the Action and in negotiating this Agreement are and shall be treated as confidential and shall not be disclosed, in any way used or described or characterized to any other person or entity except as follows: (a) Borrower may only disclose the contents or terms of the Agreement to his accountants and other tax preparers, to the Internal Revenue Service, to his attorneys, or if otherwise compelled by a court of law; and (b) PHH and Defendants may disclose the contents or terms of the Agreement under the same circumstances, to governmental entities to which they report, or as otherwise required in the normal course

14011153

Mayer001727

EXHIBIT 3
PAGE 3 OF 9

of their business. This confidentiality provision and agreement is a material term of this Agreement, breach of which the Parties hereby agree will cause the Parties irreparable harm. If Borrower or Borrower's attorneys are required by an appropriate order of a competent court to disclose the terms of this Agreement to individuals other than those set forth above, Borrower shall notify PHH and Defendants' counsel, in writing, at least fifteen (15) days prior to such disclosure.

7. **Release by Borrower:** Except for the obligations and rights expressly set forth and reserved in Paragraph 12 of this Agreement, in consideration of the recitals, covenants and agreements set forth in this Agreement, and other good and valuable consideration, receipt of which is hereby acknowledged, upon the Effective Date of this Agreement, Borrower, for and on behalf of himself and his present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estate, or any and all other persons who could claim through him (collectively, the "Releasors") hereby unconditionally, irrevocably, forever and fully releases, acquits, and forever discharges PHH, Ocwen, HSBC Bank, and Western Progressive, and their predecessors, principals, parents, heirs, successors, assigns, subsidiaries, affiliates, commonly controlled entities, companies, enterprises, ventures, partners, insurers, investors, attorneys, officers, shareholders, directors, agents, representatives employees, clients, administrators, executors, personal representatives, the beneficiary and investor in the Loan, and their predecessors, heirs or successors in interest and assigns, and each of them (the "Releasees"), of and from any and all claims, demands, actions, causes of action, suits, liens, debts, obligations, promises, agreements, costs, damages, liabilities, and judgments of any kind, nature, or amount whether in law or equity, whether known or unknown, anticipated or unanticipated, liquidated or unliquidated, including any and all claimed or unclaimed compensatory damages, consequential damages, interest, costs, expenses and fees (including reasonable or actual attorneys' fees) which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Action, the Property, the Note, the Deed of Trust, or the Loan. Borrower also specifically waives and releases any right of rescission under the federal Truth in Lending Act ("TILA") and any other claims he may have, whether known or unknown, fixed or contingent, under TILA, the Home Ownership and Equity Protection Act ("HOEPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Equal Credit Opportunity Act ("ECOA"), the Fair Credit Reporting Act ("FCRA"), or their implementing regulations, or any corresponding state law statute or provision concerning the Note, the Deed of Trust, the Loan, and/or the Action. It is the intention and effect of this release to discharge all claims that the Releasors have against the Releasees up until and including the date of the execution of this Agreement.

8. **Release of Unknown Claims:** Borrower acknowledges and agrees that he may hereafter discover facts different from, or in addition to, those facts known to him or which he now believes to be true with respect to any and all of the claims, demands, actions, causes of action, suits, liens, debts, obligations, damages, liabilities, judgments, costs, expenses, and fees (including reasonable attorney's fees) existing on the effective date of this Agreement. Borrower nevertheless agrees that the releases set forth herein have been negotiated and

1401115.3

---

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                    Page 4 of 9

Mayer001728

EXHIBIT 3
PAGE 4 OF 9

agreed upon, notwithstanding such acknowledgment and agreement, and hereby expressly waive any and all rights which he may have under any federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution. Borrower understands and acknowledges the significance and consequences of this waiver and assumes full responsibility for any and all damages, losses, costs, and expenses they may incur hereafter as a result of any of the facts, matters, and events referred to in the Recitals set forth above.

Borrower hereby expressly waives California *Civil Code* §1542, which provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Borrower acknowledges that he has read and understands and acknowledges the significance and consequence of any waiver of California *Civil Code* §1542, and assumes full responsibility for any and all damages, losses, costs and expenses he may incur hereafter as a result of any of the facts, matters, and events referred to in the Recitals set forth above.

11. **Limited Release by Defendants**: Defendants release Borrower as to any claims resulting from the Foreclosure Sale.

12. **Release Limitations:** This Agreement does not release: (1) claims arising out of the failure of either Party to perform in conformity with the terms of this Agreement; (2) any future disputes between Borrower and PHH and Defendants, including their successors and assigns, which arise out of or relate to the Parties' continuing relationship as mortgagor and mortgagee; and (3) PHH and Defendants' (including their successors' and assigns') right to foreclose.

13. **Warranties and Representations:** The Parties hereto warrant and represent that (a) he, she, or it is the sole owner of all rights, claims, damages, actions, causes of action, suits and defenses, as the case may be, at law or in equity, he, she, or it has or may have or that were asserted or could have been asserted in the action, and (b) he, she, or it has not assigned, transferred, conveyed, or purported to assign, transfer, or convey to any person or entity any right, claim, action, cause of action, suit (at law or in equity), defense, demand, debt, liability, account, or obligation herein released, or any part thereof, or which would, absent such assignment, transfer or conveyance, be subject to the releases set forth in this Agreement.

1401115.3

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

Page 5 of 9

Mayer001729

EXHIBIT 3
PAGE 5 OF 9

14. **Acknowledgments:** Each of the Parties acknowledge and agree that:

    a. This Agreement is entered into and executed voluntarily by each of the Parties hereto and without any duress or undue influence on the part of, or on behalf of, any such Party.

    b. Each of the Parties hereto has been represented by counsel of his/their own choice, or has had the opportunity to be represented by counsel and to seek advice in connection with the negotiations for, and in the preparation of, this Agreement and that he, she, or it has read this Agreement and that he, she or it is fully aware of its contents and legal effects. All Parties who are representing themselves are warned to obtain the advice of an attorney before signing this Agreement.

    c. The drafting and negotiation of this Agreement has been undertaken by all Parties hereto and their respective counsel. For all purposes, this Agreement shall be deemed to have been drafted jointly by all of the parties hereto with no presumption in favor of one party over another in the event of any ambiguity.

15. **Tax Consequences:** This Agreement is enforceable regardless of its tax consequences. The Parties understand and agree that the payment set forth in this Agreement reflect the settlement of disputed legal claims and that PHH and Defendants make no representations regarding the Agreement's tax consequences. Borrower, however, specifically agrees that he is solely responsible for any and all taxes, interest and penalties due and owing, if any, should the payment, or any portion thereof, be taxable.

16. **Compromise of Disputed Claims:** It is understood and agreed that this Agreement is the compromise of disputed claims, and that the terms of settlement contained herein and the releases executed are not intended to be and shall not be construed as admissions of any liability or responsibility whatsoever and each released Party expressly denies any liability or responsibility whatsoever.

17. **Severability:** If any of the provisions of this Agreement are held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions shall not be affected thereby.

18. **Binding Effect:** This Agreement shall be binding on, and shall inure to the benefit of, the Parties hereto and their respective administrators, representatives, successors, and assigns.

19. **Governing Law:** This Agreement shall be governed by the laws of the State of California and any question arising hereunder shall be construed or determined according to such law. Notwithstanding any such dismissal(s) agreed to herein, the Court in the Action shall retain jurisdiction to enforce this settlement pursuant to a motion filed under California *Code of Civil Procedure* §664.6.

20. **Further Assurances:** The Parties agree to do all acts and things and to make, execute, acknowledge and deliver such written documents, instructions and/or instruments in such form as shall from time to time be reasonably required to carry out the terms and provisions

1401115.3

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                    Page 6 of 9

Mayer001730

EXHIBIT 3
PAGE 6 OF 9

of this Agreement, including but not limited to, the execution, filing or recording of any reporting documents, affidavits, deeds or agreements. The Parties further agree to give reasonable cooperation and assistance to any other party or parties hereto in order to enable such other Party or Parties to secure the intended benefits of this Agreement.

21. **Counterparts:** This Agreement may be executed by the Parties in any number of counterparts, including by way of facsimile, and each of which shall be deemed to be an original and all of which, collectively, shall be deemed to be one and the same instrument.

22. **Integration Clause:** This Agreement contains the entire agreement between and among the Parties hereto, and supersedes all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, between or among them relating to the subject matter of this Agreement. This Agreement may not be amended orally, nor shall any purported oral amendment (even if accompanied by partial or complete performance in accordance therewith) be of any legal force or effect or constitute an amendment of this Agreement, but rather this Agreement may be amended only by an agreement in writing signed by the parties.

23. **Time Is Of The Essence:** Time is of the essence with respect to the performance of any and all provisions of this Agreement.

24. **Headings and Captions:** The headings and captions inserted into this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

25. **Effective Date:** This Agreement shall be deemed effective on the Date that it is signed by all Parties hereto.

14011153

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE** Page 7 of 9

Mayer001731

EXHIBIT 3
PAGE 7 OF 9

IN WITNESS WHEREOF, each of the Parties hereto has executed this Agreement on the date set forth opposite his, her, or its name below. **THE UNDERSIGNED HEREBY CERTIFY THAT THEY HAVE READ AND FULLY UNDERSTAND ALL OF THE TERMS, PROVISIONS, AND CONDITIONS OF THIS AGREEMENT AND HAVE EXECUTED THIS AGREEMENT VOLUNTARILY.**

Dated: 03, 04, 2019

Cory Mayer

PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC

Dated: 4-6, 2020

Name: Benjamin Verdoorn
Title: Senior Loan Analyst

HSBC Bank USA, National Association as trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2

by PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, its attorney-in-fact

Dated: 4-6, 2020

Name: Benjamin Verdoorn
Title: Senior Loan Analyst

1401115.3

CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE                Page 8 of 9

Mayer001732

EXHIBIT 3
PAGE 8 OF 9

APPROVED AS TO FORM:

Dated: March 26, 2020
_____, 2019x

*BRIAN D. LADDICOAT*

BRIAN D. LIDDICOAT
Attorney for Cory Mayer

**McGLINCHEY STAFFORD**

Dated: April 17 , 2020

BRIAN A. PAINO
Attorneys for PHH Mortgage Corporation,
successor by merger to Ocwen Loan
Servicing, LLC, and HSBC Bank USA,
National Association as trustee for Deutsche
ALT-A Securities Mortgage Loan Trust,
Series 2006-AR2

1401115.3

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**                    Page 9 of 9

Mayer001733

EXHIBIT 3
PAGE 9 OF 9

# EXHIBIT 4



| PHH Mortgage Services | Tel  877-744-2506 |
| 1 Mortgage Way | Fax  856-917-8300 |
| Mt. Laurel, NJ 08054 | |

01/29/2020

Account Number ████ 7676

Property Address: 8650 HIHN RD
BEN LOMOND CA 95005

Borrower(s): CORY M MAYER

## MORTGAGE REINSTATEMENT QUOTE

Dear Requestor,

We represent the Plaintiff in the current or anticipated foreclosure action in connection with the above-referenced loan.

This letter is in response to a request we received for a reinstatement quote on the above-referenced account. Please Note: We will not delay in the filing of foreclosure and will not delay or dismiss any pending foreclosure action while awaiting your reinstatement payment.

See below for a breakdown of the total amount needed to reinstate this mortgage account.

1.  The Total Amount Due to Reinstate, listed in the chart below, must be remitted no later than 02/19/2020. Please see the following pages of this letter for additional information about submitting funds.

2.  If funds are not received by 02/19/2020, additional funds may be required to reinstate the account. If funds are received timely and the account is reinstated, the next regular payment is due on 03/01/2020.

| Description | Amount |
|---|---:|
| Principle | 14,670.91 |
| Interest | 128,178.13 |
| County Tax | 43,537.56 |
| Lien | (33,120.95) |
| **Total Amount Due to Reinstatement** | **153,265.65** |

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*
### *Log in to MortgageQuestions.com --- your servicing website connection.*

Mayer001596

# EXHIBIT 4
# PAGE 1 OF 3



PHH Mortgage Services
1 Mortgage Way
Mt. Laurel, NJ 08054

Tel  877-744-2506
Fax  856-917-8300

Please Note: There are other amounts due on this mortgage account. Repayment of these amounts is not required to reinstate the mortgage at this time; however, the account obligations under the mortgage documents must still be fulfilled by the time of payoff.

| Description | Amount |
|---|---|
| Accrued Late Charges | 1,346.71 |
| Late Charges Forecasted | 171.61 |
| Appraisal Fee | 310.00 |
| Attorney Mail Costs | 54.49 |
| Broker's Price Opinion | 440.00 |
| Court Costs | 125.00 |
| Inspection Fee | 137.25 |
| Miscellaneous Property Preservation Fees | 66.25 |
| Notice Of Sale | 24.00 |
| Publication Fee | 1,224.09 |
| Recording Fees | 174.00 |
| Title Search | 786.84 |
| **Total Other Amounts Outstanding and Due** | **4,860.24** |

The Important Notices on the following pages should be read carefully.

If the account continues to be past due, additional collection expenses, late charges and fees may continue to accrue until the account is reinstated, as permitted under state and federal law.

For any questions regarding this reinstatement quote contact 877-744-2506.

Sincerely,
PHH Mortgage

Enclosure

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**Log in to MortgageQuestions.com --- your servicing website connection.**

Mayer001597

EXHIBIT 4
PAGE 2 OF 3



PHH Mortgage Services                                                      Tel  877-744-2506
1 Mortgage Way                                                            Fax  856-917-8300
Mt. Laurel, NJ 08054

**IMPORTANT NOTICES**

- Total other amount due calculation: The total of other amounts outstanding and due includes expenses have incurred in connection with the mortgage obligations. These expenses may include attorney fees and costs, property preservation expenses, inspections and other expenses.

- We will not delay or dismiss any pending foreclosure action while awaiting your reinstatement payment, and additional fees and costs authorized by your contract and applicable law may accrue between the date of this letter and the date of reinstatement.  In addition, these charges do not include any escrow shortage(s) that may have accrued or will accrue hereafter.  At the same time, some of the estimated or amounts projected to become due may not accrue by the time you reinstate the loan, meaning that you would not be charged for them if you reinstate before they accrue.

- Certified funds are required. Payment must be provided via certified funds such as Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check, Money Order, Attorney's Escrow Check, MoneyGram or Western Union. All other forms of payment will be returned, and the reinstatement amount will not be accepted.

- YOU MUST CONTACT THIS OFFICE BEFORE TENDERING ANY FUNDS TO VERIFY THE EXACT AMOUNT DUE.

**CONVENIENT PAYMENT OPTIONS**

| **Wire Transfer** |
| --- |
| M & T Bank<br>1 MT Plaza, Buffalo, NY, 14203<br>ABA: 022000046 / Account No.: 9865548821<br>Credit to: PHH Mortgage Services |

| **Overnight Mail** |
| --- |
| Mail Certified Funds Check to:<br>PHH Mortgage Services<br>Attention: Mail Stop SV-20<br>1 Mortgage Way<br>Mount Laurel, NJ 08054<br>Attn: Cashiering / Payoff Department |

*All checks/money orders should be made payable to PHH Mortgage Services. The mortgage account number, borrower's name and property address should be included on the front of any check or money order.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**Log in to MortgageQuestions.com --- your servicing website connection.**

Mayer001598

# EXHIBIT 4
# PAGE 3 OF 3

# EXHIBIT 7

ELECTRONICALLY RECEIVED
10/7/2024 3:11 PM

Electronically Filed
Superior Court of California
County of Santa Cruz
October 16, 2024
Clerk of the Court by Deputy,
Merrell, Kimberly

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SANTA CRUZ**

| | |
|---|---|
| CORY MAYER,<br><br>        Plaintiff,<br><br>    v.<br><br>HSBC BANK USA, N.A.; OCWEN LOAN SERVICING, LLC; WESTERN PROGRESSIVE, LLC; DOES 1-20; and all persons unknown claiming any interest in the property, inclusive,<br><br>        Defendants. | Case No.: 17CV00139<br><br>Assigned to the Hon. Timothy Schmal<br>Dept: 10<br><br>[Unlimited Jurisdiction]<br><br>**ORDER ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Action Filed:  January 13, 2017<br><br>**Hearing**:<br>Date:  July 29, 2024<br>Time:  8:30 a.m.<br>Dept.:  10 |

Plaintiff Cory Mayer's Motion to Enforce Settlement Agreement (the "Motion") came on regularly for hearing before the Court on July 29, 2024, at 8:30 am. Prior to the hearing on the Motion, the Court issued the Tentative Ruling (the "Tentative") attached hereto as **Exhibit A**. After considering the moving papers, opposition, reply papers, and oral argument, if any, and good cause appearing therefor, the Court adopted the Tentative in its entirety. It is therefore,

**ORDERED** that the Motion is denied, in part, for the reasons set forth in the Tentative, which is hereby incorporated into and made a part of this Order.

///

70275\321906749.v2

1

Case No.: 17CV00139

**[PROPOSED] ORDER ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

EXHIBIT 7
PAGE 1 OF 10

**IT IS FURTHER ORDERED** that the restraining order preventing Defendants PHH Mortgage Corporation and HSBC Bank USA, N.A., as trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2 from foreclosing on the real property located at 8650 Hihn Road, Ben Lomond, CA 95005, is *and was* hereby extended to August 9, 2024, after which time it will expire unless otherwise ordered by the Court.

**IT IS SO ORDERED**.

Dated: __10/9/2024 3:29:24 PM__

_____

HON. TIMOTHY SCHMAL
Superior Court Judge

2                    Case No.: 17CV00139

**[PROPOSED] ORDER ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

70275\321906749.v2

EXHIBIT 7
PAGE 2 OF 10

# EXHIBIT A

EXHIBIT 7
PAGE 3 OF 10

**LAW AND MOTION TENTATIVE RULINGS**
**DATE:    JULY 29, 2024 TIME: 8:30 A.M.**

~~No. 23CV01376~~  17CV00139

**MAYER v. HSBC BANK, N.A.**

**PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 664.6**

Plaintiff's motion is denied, in part.

I.    BACKGROUND

This case involves an ongoing dispute concerning a loan obtained by plaintiff Mayer for a piece of property in Santa Cruz County.

On January 13, 2017, Mayer filed a complaint against the lender defendants alleging wrongful foreclosure, quiet title, cancellation of trustee's deed, unfair business practices, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation and negligent training and supervision.

On April 2, 2019, a notice of conditional settlement was filed and on May 21, 2020 the parties entered in a stipulation for dismissal and order. The case was dismissed with prejudice but the court retained jurisdiction pursuant to Code of Civil Procedure section 664.6 to enforce the terms of the settlement agreement. The parties entered into a confidential settlement agreement on April 17, 2020.[1]

On December 30, 2021, Mayer filed a motion to enforce settlement which was withdrawn.

On January 11, 2024, Mayer filed an ex parte application for a temporary restraining order ("TRO") and request for issuance of an order to show cause regarding a preliminary injunction. Mayer also filed a motion to enforce settlement pursuant to section 664.6. The TRO sought to halt the foreclosure sale of the property in question as the loan went into default again.

On January 16, 2024, a hearing occurred on the TRO and preliminary injunction. The Court granted the application for a TRO on foreclosure and set an order to show cause for the preliminary injunction.

Mayer now brings another motion to enforce settlement.

---

[1] The court notes that though this agreement is marked as "confidential", the parties have raised the terms of the agreement in both the moving papers and the opposition and have not requested the pleadings be filed under seal.

EXHIBIT 7
PAGE 4 OF 10

**LAW AND MOTION TENTATIVE RULINGS**
**DATE:    JULY 29, 2024 TIME: 8:30 A.M.**

II.    DISCUSSION

"Where the statutory requirements are met, the court may, upon motion, enter judgment pursuant to the terms of a settlement agreement." (Weil & Brown, *Civil Procedure Before Trial* (TRG 2023) § 12:950.) Such judgment can be entered "where parties to pending litigation stipulate to a settlement either orally before the court or in writing, signed by the parties or their counsel outside court." (*Id.* at § 12.952.)

Cal Code Civ Proc § 664.6 Judgment pursuant to terms of settlement provides:

(a) If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.

(b) For purposes of this section, a writing is signed by a party if it is signed by any of the following:

(1) The party.

(2) An attorney who represents the party.

(3) If the party is an insurer, an agent who is authorized in writing by the insurer to sign on the insurer's behalf.

A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810.)

"Under § 664.6, the court decides whether or not a factual dispute exists. If there is a dispute as to the facts of settlement, the court acts as a trier of fact [Citations.] The court thus determines issues such as (1) whether the attorney possessed actual [Citations], and (2) terms of the agreement. [Citation.]" (1 California Trial Handbook § 16:41.)

The primary terms of the settlement agreement concern the reinstatement of the loan.

Paragraph 1 addresses Mayer's obligation to reinstate the loan by making a payment of $158,125.89. Paragraph 2 obligated PHH to pay $75,000.00 to Mayer or his counsel. Paragraph 5 obligated PHH, within 30 days of receipt of the reinstatement amount to submit Universal Data Forms to all three major credit reporting agencies, reporting the loan as paid as agreed from the time Ocwen began servicing the loan through the effective date. The agreement contained a

EXHIBIT 7
PAGE 5 OF 10

**LAW AND MOTION TENTATIVE RULINGS**
**DATE:      JULY 29, 2024 TIME: 8:30 A.M.**

release limitation in paragraph 12 which included any future disputes between Mayer and PHH and Defendants, arising out of the parties' continuing relationship as mortgagor and mortgagee.

Mayer seeks a court order on the following seven issues. The court's response to each issue is outlined below.

1.  **Order that PHH clear all unpaid escrow fees from his account as they wrongfully kept him from making his own tax payments and failed to properly apply the $43,537.56 in property tax reimbursement that they received under the settlement agreement. Going forward, PHH is not to open any escrow account.**

The court reviewed the settlement agreement and it does not address an escrow account or how the property taxes and insurance are to be paid or structured. This request is denied.

2.  **Mayer be released from making the June 1, 2020 – December 1, 2020 payments due to PHH as he tendered the funds and PHH, through its attorney, wrongfully did not apply the payments**.

This appears to be a post-settlement agreement dispute and not part of the agreement before the court.

3.  **PHH to report that Cory Mayer has paid his loan "as agreed" from the time Ocwen took over servicing through June 2024 to give Mayer time to refinance his home. PHH is to, within 5 days of receipt of request, sign such a letter indicating the same at the request of Mayer, his attorneys or any lender wishing to verify mortgage payments with proper releases signed.**

Defendants assert they have complied with this term, which is found in paragraph 5 of the settlement agreement. (See Dec. of Verdooren at ¶ 10.) Mayer contends they have not. Defendants are directed to provide proof they submitted "Universal Data Forms" to all three major credit reporting agencies in conformance with this provision of the agreement.

4.  **Mayer to be awarded his reasonable attorney's fees and costs incurred in enforcing this settlement agreement**.

The court declines to award attorney's fees and costs unless defendants are unable to demonstrate they complied with paragraph 5 of the settlement agreement regarding credit reporting.

EXHIBIT 7
PAGE 6 OF 10

**LAW AND MOTION TENTATIVE RULINGS**
**DATE:     JULY 29, 2024 TIME: 8:30 A.M.**

5. **Mayer to pay PHH 38 months of mortgage payments (which represents the remaining mortgage payment due through and including March 1, 2024) at the rate of $3,432.96 equaling $130,452.48.**

The court reviewed the settlement agreement and it does not address the amount of monthly mortgage payments. This request is denied.

6. **PHH permanently modify its servicing module to reflect that Mayer is not subject to an escrow account for real property taxes or homeowner's insurance.**

The court reviewed the settlement agreement and it does not address how the taxes and insurance are to be structured. This request is denied.

7. **Going forward that PHH is to issue mortgage statements to Mayer reflecting $3,432.96 as the monthly mortgage payment due through April 1, 2036 and it must follow the amortization chart as provided by PHH's attorney when payments are made. Once the payments are made through the March 2024 payment, the statement showing the April 1, 2024 statement shall reflect the balance due on the loan before the April 1, 2024 payment is $370,520.58 and the payment due is $3,432.96.**

The court reviewed the settlement agreement and it does not address how payments are to be structured. The court notes the primary terms of the agreement are related to the borrower's obligation to reinstate the loan (par. 1), payment of settlement funds in the amount of $75,000.00 (par. 2), dismissal of the action (par. 3), attorneys' fees (par. 4), credit reporting, (par. 5), confidentiality (par. 6), release of borrower (par. 7), release of unknown claims (par. 8), limited release by defendants and release limitations (pars. 11-13), acknowledgements (par. 14), tax consequences (par. 15), compromise of disputed claims (par. 16), severability (par 17), binding effect (par. 18), governing law (par. 19), further assurances (par. 20), counterparts (par. 21) integration clause (par. 22), time is of the essence clause (par. 23), headings and captions (par. 24), and effective date (par. 25.).

Paragraph 12 states the agreement does not release (1) claims arising out of the failure of either Party to perform in conformity with the terms of this Agreement; (2) **any future disputes between the Borrower and PHH and Defendants, including their successors and assigns, which arise out of or relate to the Parties' continuing relationship as mortgagor and mortgagee;** and (3) PHH and Defendants' (including their successors' and assigns') right to foreclose. (Emphasis added.)

EXHIBIT 7
PAGE 7 OF 10

## LAW AND MOTION TENTATIVE RULINGS
### DATE:    JULY 29, 2024 TIME: 8:30 A.M.

### **Defendants' Evidentiary Objections**

*Declaration of Mayer*

1-5. The court declines to rule on evidentiary objections which were not dispositive to its ruling on the motion before it.

6.   Overruled except as to the statement "wrongly paid them", which is sustained.

7.   Sustained as to the phrase "wrongfully advanced."

8-14. The court declines to rule on evidentiary objections which were not dispositive to its ruling on the motion before it.

15-16. Overruled.

*Declaration of Simmons*

1 – 9. The court declines to rule on evidentiary objections which were not dispositive to its ruling on the motion before it.

**Notice to prevailing parties**: Local Rule 2.10.01 requires you to submit a proposed formal order incorporating, verbatim, the language of any tentative ruling – or attaching and incorporating the tentative by reference - or an order consistent with the announced ruling of the Court, in accordance with California Rule of Court 3.1312. **Such proposed order is required even if the prevailing party submitted a proposed order prior to the hearing** (unless the tentative is simply to "grant"). Failure to comply with Local Rule 2.10.01 may result in the imposition of sanctions following an order to show cause hearing, if a proposed order is not timely filed.

No. 23CV00093

**MILLAR v. MELTZER**

**(UNOPPOSED) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

Defendant Paul Meltzer's unopposed motion for summary judgment/adjudication is granted. Summary judgment is appropriate since plaintiff failed to demonstrate with admissible evidence that he can establish the necessary elements of his causes of action or that he incurred any damages from defendant's alleged misconduct. No triable issues of material fact are presented.

EXHIBIT 7
PAGE 8 OF 10

## PROOF OF SERVICE

*Cory Mayer v. HSBC Bank USA, N.A., et al.*
**Santa Cruz County Superior Court Case No. 17CV00139**

(STATE OF CALIFORNIA, COUNTY OF LOS ANGELES)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within actions; my business address is 350 South Grand Ave., Suite 3600, Los Angeles, CA 90071-3476. My email address is: crico@hinshawlaw.com.

On **October 7, 2024**, I served the document(s) entitled **[PROPOSED] ORDER ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below**:**

**SEE ATTACHED SERVICE LIST**

☑ **(BY MAIL)**: I placed the envelope for collection and mailing at Los Angeles, California. The envelope was mailed with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **(BY FACSIMILE TRANSMISSION)**: I caused a true copy thereof from sending facsimile machine telephone number 213-614-7399 to be sent via facsimile to the above listed names and facsimile numbers and received confirmed transmission reports indicating that this document was successfully transmitted to the parties named above.

☐ **(VIA OVERNIGHT MAIL)**: I am "readily familiar" with the firm's practice of collection and processing correspondence for overnight delivery. Under that practice it would be deposited in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; otherwise at that party's place of residence.

☑ **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the person[s] at the e-mail address[es] set forth herein. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. See Cal.R.Ct.R. 2060.

☐ **(BY HAND DELIVERY)**: I caused to be delivered by hand each sealed envelope to the addressee(s) mentioned in the attached service/mailing list.

☐ **(BY PERSONAL SERVICE)**: I caused such envelope to be delivered to a commercial messenger service with instructions to personally deliver same to the offices of the addressee as shown on the attached mailing list on this date.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on **October 7, 2024**, at Anaheim, California.

_____
Carolina Rico

**HINSHAW & CULBERTSON  LLP**
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

1073939\321255364.v1

EXHIBIT 7
PAGE 9 OF 10

## SERVICE LIST

*Cory Mayer v. HSBC Bank USA, N.A., et al.*
**Santa Cruz County Superior Court Case No. 17CV00139**

Thorton Davidson                                    Attorneys for *Plaintiff* **CORY MAYER**
THORTON DAVIDSON, P.C.
1195 W. Shaw Ave., Suite A
Fresno, CA 93711
Tel.: 559-476-5064
Fax: 559-421-0368
Email:  thornton@thorntondavidsonlaw.com

Pamela D. Simmons                                   Attorneys for *Plaintiff* **CORY MAYER**
William J. Purdy III
LAW OFFICE OF SIMMONS & PURDY
2425 Porter Street, Suite 10
Soquel, CA 95073-2454
Tel.: 831-464-6884
Fax: 831-464-6886
Email:  pamela@pamelaw.com
          bill@pamelaw.com

HINSHAW & CULBERTSON **LLP**
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

1073939\321255364.v1

EXHIBIT 7
PAGE 10 OF 10