Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Nicholas Heath Wooten (Pro Hac Vice)
3125 Carlton Road
Cumming, GA 30041
Tel: (833) 937-6389
nick@nickwooten.com

Attorneys for Plaintiff
Cory Mayer

Eric D. Houser (SBN 130079)
Robert W. Norman, Jr. (SBN 232470)
Timothy A. Schneider (SBN 300816)
Darlene M. Morris (SBN 340727)
HOUSER LLP
9970 Research Drive
Irvine, California 92618
Telephone: (949) 679-1111
Facsimile: (949) 679-1112
E-Mail: tschneider@houser-law.com

Attorneys for Defendants, PHH Mortgage Corporation, now known as Onity Mortgage Corporation and HSBC Bank USA, National Association, as Trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| Cory Mayer, | CASE NO.: 5:25-cv-00182-NW |
| Plaintiff, | Unlimited Jurisdiction |
| v. | |
| DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A.; | **JOINT STATEMENT REGARDING EXPERTS** |
| PHH MORTGAGE CORPORATION; WESTERN PROGRESSIVE, LLC; | Action Filed: August 9, 2024 |
| DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive, | Trial Date: September 28, 2026 |
| Defendants. | |

Pursuant to Judge Noel Wise's Order dated July 28, 2026 [Docket No. 201], Defendant PHH Mortgage Corporation, now known as Onity Mortgage Corporation ("PHH")[1] and Plaintiff Cory Mayer ("Plaintiff") submit this Joint Statement.

## I.    PLAINTIFF'S POSITION

### A.  MR. HIBERT AND MR. KELLEY — MORTGAGE-SERVICING STANDARDS

Plaintiff's expert Jay Hibert and PHH's expert Brian Kelley offer competing opinions on the same subject: whether PHH's handling of Plaintiff's loan — including its escrow accounting and its billing and statement practices — conformed to or departed from prevailing mortgage-servicing standards. Because these opinions address two sides of the same question, the Court has correctly recognized that if the testimony is relevant to one side, it is relevant to the other. (ECF No. 201 at 2.)

This testimony is relevant to Claim 8 (RESPA). The surviving RESPA question is whether PHH engaged in a "pattern or practice of noncompliance" sufficient to support statutory damages under 12 U.S.C. § 2605(f)(1)(B). Mr. Hibert's opinions that PHH's escrow accounting and statement practices departed from accepted servicing standards — and Mr. Kelley's contrary opinions that they conformed — bear directly on whether PHH's conduct constituted an isolated error or a pattern or practice, an issue the Court has held remains disputed. (ECF No. 200 at 5–6.)

This testimony is also relevant to the liability elements of Claim 6 (intentional interference with contract), which require proof that PHH acted to disrupt Plaintiff's performance and without justification. Mr. Hibert's opinion that PHH's servicing conduct fell outside the scope of standard and authorized servicing practices is probative of the intent and want-of-justification elements, while Mr. Kelley's contrary opinion is relevant to PHH's defense on those same elements.

### B.  MR. PATTERSON — FORENSIC ACCOUNTING

Plaintiff's expert Bernard Jay Patterson offers forensic loan-accounting opinions that remain relevant to both surviving claims. His testimony is limited to explaining PHH's handling of Plaintiff's

---

[1] Defendant HSBC Bank USA, National Association, as Trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2 has been dismissed by virtue of the Court's order on Defendant's Motion for Summary Judgment. The only claims that remain are Claim 6 (Intentional Interference with Contract) and Claim 8 (RESPA). Those claims are pleaded against PHH only.

account — how the funds moved, how they were applied, reversed, and reapplied, and whether PHH's successive escrow analyses and account statements were accurate.

This testimony is relevant to the liability elements of Claim 6 (intentional interference with contract). PHH is expected to contend that any misapplication of Plaintiff's funds was innocent error rather than intentional disruption. Mr. Patterson's opinions establish that PHH's accounting failures were not a single, isolated mistake but a continuous, years-long pattern of the same funds being misapplied and never correctly accounted for, uncorrected despite PHH's own records flagging the problem. That persistence is circumstantial evidence from which a jury may infer intent to disrupt and the absence of justification — both elements of the surviving claim — and it directly rebuts the innocent-mistake defense.

The same testimony is relevant to Claim 8 (RESPA), which turns on whether PHH engaged in a "pattern or practice of noncompliance" sufficient to support statutory damages under 12 U.S.C. § 2605(f)(1)(B). Mr. Patterson's analysis of PHH's escrow charges and statements across the relevant period is probative of whether the escrow errors were repeated and systemic rather than isolated — the precise issue the Court found to remain disputed. (ECF No. 200 at 5–6.) To the extent PHH contends its accounting was accurate, Mr. Patterson's opinions are relevant to that same disputed issue.

Mr. Patterson is also the only witness able to render PHH's account history intelligible to the jury in coherent form; presenting the same evidence through PHH's own witnesses would require substantial additional trial time to reconstruct the account activity record by record. PHH has never previously presented a witness at trial who could competently, clearly explain PHH's accounting activities in a mortgage servicing case and has not offered one in this case through deposition.

## II.    DEFENDANT'S POSITION

### A.    All Experts Other than Dr. Johnson Should be Withdrawn

The Court is right to question whether expert testimony "remains relevant" to what is left; PHH believes that none of the experts, other than Dr. Johnson, are now necessary or relevant following the Court's order on Defendants' Motion for Summary Judgment. The probative value of the experts is now substantially outweighed by the undue delay, waste of time, or needless cumulative evidence

the experts would be opining on for the limited issues that remain.

Jay Hibert. Mr. Hibert offers opinions that were all directed at establishing the economic-damages theories advanced by Plaintiff that the Court eliminated on summary judgment.

Jay Patterson. Mr. Patterson's report does one thing: it reconstructs the loan's transaction history to quantify the eliminated economic-damages theories. Summary judgment eliminated every damage theory that reconstruction was built to prove. Mr. Patterson's loan reconstruction is not needed for Plaintiff to argue that PHH reversed and reapplied the reinstatement funds following the 2020 settlement agreement. Those are facts that will be established through PHH's business records.

Claim 6 (Intentional Interference with Contract). The interference claim survives only as to emotional-distress damages and fees. Intentional interference with contract is an intentional economic tort; its elements are the defendant's intentional acts to induce or disrupt the contractual relationship, actual disruption, and resulting damage. Plaintiff's ironic use of two experts to opine on PHH's loan servicing would concede that PHH is the loan servicer and corroborate PHH's position that it is not a "stranger" to the contract and cannot be held liable. *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594 (2009); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994). Further, whether PHH's servicing conformed to "industry standards" does not prove or disprove a non-existent standard of care element for this intentional tort. This claim deals with a factual dispute between Plaintiff and PHH, whether Plaintiff was attempting to comply with his obligations pursuant to the loan documents and whether PHH interfered with Plaintiff's attempts. No expert is needed to tell the jury what Plaintiff and PHH will tell themselves. Neither Mr. Hibert nor Mr. Patterson are needed for the remaining damage because they are not opining on Plaintiff's alleged emotional distress. Whether PHH's actions met industry norms tells the jury nothing about Plaintiff's alleged distress.

Claim 8 (RESPA). The only RESPA relief left for trial is a maximum $2,000 statutory damage for an alleged "pattern or practice of noncompliance" under 12 U.S.C. § 2605(f)(1)(B) and fees. This claim deals with a factual inquiry into PHH's own conduct, established through PHH's business records and the testimony of its person most knowledgeable. No expert is needed to tell the jury what PHH's records show or how it handled Plaintiff's loan; those facts speak for themselves. This is a niche situation involving the interpretation of a "lien" vs. "credit" line item in a settlement agreement

(contractual interpretation), which impacted the amount due in the escrow account. Whether PHH's resulting escrow charges "complied with" or "violated" RESPA and Regulation X is the ultimate legal question the Court will decide by instruction, not a proper subject of opinion. Finally, the amount in controversy for RESPA is now the statutory $2,000 penalty after the Court eliminated all other actual damages. Having experts testify to determine a maximum damage award of $2,000 is not proportional.

### B.    Alternatively, Brian Kelley is Needed to Rebut Plaintiff's Experts

If the Court agrees with Plaintiff's position that Plaintiff's experts are still necessary, then so is Brian Kelley (if it is relevant to one side, it is relevant to the other).

Dated: July 31, 2026

**HOUSER LLP**

By:    */s/ Robert W. Norman, Jr.*
    ROBERT W. NORMAN, JR.
    Attorneys for *Defendants* PHH Mortgage Corporation and HSBC Bank USA, National Association, as Trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2

Dated: July 31, 2026

**NICK WOOTEN LLC**

By:    */s/ Nicholas H. Wooten*
    NICHOLAS H. WOOTEN
    Attorney for *Plaintiff* Cory Mayer