Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Nicholas Heath Wooten (SBN: o77n-1870)
3125 Carlton Road
Cumming, GA. 30041
Tel: (833) 937-6389
Nick@nickwooten.com

Attorneys for Plaintiff
Cory Mayer

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| Cory Mayer,<br>Plaintiff,<br>v.<br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A.;<br>PHH MORTGAGE CORPORATION;<br>WESTERN PROGRESSIVE, LLC;<br>DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive,<br>Defendants. | CASE NO.: 5:25-cv-00182-NW<br>Unlimited Jurisdiction<br><br>**Plaintiffs' Motion for Issue Sanctions Pursuant to FRCP 37 Against Defendants PHH and HSBC Related to Servicing Agreements**<br><br>Date: September 25, 2026<br>Time: 9:00 a.m.<br>Place: San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113<br>Honorable Judge Noël Wise<br>Action Filed: August 9, 2024<br>Trial Date: September 28, 2026 |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:PLEASE TAKE NOTICE that at the time and place listed above Plaintiff Cory Mayer will and hereby does move this Court for an order granting issue sanctions pursuant to FRCP 37 against Defendants PHH Mortgage Corporation ("PHH") and HSBC Bank USA, National Association, as Trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2 ("HSBC") for failure to obey two discovery orders, dockets 81, and 87, compelling production of servicing agreements and related documents. Any opposition must be filed and served not more than 14 days after the motion was filed, and any reply shall be filed not more than 7 days after the opposition was due.

Table of Contents

NOTICE OF MOTION ........................................................................................... 1

STATEMENT OF RELIEF REQUESTED ............................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 2

1. Issues to be Decided ..................................................................................2

LEGAL STANDARD ........................................................................................... 2

STATEMENT OF FACTS.................................................................................... 3

1. SERVICING AGREEMENTS ARE REQUIRED TO PROVE PLAINTIFFS CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT .................................3

2. PLAINTIFF DILIGENTLY SOUGHT THE SERVICING AGREEMENTS IN DISCOVERY .........................................................................................................4

3. DEFENDANTS NEVER COMPLIED with THE ORDERS ...............................6

4. PHH's DEPOSITION CONFIRMED THE DOCUMENTS ARE NOT THE CORRECT SERVICING AGREEMENTS ...........................................................7

5. PHH TESTIFIED ON THE DAY DISCOVERY CLOSED THAT THERE ARE THREE INTERVENING SERVICERS ..............................................................10

6. HSBC'S DEPOSITION CONFIRMED THE DOCUMENTS ARE NOT THE CORRECT SERVICING AGREEMENTS .........................................................11

7. DEFENDANTS COULD NOT ESTABLISH SERVICING COMPENSATION12

ARGUMENT ....................................................................................................... 13

1. ISSUE SANCTIONS REQUESTED ...........................................................15

A. Defendants' Failure to Obey Two Court Orders Was Willful ........................... 16

B. The Requested Sanctions Are "Just" and Specifically Related to the Frustrated Discovery. 16

C. Terminating Sanctions Would Be Available, Confirming That the Lesser Relief Sought Here Is Appropriate........................................................................................ 17

2. THIS MOTION SHOULD BE CONSIDERED TIMELY .................................18

CONCLUSION ........................................................................................................ 20

## Table of Authorities

**Cases**

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) .......... 3,17

*Bauxites de Guinee*,
456 U.S. 694 (1982) .......... 2

*Dollaga v. Specialized Loan Servicing, LLC*,
2021 Cal. Super. LEXIS 61438 .......... 3

*G-K Props. v. Redevelopment Agency of San Jose*,
577 F.2d 645 (9th Cir. 1978) .......... 3, 17

*Golden v. Anderson*,
256 Cal. App. 2d 714–20 (1967) .......... 4

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001) .......... 2,17

*Pincay v. Andrews*,
389 F.3d 853 (9th Cir. 2004) .......... 19

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) .......... 19

*Walters v. Fidelity Mortgage of California, Inc. (2010)*
730 F. Supp. 2d 1185 .......... 3

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) .......... 2

**Statutes**

Cal. Civ. Code § 2343 .......... 4

**Other**

FRCP 1 .......... 19

FRCP 37 .......... 1, 2

Rule 30 .......... 3, 7, 11,14

Rule 37 .......... 2, 20, 17, 16, 3, 14, 15

Rule 37-3 .......... 19

## STATEMENT OF RELIEF REQUESTED

Plaintiff seeks an order that PHH is prohibited from asserting the defense against the intentional interference claim on the grounds that PHH was the agent of HSBC acting within the scope of its authority because Defendants failed to obey the discovery orders Dockets 81 and 87 compelling PHH and HSBC to produce the servicing agreements and powers of attorney that establish the existence and scope of agency authority. Over eleven months and in defiance of two discovery orders, Defendants withheld the only documents capable of establishing whether PHH acted within the scope of its agency when it engaged in the conduct underlying Plaintiff's surviving claim for intentional interference with contract, and that PHH's own corporate representative admitted at deposition—on the day discovery closed—that PHH cannot identify the operative servicing agreement, cannot tie any produced agreement to PHH and Plaintiff's loan, and did not undertake any meaningful effort to locate the compelled documents, and that there are three additional subservicers between PHH and HSBC with servicing agreements that were not produced.

The withheld evidence is dispositive of the agency defense on which PHH's entire opposition to the interference claim rests. Because PHH's violation has deprived Plaintiff of the ability to disprove that defense, a sanction that establishes the agency and compensation facts the withheld documents would have proven is both just and specifically related to the frustrated discovery. Plaintiff seeks an order granting the following issue sanctions:

1. PHH is barred from asserting the defense of agency—or that it was acting as an authorized agent of HSBC—against Plaintiff's claim for intentional interference with contract.
2. PHH is a stranger to the promissory note, deed of trust, and loan-modification contracts between Plaintiff and HSBC for purposes of the intentional-interference claim, and is not immune from liability for intentional interference with those contracts on the ground of agency.
3. PHH may not introduce evidence or argument that its conduct alleged to have interfered with Plaintiff's payment or refinancing of his loan was within the scope of any agency authority.
4. PHH's servicing compensation was structured so that PHH earned materially greater compensation when Plaintiff's loan was in default than when it was current, giving PHH a financial motive to keep the loan in default.
5. HSBC is the beneficiary of Plaintiff's mortgage loan and deed of trust at issue in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the Declaration of Andrew J. Christensen and the exhibits thereto; the Proposed Order lodged herewith; all pleadings, records, and papers on file in this action; and such further argument and evidence as may be presented at or before the hearing. This motion is supported by a motion to file under seal two exhibits which have been designated as confidential by Defendants.

### 1. ISSUES TO BE DECIDED

The issue to be decided is the appropriate issue sanctions to impose on PHH and HSBC that will provide Plaintiff a remedy for the harm caused to Plaintiff's ability to prove his case by Defendants withholding the controlling documents that are dispositive on the scope of PHH's agency authority and servicing compensation.

## LEGAL STANDARD

Rule 37(b)(2)(A) authorizes a broad range of sanctions when a party "fails to obey an order to provide or permit discovery." Among the "just orders" the Court may issue are orders "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," Fed. R. Civ. P. 37(b)(2)(A)(i), and orders "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," Fed. R. Civ. P. 37(b)(2)(A)(ii).

The Supreme Court has identified two limits on such sanctions. First, "any sanction must be 'just.'" Second, the sanction "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982); see also *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983). The Ninth Circuit applies this standard by asking whether "the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001).

A central purpose of Rule 37(b) sanctions is to restore the evidentiary balance that the violating party destroyed. When a party withholds evidence in defiance of a court order, the court

may presume that the withheld evidence is unfavorable to the withholding party. Establishing the frustrated facts against the disobedient party does not manufacture a fact out of nothing; it gives effect to the well-founded presumption that a party who conceals evidence does so because the evidence would hurt its position.

Willfulness, bad faith, or fault supports the imposition of the more serious Rule 37(b) sanctions. Disobedience of a court order is "willful" where the party had notice of the order and the ability to comply but did not. Where willfulness is shown, the Ninth Circuit has repeatedly affirmed even case-dispositive sanctions. See *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645 (9th Cir. 1978); *Anheuser-Busch*, *Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995).

## STATEMENT OF FACTS

### 1. SERVICING AGREEMENTS ARE REQUIRED TO PROVE PLAINTIFFS CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT

Plaintiff's surviving sixth claim alleges that PHH intentionally interfered with the promissory note, deed of trust, and loan-modification contracts between Plaintiff and HSBC by preventing Plaintiff from paying or refinancing his loan—rejecting tendered payments exceeding $250,000, withholding and misstating billing statements, imposing escrow impounds without notice, paying property taxes before they were due in contravention of the deed of trust, and keeping the loan in default—because PHH earns substantially higher compensation servicing loans in default than loans in good standing. See FAC ¶¶ 123, 129–134.

PHH's defense has been, from the motion to dismiss through summary judgment, that it acted only as HSBC's servicing agent and that an agent is not liable for interfering with its principal's contract. See Dkt. 37 at 17–18; Dkt. 160 at 19–20. That defense fails, however, if PHH acted wrongfully, outside the scope of its authority, or for its own financial benefit to the detriment of its principal. Under California law, an agent whose only connection to a contract is as agent to its principal, and who acts outside the scope of its authority, is a stranger to the contract and may be liable for interference. *Walters v. Fidelity Mortgage of California, Inc.* (2010) 730 F. Supp. 2d 1185; *Dollaga v. Specialized Loan Servicing*, Alameda County Case RG20073165 (July 20, 2021) [**Exhibit A**] See also *Dollaga v. Specialized Loan Servicing, LLC*, 2021 Cal. Super. LEXIS 61438,

at *9. And an agent is liable to third persons "when his acts are wrongful in their nature." Cal. Civ. Code § 2343; see *Golden v. Anderson*, 256 Cal. App. 2d 714, 719–20 (1967).

**2. PLAINTIFF DILIGENTLY SOUGHT THE SERVICING AGREEMENTS IN DISCOVERY**

Plaintiff sought the servicing agreements and related documents in the initial discovery conference, in written discovery, in four discovery statements to compel (Dockets 45, 47, 62, 70), and obtained two court orders compelling the documents (Dockets 81, 87), and deposed both PHH and HSBC on the matters, but Defendants have never produced the correct and complete documents.

Plaintiff's counsel first raised the issue of producing servicing agreements with Defense counsel by email on March 3, 2025, before the initial discovery conference, asking for the agreements and attached loan schedules that identify Plaintiff's loan specifically. Plaintiff again requested the servicing agreements, pooling and servicing agreement, and powers of attorney with all exhibits and schedules at the initial discovery conference in March 2025. [Decl. Christensen ¶2] When Defendants would not produce them informally, Plaintiff served written requests in June 2025. Plaintiff served Requests for Production, Set One, on PHH on June 5, 2025, including: RFP 8 (all servicing agreements or contracts governing the agency relationship as to the subject loan, including all attachments, exhibits, and loan schedules); RFP 9 (all documents establishing that the subject loan is subject to the servicing agreements); RFP 10 (all powers of attorney relating to servicing the subject loan from January 2019 to present); and RFP 11 (all documents setting forth PHH's compensation related to the subject loan). Parallel requests were served on HSBC as RFP Nos. 4 (compensation), 6 (PSA), 7 (PSA Schedules), 8 (POA), and 9 (Compensation). [Decl. Christensen ¶3]

Before responses were even due, Plaintiff moved to appoint an ESI liaison under the local guidelines in light of PHH's known practice of opposing discovery, including boilerplate objections without document production, then claiming documents do not exist, then partial or incomplete production in the wrong format, all of which commonly lead to multiple motions to compel that could be avoided with an ESI liaison. Dkt. 35. At the hearing, defense counsel represented that Defendants would produce substantive responses to written discovery, [Decl. Christensen ¶4] and

the magistrate judge denied the motion in reliance on that representation. Dkt. 40. Days later, on July 7, 2025, Defendants produced no documents in response and served objections to every request except those for powers of attorney—objecting, remarkably, that the servicing agreements were irrelevant, even though PHH's compensation is pleaded as its motive and PHH's entire defense rests on the scope of its servicing authority. [**Exhibit B**, **C**, Discovery Responses]

Plaintiff spent more than fourteen hours meeting and conferring by telephone and video over the following months, a substantial portion devoted to the servicing agreements. [Decl. Christensen ¶6] Plaintiff was forced to file successive discovery dispute statements. In the first (Dkt. 45, Aug. 4, 2025), Defendants again represented that, "in the spirit of good faith," they would produce the servicing agreement. The magistrate judge relied on that promise, declined to rule on the merits, ordered supplementation by August 14, 2025, and warned that "Defendants' delay or obfuscation of relevant materials will not be tolerated." Dkt. 46.

Despite their promise to the magistrate judge, Defendants again did not produce the servicing agreements. Plaintiff filed a second joint discovery dispute statement (Dkt. 47, Aug. 27, 2025); the magistrate ruled on a subset of unrelated requests and ordered further meet-and-confer. Dkt. 55. After weeks of Defendants' refusals and failures to produce the documents, and refusal to comply with the magistrate judge's rules and procedures to timely cooperate with filing joint statements, Plaintiff was forced to file a unilateral discovery dispute statement because discovery was scheduled to close in three months. (Dkt. 62, Nov. 17, 2025). The magistrate judge entered an ordered without a hearing terminating the unilateral discovery dispute statement and ordered further meet and confer. Dkt. 66. Plaintiff filed a third joint discovery dispute statement on November 26, 2025. Dkt. 70.

On the same day the third joint statement was filed, November 26, 2025, Defendants produced for the first time a heavily redacted servicing agreement between DB Structured Products, Inc. and GMAC Mortgage Corporation—entities that are not parties to this action—dated August 5, 2005, before Plaintiff's loan even originated, and containing no loan schedule. Nothing in that document mentions HSBC, the trust, PHH, or Plaintiff's loan. The relevant cover page and table of contents of this document is attached as **Exhibit F** and will be filed with a motion to file under seal as it was designated confidential pursuant to a protective order.

On December 12, 2025, the magistrate judge entered the first order Docket 81 compelling production of the servicing agreements and related documents sought in RFPs 4, 6, 7, 9 to HSBC and RFP 8, 9, 11 to PHH by January 7, 2026, ordering that "[a]ny PHH servicing agreement from 2020 through 2024 is to be produced, unredacted and with all referenced attachments," and noting that “Defendant states it will comply” in the joint statement, and the court noted that a Protective Order had been in place since September 25, 2025, so "Defendants' continuing delay is unwarranted." [Docket 81-1]. Defendants did not comply with the order. **Exhibit D**.

On December 16, 2025, following a hearing at which Plaintiff again explained that the produced agreement lacked loan schedules and named neither HSBC nor PHH, the magistrate judge entered a second order again compelling RFPs 6, 7 (to HSBC); RFPs 8, 9 (to PHH) regarding servicing agreements. Dkt. 87. **Exhibit E**. It directed that “By December 31, 2025, Defendants must produce documents in their custody and control sufficient to establish that Plaintiff's loan that is at issue in this action is covered by a servicing agreement between HSBC and PHH.” Defendants never complied with this order.

### 3. DEFENDANTS NEVER COMPLIED WITH THE ORDERS

What Defendants produced on December 31, 2025, confirmed the noncompliance rather than curing it. Defendants produced a PSA purporting to establish HSBC as trustee and Wells Fargo as master servicer, with a partial schedule showing Plaintiff's loan number—but the PSA never names PHH as servicer, and it incorporates by reference a DB Structured Products/GMAC servicing agreement bearing a date different from the one PHH had produced earlier, so the two cannot be reconciled. The relevant pages of this document are attached as **Exhibit G**. PHH also produced a Mortgage Loan Purchase Agreement missing the referenced loan schedule and dated after the PSA that already references it, **Exhibit H** and an Assignment, Assumption, and Recognition Agreement **Exhibit I** likewise missing its schedule of assigned loans and naming GMAC, not PHH, as servicer. None of these documents ties PHH to Plaintiff's loan.

Plaintiff's servicing-standards expert, Jay Hibert, reviewed the roughly 1,300 pages of servicing-related documents produced and concluded that they do not establish, at the loan-specific level, that HSBC owned the subject loan or that PHH was the authorized servicer for HSBC, and

that the absence of loan-level documentation is not consistent with standard servicing practices. See **Exhibit N** (Hibert Report) at 13.

Plaintiff's counsel exchanged many emails with Defense counsel over these detailed deficiencies for nine months and served specific deposition notice topics on the deficiencies. Defense counsel first claimed these were the correct documents, then admitted in deposition on the day discovery closed that they could not confirm the documents were correct, nor explain why they were incomplete.

### 4. PHH'S DEPOSITION CONFIRMED THE DOCUMENTS ARE NOT THE CORRECT SERVICING AGREEMENTS

PHH designated Benjamin Verdooren as its Rule 30(b)(6) witness on Deposition Topics 27-30 regarding servicing agreements and their terms. [**Exhibit J**]. PHH repeatedly stalled being deposed on the agreements, only agreeing to appear to testify about the servicing agreements on the day discovery closed, February 13, 2026. Verdooren's establishes that, as of the close of discovery, PHH's own corporate representative did not know which servicing agreement governs Plaintiff's Loan. Asked whether the DB Structured Products/GMAC agreement PHH had produced and represented to be the controlling contract was in fact the operative agreement, Verdooren testified:

> *A This is something I was still researching. I have not got an answer yet. I've been looking into this on which servicing agreements we were operating off of.*
>
> *Q Okay. Why don't you know?*
>
> *A Well, that's what I'm trying to confirm. At this point it should be the pooling and servicing agreement should be the final agreement which is Exhibit 321 [**Exhibit G**]. I just wanted to get actual confirmation of it.*
>
> *Q When did you start asking for that?*
>
> *A Today's the 13th. In January, near the end of January*. [**Exhibit K** p.249-250].

Verdooren again testified "*I don't think -- I don't know if we're operating off of this servicing agreement anymore.*" [**Exhibit K** p.302].

That admission establishes three things at once. It establishes that the agreement PHH had repeatedly represented to the magistrate to be the operative servicing agreement is not, in fact, confirmed to be so. It establishes that PHH's prior representations to the Court were unfounded. And it establishes willfulness: PHH did not even begin trying to confirm which agreement governs until late January 2026—weeks after the December 31, 2025, deadline the Court had set.

Verdooren further admitted he had made no meaningful effort to find the missing schedules. Asked why no documents showed that Plaintiff's loan was subject to the produced servicing agreement, he testified that he had looked only within PHH's document-storage system, did not find the schedule, and did not ask anyone:

> *Q Okay. So this servicing agreement here, [**Exhibit F**] why does this not -- why have no documents been produced that show Cory Mayer's loan was subject to this servicing agreement? There's no schedules, there's no anything. Do you know?*
>
> *MR. NORMAN: Objection. Relevance. Vague. Argumentative.*
>
> *THE WITNESS: I don't know.*
>
> *Q Okay. Why don't you know?*
>
> *A I looked within our system where we store these documents. I didn't see the schedule there. I didn't reach out and ask anyone about a schedule related to this.*
>
> [**Exhibit K** p. 252-253].

This proves Defendants' failure to obey the orders was intentional because they made no real effort to investigate or find the correct documents. There is no evidence that the full and complete correct documents do not exist. Defendants simply chose to withhold the evidence.

When asked why the date of the servicing agreement between DB Products and GMAC has a date different than the date referred to in the pooling and servicing agreement, Verdooren testified:

> *A Well, I know the dates don't match up.[…]*
>
> *Q Okay. So what's the problem? Is there a mistake or is there a different agreement or what?*
>
> *A We ultimately don't know. [**Exhibit K** p.253-254]*

This testimony proves the pooling and servicing agreement (PSA) cannot be tied to any

servicing agreement produced in the case because the dates are different, and therefore it cannot be established that these relate to Plaintiff's loan, or to PHH.

Regarding the scope of PHH's agency authority and identifying the documents which control the scope of agency, Verdooren was asked whether the servicing agreement, PSA, and powers of attorney are the exclusive source of the controlling terms, to which Verdooren responded:

> *I think that that's it because that's -- I mean, these are the only documents I ever work with or produced in the past for other cases is the power of attorney and pooling and servicing agreement.*[**Exhibit K** p.270].

This testimony establishes that these types of documents are the only controlling documents on the scope of agency authority, and proves that Defendants never produced the only documents controlling the scope of agency authority. Verdooren admitted repeatedly that he cannot confirm that the specific documents produced are the actual controlling servicing agreement, or PSA, or powers of attorney with all necessary schedules, amendments, and cross references to tie all the parties together.

On the topic of whether specific wrongful acts were within the scope of authority, Verdooren could point to no language authorizing the specific acts alleged. For example, when asked where PHH was authorized to stop sending billing statements or to reject tendered payments, he conceded each time "*it's not explicitly stated in it, but it's part of our general servicing authority.*" [**Exhibit K** p.273].

Confronted with the produced servicing agreement's express command that "the servicer shall proceed diligently to collect all payments due under each of the related mortgage loans when the same shall become due and payable"—language directly contrary to his scope-of-authority claim—he could say only that he was "*not too sure if this is the agreement we're still operating off.*" [**Exhibit K** p.274] He acknowledged that "*this pooling and servicing agreement does not mention PHH.*" [**Exhibit K** p279, lines 9-16]

This testimony shows PHH cannot prove the scope of its agency authority as to the specific acts alleged in the First Amended Complaint other than the vague claims of Verdooren that are not based on any specific language in any servicing agreement that can be conclusively tie PHH to

Plaintiff's loan. This testimony shows that Defendants' failure to obey the orders has deprived Plaintiff of the only evidence defeat PHH's defense for intentional interference with contract.

### 5. PHH TESTIFIED ON THE DAY DISCOVERY CLOSED THAT THERE ARE THREE INTERVENING SERVICERS

Compounding the violation, Verdooren revealed for the first time on February 13, 2026, that PHH does not service Plaintiff's loan directly for HSBC at all. He testified that Wells Fargo is the master servicer, which subservices to Computershare, which subservices to NewRez/Shellpoint, which subservices to PHH—a chain of at least three intervening entities never before disclosed. HSBC and PHH had taken the position that PHH services Plaintiff's loan directly for HSBC. Verdooren testified that there should be subservicing contracts between them all, but he had not seen them and they were not produced in discovery: *"there is a subservicing agreement, actually, between -- it's Wells Fargo via Computershare, who subserviced it to Newrez, N-e-w-r-e-z, who then subserviced it to PHH.[…] A I'm still not a hundred percent sure how this -- how it's made up.[…] I just don't know the entire connection between the two, if they 100 percent bought the servicing rights or if it's still somehow owned by Wells Fargo.[…] I have not seen any documents for that"* and further testified *"I'm speaking generally because I've not seen these subservicing agreements[.]"* [**Exhibit K** p.250-251, 260-261]

Verdooren testified that PHH does not report to HSBC, but sends the funds and monthly investor remittance reports to Computershare. [**Exhibit K** p.252]. This suggests PHH would be the agent of Computershare, not NewRez, or HSBC or Wells Fargo, which is contrary to the factual position Defendants have taken in this case and contrary to the documents produced.

This testimony demonstrates that the documents PHH produced could not be complete even if every schedule had been supplied, because at least three additional subservicing contracts stand between HSBC and PHH and none were produced. Plaintiff does not contend he now knows to whom PHH's agency actually runs; that is the point. PHH's withholding has made the agency relationship unprovable by either side, and the presumption arising from that withholding runs against PHH. Whatever the truth, PHH concealed the structure of its own authority until the last

possible day and never produced the instruments that define it.

### 6. HSBC'S DEPOSITION CONFIRMED THE DOCUMENTS ARE NOT THE CORRECT SERVICING AGREEMENTS

HSBC designated Fernando Acebedo as its Rule 30(b)(6) witness on topics 2, 5, 6, 7, 8, 9, 14, that are similar to the topics to PHH to identify the servicing agreements, explain why the ones produced are incomplete and have contradicting dates, and explain the scope of PHH's authority, and the documents controlling servicing compensation. [**Exhibit L**]. His testimony confirms HSBC also cannot identify the operative servicing agreement or PHH's scope of authority.

Regarding the fact that the PSA identifies a DB Structured Products with a different date from the document produced in discovery, Acebedo was asked "*Did you look into this topic to prepare for today?*" to which he responded "*No. That's a question for DB and GMAC. Q. Isn't that Servicing Agreement controlling the servicing rights and what the servicer has to do for the trust? [Objections] THE WITNESS: I would have to consult with counsel if that is the controlling agreement for Cory's loan.*"[**Exhibit M** Acebedo Transcript, p67]

Regarding Topic 7 to identify the documents controlling the scope of PHH's servicing authority: *Q: Can you identify for me all the documents which control the scope of PHH's servicing authority for Cory Mayer's loan? [Objections] THE WITNESS: That's a question for PHH.*[**Exhibit M** p.68] This proves HSBC chose not to prepare or identify the documents controlling PHH's servicing authority in willful violation of the discovery orders.

Regarding Topic 8 to "Identify all acts of PHH as alleged in the First Amended Complaint that are outside the scope of PHH's agency authority" Acebedo testified "*The trustee doesn't oversee the servicer. So if they acted outside of their scope of agency, that's for the master servicer to determine.*" **[Exhibit M p.71].** Acebedo went on to say *"As I previously stated, we don't oversee the servicer. That is the purview of the master servicer."* **[Exhibit M p.72].** This evidence shows that PHH may not be the agent of HSBC, but of one of the three intervening servicers or of Wells Fargo, the master servicer.

Referring to the servicing agreement **Exhibit F** between DB Structured Products and GMAC, Acebedo testified: "*A: We're not a party to that Servicing Agreement [...] That's between*

*DB and GMAC.*"[**Exhibit M** p79, line 25 - page 80, line 14].

## 7. DEFENDANTS COULD NOT ESTABLISH SERVICING COMPENSATION

Defendants likewise could not establish the facts regarding their servicing compensation because the servicing agreement and PSA control the compensation and were not produced. Furthermore, the servicing agreement and the PSA produced here have completely different compensation provisions, neither of which match internal accounting records produced that purport to show compensation paid, and neither of these match PHH's witnesses' claim about how compensation is calculated.

PHH could not confirm the rate and manner of PHH's servicing compensation. PHH's Verdooren testified the rate is 0.00375 but could not explain where it came from or how it was calculated when asked: "*I was told it was in the pooling and servicing agreement, but, again, when I asked them about it, they didn't know, and I still need to reach out to somebody to find that rate.*" [**Exhibit K** p300] He conceded he did not investigate the compensation issue before the deposition because "*I just didn't think it was that important.*" [**Exhibit K** p300].

When asked why his claimed servicing rate of 0.00375 is different than the compensation rates in the servicing agreement **Exhibit F** and the PSA **Exhibit G** Verdooren said "*We have not pointed out the actual servicing rate in any of the documents so I can't say if that is correct or not correct.*" [**Exhibit K** p300-301] Verdooren testified that the compensation rate of 0.00375 is used to calculate compensation "*based on the interest payments that are received*" [**Exhibit K** p.301] but this is directly contrary to the language of the PSA and the purported serving compensation spreadsheet, each of which calculate fees based on the unpaid principal balance. In other words, Verdooren's testimony about the rate and calculation did not match any documents produced.

Mr. Verdooren testified regarding Deposition Topic 34 that the pooling and servicing agreement controls PHH's compensation, but that he did not know where the compensation is set out and had not followed up to find out: "*The pooling and servicing agreement dictates the servicing fee that is paid on these loans for that trust. I've asked where that's located. The people I talked with didn't know. I've not followed up with anyone else to ask about that, but it's dictated by the pooling*

*and servicing agreement."* [**Exhibit K** p289-290]. Asked specifically where in the PSA **Exhibit G** the compensation is defined, he again admitted he did not know: "*Again, the people I was speaking with about it didn't know, and I've not followed up with anyone else about it*" and admitted he had only first asked about it a few days before his deposition that occurred on the day discovery closed, which was eleven months after Plaintiff first asked Defendants for the documents. [**Exhibit K** p290]. Verdooren claimed that PHH had received a total of $2,800 in servicing fees since 2019 [**Exhibit K** p301] but could not explain why this contradicts the compensation in the Servicing Agreement which sets a flat $6 per month servicing fee and a $65 default fee, and 40% of recovery proceeds when applicable, not a percentage-rate fee at all. Mr. Verdooren could not reconcile the two: "*As I've stated before, I am — I've inquired and am still waiting for a response on which servicing agreement that PHH is operating off of."* [Id p302].

HSBC's witness, Fernando Acebedo, testified regarding Deposition Topic 14 regarding servicing compensation that HSBC as trustee does not review or track PHH's servicing compensation at all: "*The trustee doesn't get involved in the servicing compensation. That's between the master servicer and the servicer.*" [**Exhibit M** p83]. When asked why HSBC does not know the servicing compensation paid to PHH, Acebedo testified "*The master servicer engages the servicer.*" [**Exhibit M** p82].

Because the compensation terms reside only in the withheld and unreconciled documents, PHH's concealment has deprived Plaintiff of the ability to prove the financial-motive element of his interference claim through the controlling instruments—precisely the harm the requested sanction is designed to remedy.

## ARGUMENT

For eleven months, Plaintiff sought a single, foundational category of documents: the servicing agreements that would establish who owns his loan, who is authorized to service it, and how the servicer is paid. These documents are not peripheral. They are the entire evidentiary basis for PHH's only defense to Plaintiff's surviving claim for intentional interference with contract—the defense that PHH acted merely as HSBC's authorized agent and therefore cannot be liable for interfering with a contract to which its principal is a party. PHH cannot have it both ways. It cannot

assert an agency defense that depends entirely on the servicing agreements while simultaneously refusing to produce them in violation of two court orders.

That is precisely what PHH has done. Plaintiff pursued these documents at the initial discovery conference in March 2025, in written requests in June 2025, through four discovery dispute statements, (Dockets 45, 47, 62, 70), and in two depositions. This Court twice ordered production—once on December 12, 2025 (Dkt. 81), and again on December 16, 2025 (Dkt. 87). PHH obeyed neither order. Instead, it produced a redacted agreement between two entities that are not parties to this case, predating Plaintiff's loan and lacking the schedules that would tie any loan to any servicer, and a pooling and servicing agreement that names a different master servicer and never mentions PHH at all. Then, on the day discovery closed, PHH's Rule 30(b)(6) witness admitted under oath that he did not know which servicing agreement governs Plaintiff's loan, had only begun looking weeks after the court-ordered deadline, and had made no real effort to find the missing schedules.

The prejudice is not speculative. The scope of PHH's agency and its compensation structure can be proven only by these documents. Testimony about the scope of an agent's authority that is untethered to the controlling instruments is inadmissible, and PHH's own witness could offer nothing more than generalities he admitted were "not explicitly stated" anywhere. By withholding the documents, PHH has ensured that neither side can establish the terms of the very agency relationship on which PHH's defense depends. The law does not permit a party to profit from that strategy. Where a party willfully withholds evidence in defiance of court orders, the presumption is that the evidence is adverse to it, and Rule 37(b)(2)(A) authorizes the Court to establish the frustrated facts against the disobedient party and to bar it from asserting the defense the withheld evidence would have supported.

Plaintiff does not seek terminating sanctions, although the Ninth Circuit has affirmed dismissal for conduct no more egregious than this. Plaintiff seeks only the narrow, tailored relief that restores the evidentiary balance PHH destroyed: an order establishing that PHH is a stranger to Plaintiff's contracts for purposes of the interference claim, that PHH has forfeited its agency defense, and that PHH's compensation structure gave it a financial motive to keep the loan in default.

Each requested finding substitutes directly for evidence that resides only in the documents PHH refused to produce.

### 1. <u>ISSUE SANCTIONS REQUESTED</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court impose the following sanctions under Rule 37(b)(2)(A), and instruct the jury accordingly as to Plaintiff's claim for intentional interference with contract:

1. PHH is barred from asserting the defense of agency—or that it was acting as an authorized agent of HSBC—against Plaintiff's claim for intentional interference with contract.

2. PHH is a stranger to the promissory note, deed of trust, and loan-modification contracts between Plaintiff and HSBC for purposes of the intentional-interference claim, and is not immune from liability for intentional interference with those contracts on the ground of agency.

3. PHH may not introduce evidence or argument that its conduct alleged to have interfered with Plaintiff's payment or refinancing of his loan was within the scope of any agency authority.

4. PHH's servicing compensation was structured so that PHH earned materially greater compensation when Plaintiff's loan was in default than when it was current, giving PHH a financial motive to keep the loan in default.

5. HSBC is the beneficiary of Plaintiff's mortgage loan and deed of trust at issue in this case.

Each of these findings is limited to the subject matter of the frustrated discovery and do not resolve any element of liability that the withheld documents would not have controlled. The first three findings flow directly from PHH's forfeiture of the agency defense it built upon documents it refused to produce. The fourth establishes the financial-motive principle at the level the withheld documents would have proven, in the manner alleged in the First Amended Complaint that "PHH

did not want Plaintiff to refinance after the settlement because then PHH would lose substantial servicing fees because its fees are much lower when a loan is in current active status, and their servicing fees are much higher when loans are in default status" [FAC ¶129] and that "Defendants' actions were a strategy to prevent the loan from becoming current so PHH could keep the loan in default to earn higher fees for servicing loans that are in default." [FAC ¶81].

A. Defendants' Failure to Obey Two Court Orders Was Willful

Willfulness under Rule 37(b) is established where a party had notice of an order and the ability to comply but failed to do so. Both are undisputed here. This Court twice ordered production in unmistakable terms—Docket 81 directing production of any 2020–2024 PHH servicing agreement "unredacted and with all referenced attachments," and Docket 87 directing production of documents "sufficient to establish" that Plaintiff's loan is covered by a servicing agreement between HSBC and PHH. PHH had notice of both. And PHH's own witness confirmed the ability to comply had never been meaningfully tested: he did not begin looking for the operative agreement until late January 2026, weeks after the deadline; he searched only PHH's own system for the missing schedules and asked no one; and he admitted PHH had never even identified the servicing rate "in any of the documents." A party that makes no genuine effort to locate court-ordered documents until after the deadline has run has willfully disobeyed the order.

Willfulness is reinforced by the pattern preceding the orders. PHH repeatedly represented to the magistrate judge that it would produce the servicing agreements—at the ESI-liaison hearing, in the first joint statement, and in the statements underlying Dockets 81 and 87—and repeatedly broke those promises. Those assurances induced the magistrate to withhold merits rulings and extend deadlines. A litigant who secures indulgences by promising compliance and then does not comply has acted willfully, if not in bad faith.

B. The Requested Sanctions Are "Just" and Specifically Related to the Frustrated Discovery.

The two limits of Rule 37 and *Insurance Corporation of Ireland* are satisfied. The requested sanctions are "just" because they are proportioned to the harm: PHH's concealment has made the agency and compensation issues unprovable through the only competent evidence, and the requested findings do no more than fill that void with the presumption the law already supplies against a party

that withholds evidence. The sanctions are "specifically related" to the frustrated discovery because each requested finding concerns the precise subject of the orders PHH violated—the existence and scope of PHH's agency and its compensation. The established issues bear far more than a "reasonable relationship" to the frustrated discovery, *Navellier*, 262 F.3d at 947; they are that discovery's subject matter.

The relief Plaintiff seeks is also carefully bounded. Plaintiff does not ask the Court to establish PHH's ultimate liability, to resolve intent, or to direct a verdict. Those elements turn on trial evidence unrelated to the withheld documents and remain for the jury. Plaintiff asks only that the Court establish the agency and compensation facts the withheld documents would have proven, and bar PHH from asserting a defense built on documents it refused to produce. That is the paradigmatic tailored Rule 37(b) sanction.

C. <u>Terminating Sanctions Would Be Available, Confirming That the Lesser Relief Sought Here Is Appropriate.</u>

The Ninth Circuit has affirmed dismissal for similar conduct that was no more serious that Defendants actions here. In *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645 (9th Cir. 1978), the Ninth Circuit affirmed dismissal where the plaintiff disobeyed three orders to produce financial records, even though it later admitted the records existed and offered to produce them, because belated compliance does not cure the harm. 577 F.2d at 647. The district court warned that a lesser sanction would "introduce into litigation a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that the withholding may not be discovered and, if so, that it would only result in a fine." *Id at* 647. The Ninth Circuit "encourage[d]" terminating sanctions for willful, bad-faith disregard of discovery orders because "Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents" *Id* at 647. See also *Anheuser-Busch*, 69 F.3d at 348 (affirming dismissal for concealment of documents).

That the more drastic remedy would be available matters here for a specific reason. In evaluating a Rule 37(b) sanction, the Ninth Circuit weighs the availability of less drastic sanctions. Plaintiff has already selected the least drastic sanction that can cure the harm: rather than seeking

dismissal or terminating relief, Plaintiff seeks only issue findings on the three narrow subjects—agency and compensation and HSBC ownership—that the withheld documents control. A sanction that a fortiori falls short of the dismissal courts affirm for comparable conduct cannot be said to be excessive.

## 2. THIS MOTION SHOULD BE CONSIDERED TIMELY

Defendants refused to consent to a hearing date on this Motion asserting it is untimely for what Defendants argue is unreasonable delay on the grounds that Plaintiff knew of the failure to obey the orders at the close of discovery in February but did not file this motion until August.

The delay in filing this motion is not unreasonable because the unavoidable need for this specific relief did not crystallize until events that occurred months after discovery closed. At the close of discovery, Plaintiff had eight claims pending. Under several of them— the Rosenthal Act, and RESPA Plaintiff could have recovered emotional distress damages under without disproving PHH's agency defense. Furthermore, under breach of contract, breach of the covenant of good faith and fair dealing, the Rosenthal Act, and slander of title Plaintiff could have recovered attorney's fees and costs under contract, statute, and as damages without disproving PHH's agency defense. The agency issue, while always present, was not then outcome-determinative of Plaintiff's ability to obtain those categories of relief.

That landscape changed unexpectedly and through no act of Plaintiff's. After discovery closed, PHH unilaterally forgave the loan—without an agreement and without a settlement, and in the middle of litigation. That act reshaped the case, and on July 28, 2026, and as a direct result of the loan discharge the Court granted summary judgment for Defendants on six claims and narrowed the two remaining claims to statutory damages and fees under RESPA and emotional distress and attorney fee and cost damages under intentional interference. Dkt. 200. The intentional-interference claim (Claim 6) is now the sole surviving vehicle through which Plaintiff can recover emotional-distress damages and attorney's fees and costs as damages, and it is the one claim on which PHH's agency defense is dispositive. The confluence of PHH's post-discovery loan forgiveness and the resulting summary-judgment ruling is what made this Motion necessary now. Plaintiff could not have anticipated either event at the time discovery closed.

Defendants argue the motion should be denied as untimely because it was not filed within seven days after the close of fact discovery on February 13, 2026, invoking the commentary to Civil Local Rule 37-3. This Court has discretion in the interpretation and implementation of the local rules and should find that the circumstances justify hearing the motion at this time for the reasons explained. A court's authority to enforce and vindicate its own orders is not extinguished by a local rule about timing and the Court retains authority to address that disobedience whenever it is presented, including on the eve of trial when the consequences of the violation have crystallized. Furthermore, FRCP 1 provides that rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Allowing the Motion to be heard is just and will allow the matter to be speedily tried on the merits.

To the extent Defendants argue that a standard of excusable neglect applies to determine whether to hear this Motion after a local rule deadline, the Ninth Circuit applies a four part balancing test for determining whether there has been excusable neglect regarding filing deadlines: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004). This test comes from the Supreme Court which explained "we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, all four factors support hearing the motion after the local rule timeline. PHH suffers no cognizable prejudice from the Court reaching the merits. The only "prejudice" PHH can claim is being held to the consequences of its own disobedience—and a party may not claim legally cognizable prejudice from being prevented from profiting by its own misconduct. A party that willfully violates court orders cannot shield itself behind timing arguments, particularly where its own post-discovery conduct altered the posture of the case. Declining to reach the merits would reward PHH's gamesmanship and penalize Plaintiff for circumstances entirely outside his control.

The second factor demonstrates that the six-month delay will have no adverse impact on the proceedings because it only relates to establishing issues for trial, and will streamline trial. The third factor shows that the reason for the delay is justified and the circumstances creating the unavoidable need for this motion were outside Plaintiff's control. The fourth factor is established because Plaintiff's conduct is in good faith in bringing the motion as soon as possible after the summary judgment was entered in July 2026.

Furthermore, the Court possesses inherent authority to sanction litigation misconduct that is independent of, and not cabined by, the local rules. Beyond Rule 37(b), a district court has inherent power to impose sanctions for bad faith conduct that abuses the judicial process. Defendants' repeated false assurances to the magistrate judge that it would produce the documents—assurances the magistrate relied upon in declining to rule on the merits and in extending deadlines for nearly five months—followed by its failure to comply, is precisely the kind of conduct that inherent authority exists to address. A local rule about timing for filing does not limit that power. This Court can hear the motion regardless of the local rule, or grant leave to hear it, or find that circumstances justify hearing the matter outside that window.

## CONCLUSION

PHH cannot rest its entire defense to intentional interference with contract on the servicing agreements while refusing, in defiance of two court orders, to produce them. Its corporate representative's admissions confirm that the violation was willful, that no meaningful effort at compliance was made until after the deadline, and that the withheld documents are the exclusive source of the agency and compensation evidence PHH's defense requires. The presumption that this concealed evidence is adverse to PHH is well founded, and Rule 37(b)(2)(A) authorizes the Court to give that presumption effect. Plaintiff respectfully requests that the Court grant the Motion and enter the Proposed Order lodged herewith.

DATED: August 14, 2026

/s/ Andrew J. Christensen

Andrew J. Christensen
Attorney for Plaintiff Cory Mayer

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Pamela D. Simmons #160523
Law Office of Simmons & Purdy
2425 Porter Street, Suite 10
Soquel, CA 95073
Tel: (831) 464-6884
Fax: (831) 464-6885
E-mail: pamela@pamelaw.com

Attorneys for Plaintiff
Cory Mayer

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| Cory Mayer,<br>Plaintiff,<br>v.<br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A.;<br>PHH MORTGAGE CORPORATION;<br>WESTERN PROGRESSIVE, LLC;<br>DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive,<br>Defendants. | CASE NO.: 5:25-cv-00182-NW<br>Unlimited Jurisdiction<br><br>**Declaration of Andrew J. Christensen in Support of Plaintiffs' Motion for Issue Sanctions Pursuant to FRCP 37 Against Defendants PHH and HSBC Related to Servicing Agreements**<br><br>Date: September 25, 2026<br>Time: 9:00 a.m.<br>Place: San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113<br>Honorable Judge Noël Wise<br>Action Filed: August 9, 2024<br>Trial Date: September 28, 2026 |

I, Andrew J. Christensen, am the attorney for Plaintiff Cory Mayer. The statements made herein are based upon my personal knowledge except to those matters which are herein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

1. Exhibit A is a true and correct copy of the order and ruling in Dollaga v. Specialized Loan Servicing, Alameda County Superior Court Case No. RG20073165, entered July 20, 2021,

that I obtained from the records of the Alameda County Superior Court in that action where I was counsel of record.

2. On March 3, 2025, before the initial discovery conference, I sent an email to defense counsel asking for the servicing agreements and the attached loan schedules that identify Plaintiff's loan specifically. I again requested the servicing agreements, the pooling and servicing agreement, and the powers of attorney with all exhibits and schedules at the initial discovery conference in March 2025. Defendants did not produce those documents informally.

3. On June 5, 2025, I served Requests for Production, Set One, on PHH, including RFP 8 (all servicing agreements or contracts governing the agency relationship as to the subject loan, including all attachments, exhibits, and loan schedules), RFP 9 (all documents establishing that the subject loan is subject to the servicing agreements), RFP 10 (all powers of attorney relating to servicing the subject loan from January 2019 to present), and RFP 11 (all documents setting forth PHH's compensation related to the subject loan). I served parallel requests on HSBC as RFP Nos. 4, 6, 7, 8, and 9.

4. At the hearing on Plaintiff's motion to appoint an ESI liaison, defense counsel represented that Defendants would produce substantive responses to written discovery.

5. Exhibit B is a true and correct copy of PHH’s responses and objections and Exhibit C is a true and correct copy of HSBC’s responses served July 7, 2025 in response to Plaintiff's discovery requests for the servicing agreements, that I received from defense counsel in this matter.

6. I spent more than fourteen hours meeting and conferring with defense counsel by telephone and video over the months that followed, a substantial portion of which was devoted to the servicing agreements.

7. On November 26, 2025, Defendants produced for the first time a redacted servicing agreement between DB Structured Products, Inc. and GMAC Mortgage Corporation, dated August 5, 2005, containing no loan schedule.

8. Exhibit F is a true and correct copy of the cover page and table of contents of that servicing agreement between DB Structured Products, Inc. and GMAC Mortgage Corporation, that I received from Defendants' production of documents in discovery in this matter.

9. Exhibit D is a true and correct copy of the Court's order entered December 12, 2025, Docket 81, in this action, that I obtained from the Court's docket in this action.

10. Exhibit E is a true and correct copy of the Court's order entered December 16, 2025, Docket 87, in this action, that I obtained from the Court's docket in this action.

11. On December 31, 2025, Defendants produced a pooling and servicing agreement, a Mortgage Loan Purchase Agreement, and an Assignment, Assumption, and Recognition Agreement.

12. Exhibit G is a true and correct copy of the relevant pages of the pooling and servicing agreement, that I received from Defendants' production of documents in discovery in this matter.

13. Exhibit H is a true and correct copy of the Mortgage Loan Purchase Agreement, that I received from Defendants' production of documents in discovery in this matter.

14. Exhibit I is a true and correct copy of the Assignment, Assumption, and Recognition Agreement, that I received from Defendants' production of documents in discovery in this matter.

15. Exhibit N is a true and correct copy of the expert report of Jay Hibert, Plaintiff's servicing-standards expert, that I received from Mr. Hibert.

16. I exchanged many emails with defense counsel over the deficiencies in the documents produced over a period of nine months, and I served deposition notice topics directed to those deficiencies.

17. Exhibit J is a true and correct copy of the deposition topics served on PHH in this matter.

18. Exhibit K is a true and correct copy of the relevant pages of the deposition transcript of Benjamin Verdooren, PHH's Rule 30(b)(6) designee, that I received from the court reporter.

19. Exhibit L is a true and correct copy of HSBC's Rule 30(b)(6) deposition topic designations, that I received from counsel for HSBC in this matter.

20. Exhibit M is a true and correct copy of the relevant pages of the deposition transcript of Fernando Acebedo, HSBC's Rule 30(b)(6) designee, that I received from the court reporter.

I swear under the penalty of perjury that this is true and correct, and that this declaration was executed on the following date in Oakland California.

DATED: August 14, 2026

/s/ Andrew J. Christensen

Andrew J. Christensen
Attorney for Plaintiff Cory Mayer

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Pamela D. Simmons #160523
Law Office of Simmons & Purdy
2425 Porter Street, Suite 10
Soquel, CA 95073
Tel: (831) 464-6884
Fax: (831) 464-6885
E-mail: pamela@pamelaw.com

Attorneys for Plaintiff
Cory Mayer

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| Cory Mayer,<br>Plaintiff,<br>v.<br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A.;<br>PHH MORTGAGE CORPORATION;<br>WESTERN PROGRESSIVE, LLC;<br>DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive,<br>Defendants. | CASE NO.: 5:25-cv-00182-NW<br>Unlimited Jurisdiction<br><br>**[Proposed] Order Granting Issue Sanctions Against HSBC and PHH Regarding Servicing Agreements**<br><br>Date: September 25, 2026<br>Time: 9:00 a.m.<br>Place: San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113<br>Honorable Judge Noël Wise<br>Action Filed: August 9, 2024<br>Trial Date: September 28, 2026 |

The matter of Plaintiffs' Motion for Issue Sanctions Pursuant to FRCP 37 Against Defendants PHH and HSBC Related to Servicing Agreements that was filed on August 14, 2026, came before the court for hearing on September 25, 2026. The Court has considered the briefing and evidence submitted and the arguments of the parties at the hearing. The Court finds good cause to grant the Motion. The Court finds that Defendants PHH Mortgage Corporation ("PHH") and HSBC Bank USA, National Association, as Trustee for Deutsche ALT-A Securities Mortgage Loan Trust, Series 2006-AR2 ("HSBC") failed to obey discovery orders dockets 81 and 87 to produce servicing agreements and related documents. The Court finds that the failure to obey was willful

and without justification for the reasons stated in the motion and shown by the evidence submitted in support of the Motion and on the docket.

The Court hereby orders as follows:

1. PHH is barred from asserting the defense of agency—or that it was acting as an authorized agent of HSBC—against Plaintiff's claim for intentional interference with contract.

2. PHH is a stranger to the promissory note, deed of trust, and loan-modification contracts between Plaintiff and HSBC for purposes of the intentional-interference claim, and is not immune from liability for intentional interference with those contracts on the ground of agency.

3. PHH may not introduce evidence or argument that its conduct alleged to have interfered with Plaintiff's payment or refinancing of his loan was within the scope of any agency authority.

4. PHH's servicing compensation was structured so that PHH earned materially greater compensation when Plaintiff's loan was in default than when it was current, giving PHH a financial motive to keep the loan in default.

5. HSBC is the beneficiary of Plaintiff's mortgage loan and deed of trust at issue in this case.

IT IS SO ORDERED.

DATED:

Honorable Noel Wise
United States Distirct Court Judge