Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Nicholas Heath Wooten (SBN: o77n-1870)
3125 Carlton Road
Cumming, GA. 30041
Tel: (833) 937-6389
Nick@nickwooten.com

Attorneys for Plaintiff
Cory Mayer

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| Cory Mayer,<br>Plaintiff,<br>v.<br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A.;<br>PHH MORTGAGE CORPORATION; WESTERN PROGRESSIVE, LLC; DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive,<br>Defendants. | CASE NO.: 5:25-cv-00182-NW<br>Unlimited Jurisdiction<br><br>**Plaintiffs' Motion for Issue Sanctions Under FRCP 37 Against Defendant PHH Mortgage Corporation for Failing to Obey Order Compelling Depositions of Priya Naik and Amlein Dsouza**<br><br>Date: September 25, 2026<br>Time: 9:00 a.m.<br>Place: San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113<br>Honorable Judge Noël Wise<br>Action Filed: August 9, 2024<br>Trial Date: September 28, 2026 |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:PLEASE TAKE NOTICE that at the time and place listed above Plaintiff Cory Mayer will and hereby does move this Court for an order granting issue sanctions against Defendants PHH Mortgage Corporation ("PHH") for violation of discovery orders Dockets 93 and 111 compelling the depositions of Priya Naik and Amlein Dsouza. Any opposition must be filed and served not more than 14 days after the motion was filed, and any reply shall be filed not more than 7 days after the opposition was due.

# Contents

NOTICE OF MOTION ........................................ 1

STATEMENT OF RELIEF REQUESTED ........................................ 4

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 4

1. ISSUES TO BE DECIDED ........................................ 5

LEGAL STANDARD ........................................ 5

STATEMENT OF FACTS ........................................ 6

A. Factual Background ........................................ 6

B. The Discovery Relates to the Claims in the Case ........................................ 7

C. PHH Identified the Witness in Interrogatory Responses ........................................ 8

D. Plaintiff Served Deposition Notices ........................................ 9

E. The Court Twice Ordered the Depositions and PHH Disobeyed Both Orders... 10

F. PHH's Corporate Representative Could Not Supply the Testimony PHH Promised 11

LEGAL STANDARD ........................................ 12

SANCTIONS REQUESTED ........................................ 13

ARGUMENT ........................................ 14

A. The Sanctions are Just and Directly Related to Plaintiff's Claims ........................................ 14

B. PHH Willfully Disobeyed the Orders and Foreclosed Every Alternative Source of This Evidence ........................................ 15

C. The Sanctions Address Information Known to The Witnesses ........................................ 16

D. No Lesser Sanction is Appropriate ........................................ 18

2. THIS MOTION SHOULD BE CONSIDERED TIMELY ........................................ 19

CONCLUSION ........................................................................................................ 21

## Table of Authorities

**Cases**

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ..... 3

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ..... 15

*Bauxites de Guinee*,
456 U.S. 694, 707 (1982) ..... 2

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) ..... 11

*G-K Props. v. Redevelopment Agency of San Jose*,
577 F.2d 645 (9th Cir. 1978) ..... 15

*Hyde & Drath v. Baker*,
24 F.3d 1162 (9th Cir. 1994) ..... 12,15

*Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*,
456 U.S. 694 (1982) ..... 9,11

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001) ..... 10,11

*Navellier v. Sletten*,
262 F.3d 923, 947 (9th Cir. 2001) ..... 2

*Pincay v. Andrews*,
389 F.3d 853, 855 (9th Cir. 2004) ..... 17

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,

507 U.S. 380, 395 (1993) .......... 18

*see also Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585, 591 (9th Cir. 1983) .......... 2

*See G-K Props. v. Redevelopment Agency of San Jose*,
577 F.2d 645 (9th Cir. 1978) .......... 3

*Stone Brewing Co., LLC v. Millercoors LLC, No. 18cv331-BEN-LL*,
2019 U.S. Dist. LEXIS 190277 (S.D. Cal. Oct. 31, 2019) .......... 15,16

*Stone Brewing*,
2019 U.S. Dist. LEXIS 190277 .......... 12

*United States v. Sumitomo Marine & Fire Ins. Co.*,
617 F.2d 1365 (9th Cir. 1980) .......... 13,16

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) .......... 9

**Other**

33, FAC .......... 4

Fed. R. Civ. P. 37(b)(2)(A)(i) .......... 2

Fed. R. Civ. P. 37(b)(2)(A)(ii) .......... 2

FRCP 1 .......... 17

FRCP 37 .......... 1, 10, 9, 2

Rule 26 .......... 9

Rule 30 .......... 2, 3, 6, 8, 9, 13,15

Rule 37 .......... 1, 15, 11, 13,16

Rule 37-3 .......... 17

Rule 37(b) .......... 2, 3,18

ule 37(b)(2)(A) .......... 2

## STATEMENT OF RELIEF REQUESTED

PHH identified Priya Naik and Amlein Dsouza, under oath in its interrogatory responses, as the persons who carried out, and had the highest-level knowledge of, the repeated reversals and reapplications of Plaintiff's $168,468.78 reinstatement payment. When Plaintiff noticed their depositions, PHH refused to produce them, reversing its earlier sworn characterization and recasting them as low-level employees located abroad. After the Magistrate Judge rejected that maneuver as "bad faith" and "discovery gamesmanship" and ordered the depositions (Dkt. 93), and after this Court affirmed that Order (Dkt. 111), PHH still refused to produce either witness.

The central disputed issue on Plaintiff's surviving claim for intentional interference with contract is whether PHH's admitted, repeated failures to apply Plaintiff's payments and the required credit were innocent errors or mistakes as PHH contends, or intentional wrongful acts intended or known to interfere with Plaintiff paying his loan, as Plaintiff contends. Naik and Dsouza are the only percipient witnesses identified by PHH to why those actions were taken and are known to be heavily involved in those actions. By disobeying the Orders, PHH deprived Plaintiff of the sole direct evidence on that issue while preserving its own ability to characterize the conduct as innocent mistakes at trial.

Plaintiff therefore requests, as an issue sanction under Rule 37(b)(2)(A)(i), an order establishing that PHH's reversals and reapplications of the reinstatement payment and its failure to apply the $33,120.95 credit were intentional acts, not mistakes and not the product of any lien/credit misunderstanding, undertaken to disrupt Plaintiff's performance of his loan contracts. The requested relief is set out in full below.

## MEMORANDUM OF POINTS AND AUTHORITIES

This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the Declaration of Andrew J. Christensen and the exhibits attached thereto; the papers, records, and pleadings on file in this action; and such further argument and evidence as may be presented at or before the hearing.

## 1. ISSUES TO BE DECIDED

The issue to be decided here is the appropriate issue sanctions to impose on PHH for willfully refusing to comply with orders compelling the depositions of two key percipient witnesses Priya Naik and Amlein Dsouza regarding PHH's admitted failures to properly apply Plaintiff's payments to his loan for six years where PHH itself identified those two witnesses as the persons with direct and highest-level knowledge of the reversals and reapplications at the heart of Plaintiff's intentional-interference claim, and where PHH's disobedience deprived Plaintiff of the only percipient evidence on whether the admitted accounting failures were intentional or, as PHH will argue to the jury, innocent mistakes.

## LEGAL STANDARD

Rule 37(b)(2)(A) authorizes a broad range of sanctions when a party "fails to obey an order to provide or permit discovery." Among the "just orders" the Court may issue are orders "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," Fed. R. Civ. P. 37(b)(2)(A)(i), and orders "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," Fed. R. Civ. P. 37(b)(2)(A)(ii).

The Supreme Court has identified two limits on such sanctions. First, "any sanction must be 'just.'" Second, the sanction "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982); see also *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983). The Ninth Circuit applies this standard by asking whether "the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001).

A central purpose of Rule 37(b) sanctions is to restore the evidentiary balance that the violating party destroyed. When a party withholds evidence in defiance of a court order, the court may presume that the withheld evidence is unfavorable to the withholding party. Establishing the frustrated facts against the disobedient party does not manufacture a fact out of nothing; it gives

effect to the well-founded presumption that a party who conceals evidence does so because the evidence would hurt its position.

Willfulness, bad faith, or fault supports the imposition of the more serious Rule 37(b) sanctions. Disobedience of a court order is "willful" where the party had notice of the order and the ability to comply but did not. Where willfulness is shown, the Ninth Circuit has repeatedly affirmed even case-dispositive sanctions. See *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645 (9th Cir. 1978); *Anheuser-Busch*, *Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995).

## STATEMENT OF FACTS

A. Factual Background

Plaintiff and Defendants settled a prior lawsuit in 2020 over an illegal foreclosure because PHH wrongfully rejected Plaintiff's mortgage payments and foreclosed in 2016 for payments they prevented Plaintiff from making. Plaintiff saved the rejected payments in his attorney's trust account. PHH and HSBC rescinded the foreclosure sale and the Settlement Agreement in 2020 required PHH to pay $75,000 to Plaintiff for his attorneys' fees and requried PHH to accept all Plaintiff's payments they had rejected, which amounted to $158,125.89, and required PHH to reduce the loan balance by a credit of $33,120.95, and thereby reinstate the Loan as of February 2020. PHH stalled three months in signing the Settlement Agreement so Plaintiff's timely Reinstatement Payment included the $158,125.89 and an additional $10,342.89 for the next three months installments, for a total reinstatement payment of $168,468.78.

PHH applied the money to the loan incorrectly and failed to apply the $33,120.95 credit, then reversed and reapplied the funds four additional times over approximately a year and a half. Each reapplication was erroneous because it was not applied to the amount of principal, interest, escrow, and fees specified in the Settlement Agreement and the loan was never reinstated as required. PHH never gave the $33,120.95 credit. Instead, PHH gave a scattered series of credits from 2022 through 2024, but they did not add up to the $33,120.95, and even if they had, it was four years late. PHH's lawyer rejected Plaintiff's post-settlement monthly payments stating it was because of these admitted errors in accounting and expressly agreed with Plaintiff's counsel that

Plaintiff would again pay his installments into his attorney's trust account while PHH sorted out its internal accounting errors after which PHH would inform Plaintiff of the correct reinstatement amount and Plaintiff's counsel would send the funds immediately. PHH never properly applied the funds, never gave the full credit, never sent the reinstatement or payoff quotes, never told Mayer the correct amount to pay, rejected three tendered payments from Mayer totaling over $250,000, but then started foreclosure in 2023 anyway, which led to this current lawsuit.

The evidence of these facts are undisputed and the accounting errors are admitted by PHH. The main issue in the case is whether the admitted wrongful conduct was an innocent error, or based on some purported misunderstanding, as PHH argues, or intentional knowingly wrongful conduct designed, intended, or known to disrupt Plaintiff's performance of his loan contracts.

PHH's admitted failure to apply the payments correctly during the reversals and five reapplications and the failure to apply the $33,120.95 credit is the reason PHH's counsel gave for rejecting Plaintiff's tendered monthly payments, and the reason Plaintiff held the funds in his attorney's trust account waiting for PHH to fix these errors and tell him when they were done and when they were ready to accept his payments. This conduct caused Plaintiff damages.

B. <u>The Discovery Relates to the Claims in the Case</u>

Plaintiff's First Amended Complaint alleges against PHH the claim of intentional interference with the note and deed of trust contracts between Plaintiff and HSBC for, among other things, "PHH's failure to apply the $158,125.89 Reinstatement Payment properly to the loan at any time from 2020 to present, and the failure to apply the credit of $33,120.95 are intentional acts to ensure that Mayer's Loan contracts with HSBC stay in default status." [Docket 33, FAC ¶130].

The FAC identifies the emails from PHH counsel that he rejected the payments because of PHH's accounting errors [FAC ¶38] and the email agreement between counsel that Plaintiff would pay into the trust account while PHH sorted out the accounting issues and therefore PHH would not consider Plaintiff late in payments. [FAC ¶40].

Plaintiff asked PHH to identify key witness in the initial discovery conference. PHH did not identify a single witness by name in its initial disclosures other than Plaintiff and his counsel. [Christensen Decl. ¶6]

C. PHH Identified the Witness in Interrogatory Responses

On June 5, 2025, Plaintiff served Interrogatory 3 on PHH to "IDENTIFY the person(s) who ordered, directed, caused, and/or carried out all reversals and reapplications of funds to the SUBJECT LOAN from January 2020 to present" and Interrogatory 4 to "IDENTIFY the person(s) with the highest level of authority that knew about the reversals and reapplication of payments to the SUBJECT LOAN from January 2020 to present." **[Christensen Decl. ¶7]**. These discovery requests were for the purpose of establishing Plaintiff's claims from individuals with personal knowledge, identifying managing agents and whether the actions were intentional and malicious or a mistake.

PHH opposed disclosure of the witnesses' identities and their depositions. PHH's opposition to these interrogatories and deposing these witnesses required five discovery disputes: Dockets 45, 47, 84, 90, 104, and five court orders, dockets 46, 55, 87, 93 and 111 over a six-month period.

Plaintiff requested an order appointing an ESI discovery liaison pursuant local ESI Guideline 2.05 to avoid the usual extensive discovery disputes necessary to compel PHH to comply with discovery such as identifying percipient witnesses. [Dkt 35]. At the hearing on July 2, 2025, a few days before PHH's responses the first set of discovery requests were due, the magistrate asked PHH's counsel "And will there be substantive responses? Is it all a set of objections? […] I want to understand where this is headed" to which PHH's counsel responded "There will be objections included, but they're mostly substantive responses." [**Exhibit B** Transcript 7/2/2025 p.8]. The magistrate denied Plaintiff's request for an ESI liaison in reliance on Defendant's representation.

Five days later on July 7, 2025, despite its representations to the magistrate, PHH served boilerplate objections without identifying any witnesses to ROG 3 and 4. PHH served boilerplate objections and evasive and incomplete responses to nearly all discovery requests and produced no documents. **[Christensen Decl. ¶8]**. Plaintiff filed the first joint discovery dispute statement to compel ROG 3 and ROG 4, among 79 other requests, on August 4, 2025, nearly a month after responses were first served. (Dkt. 45). Two days later the magistrate ordered PHH to supplement its responses by August 14, 2025. (Dkt. 46). On August 14, 2025, PHH named Priya Naik, a Senior

Specialist in Cashiering in response to the ROG 3 request to identify the persons "who ordered, directed, caused, or carried out all reversals and reapplications of funds" and also stated that Amlein Dsouza an Assistant Manager in Cashiering "reversed and re-applied funds." PHH also named Amlein Dsouza in its amended response to the ROG 4 request to name the persons with the "highest level of authority that knew about the reversals and reapplications of funds." **Exhibit A**. PHH's supplemental responses to ROG 3 and 4 included no objection and no qualification limiting his knowledge to less than the highest level or to fewer than all of the reversals.

Plaintiff again sought to compel further response in a joint discovery statement docket 47 on the grounds that Naik and Dsouza were likely low-level because such accounting actions were almost certainly directed by VP level or higher because the errors are so extensive and extreme over so many years that it could not have been innocent errors. [Dkt 47-1, page 26]. PHH opposed by arguing Plaintiff's assertion that Naik and Dsouza were "low level" was "sheer speculation" and expressly asserted PHH had answered ROG 4 about the highest level of authority and "provided the name of the individual and that person's title, which is Assistant Manager." [Dkt 47, page 7-8]. The magistrate accepted PHH's representation that Naik and Dsouza were the proper witnesses and the highest-level authority and denied Plaintiff's request to compel a further response to ROG 4 on that ground. [Dkt. 55-1 page 6]. When addressing the low-level/ high-level issue the magistrate stated at the hearing that "That's what a deposition's for. You follow up, and you can -- you can prove them wrong. You can explore the issue, but this is the answer that they've given." [**Exhibit B** Transcript of hearing 9/11/2025 pages 24-25].

D. <u>Plaintiff Served Deposition Notices</u>

Plaintiff served deposition notices for Ms. Naik and Mr. Dsouza on November 24, 2025. The day before the noticed deposition dates PHH refused to produce the witnesses. [Christensen Decl. ¶9] PHH's counsel urged Plaintiff to withdraw the notices permanently, writing that PHH had "scheduled the Rule 30(b)(6) deposition for December 16, 2025, and the deposition will cover the application of the reinstatement payment, including the reversal and reapplication of the payment," such that "there is no need for the deposition of Priya Naik and Amlein D'Souza, the two individuals involved with the reversal and reapplication of the reinstatement payment." **[Christensen Decl.**

**¶10]**.

PHH refused to produce the witnesses, and PHH refused to participate in the joint discovery statement procedure in violation of the magistrate's orders and admonitions to PHH at the prior discovery hearing, so Plaintiff was forced to file a unilateral discovery dispute statement to compel the depositions on December 15, 2025, docket 84. The next day the magistrate entered an order terminating Plaintiff's unilateral statement ordering the Parties to cooperate in a joint statement. [Dkt 87]. PHH only participated in the joint statement after this order compelling PHH to cooperate.

In the ensuing joint discovery statement (Dkt. 90), PHH reversed the sworn position it had taken to defeat further interrogatory responses. Having previously insisted Dsouza held the "highest level of authority," PHH now argued that Naik and Dsouza were "low-level employees lacking general powers to exercise judgment and discretion," that they were not PHH employees at all, that they were located in India, and that Plaintiff should be required to proceed under the Hague Convention. (Dkt. 90 at 8–9.)

E. <u>The Court Twice Ordered the Depositions and PHH Disobeyed Both Orders</u>

On January 2, 2026, the magistrate entered an order compelling the depositions of Naik and Dsouza by January 16, 2026. [Exhibit D **Order, Dkt. 93**]. The magistrate found that PHH's actions demonstrate "bad faith" and "discovery gamesmanship" because PHH did not meet and confer until two days before the deposition and only then argued for the first time that they are non- employees located in India, and Hague Convention compliance should be required, and because PHH represented at earlier hearings that these witnesses were the highest-level, most informed people on the reversals, and then, once their depositions were sought, recharacterizing them as low-level employees with no relevant authority (Dkt. 93 pages 1-2).

PHH moved this Court for relief from the magistrate's order compelling the depositions of Naik and Dsouza, (Dkt. 104). This Court denied PHH's request on January 27, 2026, thereby upholding the order compelling the depositions, stating "All deadlines and dates set in Judge van Keulen's Orders remain in effect." (Exhibit E**, Dkt. 111**). This order was entered nine months after the witnesses should have been named in initial disclosures, and six months after they should have been named in response to interrogatories, two months after they should have appeared for

deposition, and just two weeks before the close of discovery.

Plaintiff emailed Defense counsel Timothy Schneider a few days later on January 31, 2026, asking him to advise when Dsouza and Naik would be available for deposition, and Mr. Schneider responded "We are reviewing this request with our client and will get back to you." PHH never followed up and never produced either witness for deposition. [Christensen Decl. ¶12] Discovery closed two weeks later on February 13, 2026.

PHH never disclosed either witness in its initial disclosures. (Christensen Decl. ¶6.) PHH's own loan-servicing records and privilege logs confirm both witnesses' substantial involvement in the reversals and reapplications: the privilege logs identify approximately 256 entries pertaining to the reversal, the application of the reinstatement payment, the accounting of the loan, or similar subject matter, of which approximately 193 involve Dsouza and approximately 159 involve Naik. (Christensen Decl. ¶13.) One of PHH's four privilege logs is Docket 127-2. This evidence demonstrates Naik and Dsouza would have significant personal knowledge of these key facts, and hundreds of emails and hundreds of servicing note log entries to refresh their recollections.

F. <u>PHH's Corporate Representative Could Not Supply the Testimony PHH Promised</u>

Despite having refused to present Naik and Dsouza at the first deposition date on the promise that their corporate representative Benjamin Verdooren would cover this ground, PHH did not prepare him to do so. PHH produced Benjamin Verdooren as its Rule 30(b)(6) representative on December 19, 2025, on including deposition topics 5, 6, 7, 8, to identify who requested reapplication of the reinstatement funds, identifying whether anyone in the research department was involved, and identifying the persons involved in applying the reinstatement funds and reversals, including their job titles in the hierarchy of the organization, and to identify "all managers, officers, supervisors, and anyone above the level of the person who applied the reinstatement funds." [Christensen Decl. ¶11]

Verdooren testified that he had spoken to no one about why the payments were reversed and reapplied—"*I didn't ask him. … I didn't have the need to ask him*"—even though he acknowledged Dsouza "was one of the people" who applied and reapplied the payments. (**Exhibit C** Verdooren Depo Transcript 12/19/25 at 21.) There are nearly 300 emails in the privilege logs that have been

designated by PHH as being related to the application of funds to the loan, so the information certainly exists, but PHH failed to prepare its witness to read the emails or testify about the facts or ask witnesses.

Verdooren nonetheless characterized the errors as innocent—"*it's just a miscommunication of somebody putting in a wrong number somewhere[,] [s]imple mistake*" (**Exhibit C** at 112–113)—while conceding he did not know why they occurred: "*I really don't know why they happened, why the mistakes happened*" (**Exhibit C** at 112), and that five reapplications were something he had "*rarely seen*" (**Exhibit C** at 111). Verdooren had no factual basis for the "mistake" characterization because he had not spoken to the people who made the entries or read their communications.

Plaintiff spent dozens of hours over eight months trying to obtain the evidence. PHH deprived Plaintiff of the ability to question the two people PHH itself had identified in sworn discovery responses as having the highest-level knowledge of the reversals and reapplications at issue and that carried out the actions.

## LEGAL STANDARD

Issue and evidentiary sanctions for failure to obey a discovery order are authorized by FRCP 37(b)(2)(A) which provides in relevant part: "(A)For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (i)directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii)prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" USCS Fed Rules Civ Proc R 37

The legal standard for issue and evidentiary sanctions under FRCP 37(b)(2)(A)(i) is that "any sanction must be "just"; second, the sanction must be specifically related to the particular "claim" which was at issue in the order to provide discovery." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 707 (1982). See also *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585,

591 (9th Cir. 1983).

The sanction must bear a reasonable relationship to the subject of the frustrated discovery: "Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001)

## SANCTIONS REQUESTED

Plaintiff requests as an issue sanction an order that the following facts be taken as established for purposes of this action in accordance with Plaintiff's claims pursuant to FRCP 37(b)(2)(A)(i):

1. Priya Naik and Amlein Dsouza directed and ratified the application and reapplication of Plaintiff's payment of $168,468.78 to the Loan;
2. PHH intentionally directed that the $33,120.95 not be credited to the Loan pursuant to the Settlement Agreement;
3. That PHH's reversals and reapplications of the $168,468.78 reinstatement payment, and its failure to apply the $33,120.95 credit required by the Settlement Agreement, were intentional acts;
4. That PHH's reversals and reapplications of the $168,468.78 reinstatement payment, and its failure to apply the $33,120.95 credit required by the Settlement Agreement were not mistakes, and were not the product of any misunderstanding of whether the $33,120.95 was a "lien" or a "credit";
5. That PHH's reversals and reapplications of the $168,468.78 reinstatement payment, and its failure to apply the $33,120.95 credit required by the Settlement Agreement undertaken with the intent to disrupt Plaintiff's performance of his promissory note, deed of trust, and loan modification contracts, including by keeping the loan in default and preventing Plaintiff from reinstating, curing, or refinancing; and
6. That PHH's reversals and reapplications of the $168,468.78 reinstatement payment, and its failure to apply the $33,120.95 credit required by the Settlement Agreement were undertaken knowing that disruption of Plaintiff's performance of those

contracts was certain or substantially certain to result, including making his performance more difficult and burdensome.

7. That these acts were done knowing they were certain or substantially certain to cause severe emotional distress.

## ARGUMENT

### A. The Sanctions are Just and Directly Related to Plaintiff's Claims

A Rule 37(b) sanction must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 707 (1982). The requested sanctions meet that requirement precisely because they are confined to the core issues the frustrated discovery was designed to reach and that remains live in the case: whether PHH's admittedly erroneous reversals and reapplications and failure to apply the credit were intentionally done to disrupt his performance or done with knowledge that disruption would occur.

The elements of intentional interference with contract include "defendant's intentional acts designed to induce a breach or disruption of the contractual relationship." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). Following summary judgment, Claim 6 for intentional interference is the only surviving claim under which Plaintiff may recover emotional-distress damages and—together with his surviving RESPA claim—one of the two claims under which he may recover attorney's fees. (Dkt. 200 at 5–6.) Whether PHH's conduct was intentional, rather than an innocent mistake, is the pivotal disputed fact on the interference claim. Interrogatories 3 and 4 sought exactly the witnesses who could answer that question—the persons who carried out the reversals and the person with the highest-level knowledge of them. The requested findings—that the reversals, reapplications, and failure to apply the credit were intentional and not mistakes—therefore bear the closest possible relationship to the frustrated discovery. *Navellier*, 262 F.3d at 947.

The sanctions are necessary and just because PHH's main defense is that its actions in applying and reapplying the payment and failing to give the credit were mistakes or misunderstandings and not intentional misconduct. However, this defense is based entirely on

arguments—all while specifically withholding evidence and intentionally failing to investigate. For example, Verdooren admitted that five reapplications of the funds was rare—"*I've just rarely seen it*" [p.111] but also repeatedly claimed he either did not know why or claimed it was a mistake: "*Well, I don't know if that was the reasoning behind it, but that's how that got applied which was done incorrectly*" [p.63]; "*I don't know whoever did the reversal just did -- I didn't ask them who did it. I just know that it was done incorrectly*" [p. 82]; "*I couldn't tell you why it happened on this one*"[p111]; "*I really don't know why they happened, why the mistakes happened*" [p112]; "*it looks like just a miscommunication of how the funds should be applied*" [p112]; "*So I wouldn't call it -- it's not a direction from anyone to say, hey, screw this up. And it's not at least any incompetence, I think it's just a miscommunication of somebody putting in a wrong number somewhere. Simple mistake*." [**Exhibit C** Verdooren Transcript, pages 112-113].

Verdooren had no actual factual basis for claiming the errors were innocent errors or simple mistakes because he did not investigate or speak to those involved, nor examine the extensive evidence known to exist that would answer the question about the intent and knowledge. This information about who did the acts and why are known to exist in hundreds of emails and known to Naik and Dsouza, but Verdooren did not ask them or present them for deposition.

The requested relief is deliberately confined to the intent question and does not reach beyond the frustrated discovery. Plaintiff does not ask the Court to establish liability, to resolve any element other than the specific intent and knowledge issues. The sanction "directly replace[s] the evidence" that Naik and Dsouza would have supplied—their firsthand account of why the entries were made and what they knew about them and the reasons for them—and does no more. That tailoring is what makes the sanction just.

B. <u>PHH Willfully Disobeyed the Orders and Foreclosed Every Alternative Source of This Evidence</u>

Although willfulness is not required, *Stone Brewing*, 2019 U.S. Dist. LEXIS 190277, at *12, the record here establishes it. "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994). Nothing placed the production of Naik and Dsouza outside PHH's control;

PHH simply refused. The Magistrate Judge has already characterized PHH's conduct toward these witnesses as "bad faith" and "discovery gamesmanship." (Dkt. 93 at 1–2.)

PHH's disobedience was not an isolated lapse but part of a strategy to foreclose every avenue by which Plaintiff might learn why the reversals occurred. PHH persuaded the Magistrate Judge to deny further interrogatory responses by representing that Dsouza was the highest-level authority and that a deposition was the proper vehicle to "follow up." (**Exhibit B** at 24–25.) PHH failed to appear for the depositions claiming that its Rule 30(b)(6) witness would "cover … the reversal and reapplication of the payment." (Christensen Decl. ¶ 10.) PHH then produced a corporate representative who admitted he had not asked anyone why the entries were made and had not investigated the question at all. (**Exhibit C** at 21, 59–60.) PHH's privilege logs appear to contain approximately 230 entries for emails of Naik and Dsouza being withheld under the claim of attorney client privilege and work product that directly relate to the application of funds and credits even though none of them include an attorney, no declaration was submitted in support, and no evidence from Naik or Dsouza or any other witness to support the designation. [Dkt.127-1].

Having closed each door in turn, PHH cannot be heard to say the evidence is simply unavailable. It withheld evidence squarely within its possession—including, by its own privilege logs, hundreds of communications involving these two employees about the reversals. (Christensen Decl. ¶ 13.) PHH's defeating and preventing all discovery on this specific issue is intended to defeat Plaintiff's claims. "Severe sanctions [are] necessary to further the … objective of Rule 37(b): generally deterring flagrant disobedience and callous disregard of court discovery orders." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980).

C. The Sanctions Address Information Known to The Witnesses

The sanctions are just and narrowly tailored: each establishes only a fact squarely within Naik's and Dsouza's personal knowledge, drawn from their roles in Cashiering and their direct involvement in the reversals and reapplications of Plaintiff's payment. Verdooren testified "*Amlein D'Souza was the one who took over to get this done correctly*."[p.84] It appears from an initial review that there may be approximately 256 emails disclosed in the privilege logs that pertain to

"reversal" or "application of reinstatement payment" or "accounting of loan" or similar language, which is a vast amount of information that is certain to contain extensive evidence of the intent of PHH in taking the actions and what they knew about the consequences of the actions. It also appears from a brief text searching the privilege logs that may be about 193 emails that included Dsouza, and 159 emails that included Naik relating to Plaintiff's Loan, with many of these exchanged between them. [Docket 127-2 and Christensen Decl. ¶13] This demonstrates Naik and Dsouza would know the intent and knowledge of the consequences of their actions and of the many people involved with them. Yet PHH refused to disclose facts from all but two of those emails. Verdooren testified he had only two emails with Dsouza to prepare for his first deposition session, and that Dsouza sent Verdooren one email chain and one spreadsheet. [**Exhibit C page 20, lines 7-8**]. Verdooren testified:

> "*Q: Did he [Dsouza] tell you anything about how or why the payments were reversed or reapplied?*
> *A: We did not talk about that.*
> *Q: Why not?*
> *A: I didn't ask him.*
> *Q: Why did you not ask him?*
> *A: I didn't have the need to ask him.*
> *Q: Isn't he the one that applied and reapplied the payments?*
> *A: He was one of the people, yes.*
> *Q: Did you speak with anyone else about why they applied or reapplied the payments, the $158,000?*
> *A: About the payment application, I didn't talk to anyone else about that."*
> *Q. Okay. So, to prepare for today, you didn't speak to anyone else at PHH or any other employee about why the payments were reversed and reapplied except for this exchange with Amlein D'Souza; is that right?*
> *A. Correct. About the reversal and reapplication of payments, I did not discuss that with anyone else. At least not that I can remember.*" [**Exhibit C** p.21, 22]

The issue sanction here is specifically and narrowly tailored to only to the actions of applying, reversing, and reapplying the $168,468.78 and the failure to apply the credit of $33,120.95. It is therefore narrowly tailored to the knowledge that these specific individuals would have in the cashiering department.

This evidence shows that PHH intentionally prevented Plaintiff from obtaining this information in any other manner. It also proves that the purpose of withholding this evidence is to prevent Plaintiff from obtaining evidence to prove intentional wrongful conduct or known or

intended to disrupt Plaintiff's performance of his loan, so that PHH can testify at trial that all the errors were innocent mistakes while depriving Plaintiff of the ability to prove otherwise.

D. No Lesser Sanction is Appropriate

No lesser sanction here is appropriate because Rule 37(c)(1)'s automatic exclusion of testimony from Naik and Dsouza does not remedy the harm; it compounds it. Excluding the witnesses PHH withheld simply leaves PHH free to tell the jury, through Verdooren, that the accounting failures were innocent mistakes, while Plaintiff is barred from the only percipient evidence that would show otherwise. The prejudice is the loss of Plaintiff's proof on the dispositive intent and knowledge question. A monetary sanction likewise cannot restore that proof. Only an order establishing intent and precluding the "innocent mistake" and good faith defense neutralizes the advantage PHH secured by disobeying the Orders.

Plaintiff does not seek terminating sanctions, an adverse judgment, or any finding of liability—remedies the Ninth Circuit has approved for comparable discovery misconduct. See *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645 (9th Cir. 1978); *Anheuser-Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337 (9th Cir. 1995). Plaintiff seeks only to establish a few narrow facts the witnesses are certain to have known.

The legal standard for issue sanctions does not require proving bad faith. "An imposition of sanctions under Rule 37(b)(2) does not require willfulness, fault, or bad faith." *Stone Brewing Co., LLC v. Millercoors LLC*, No. 18cv331-BEN-LL, 2019 U.S. Dist. LEXIS 190277, at *12 (S.D. Cal. Oct. 31, 2019). Therefore, the legal standard is limited to the two elements of whether the sanction is just and specifically related to the purpose for which the discovery was sought.

Here, however, the facts and evidence demonstrate intentional bad faith conduct because it is not just these two depositions, but PHH also went to great lengths to prevent Plaintiff from obtaining the information in any other way, including through Rule 30(b)(6) deposition testimony. The standard for finding willful bad faith is merely that "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994). There is no evidence that the failure to

produce Naik and Dsouza for deposition was outside the control of PHH, and therefore the failure to comply is in bad faith under the controlling law.

While finding bad faith is not necessary for granting the sanctions requested here it may be considered: "A finding of good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust and the severity of the sanctions." *Stone Brewing Co., LLC v. Millercoors LLC*, No. 18cv331-BEN-LL, 2019 U.S. Dist. LEXIS 190277, at *12 (S.D. Cal. Oct. 31, 2019). PHH's conduct demonstrates total disregard for the authority of the Court and discovery obligations and undermine Plaintiff's right to a fair trial.

These issue sanctions are appropriate given the severity of bad faith disobedience of discovery orders. "Severe sanctions were also necessary to further the third objective of Rule 37(b): generally deterring flagrant disobedience and callous disregard of court discovery orders." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980)

## 2. THIS MOTION SHOULD BE CONSIDERED TIMELY

Defendants refused to consent to a hearing date on this Motion asserting it is untimely for what Defendants argue is unreasonable delay on the grounds that Plaintiff knew of the failure to obey the orders at the close of discovery in February but did not file this motion until August. [Christensen Decl. ¶14]

The delay in filing this motion is not unreasonable because the unavoidable need for this specific relief did not crystallize until events that occurred months after discovery closed. At the close of discovery, Plaintiff had eight claims pending. Under five of them—breach of contract, breach of the covenant of good faith and fair dealing, the Rosenthal Act, and slander of title Plaintiff could have recovered attorney's fees and costs under contract, statute, and as damages without proving the accounting actions were intentional misconduct or intended or known to interfere with the contract. The intent and knowledge issue, while always present, was not then outcome-determinative of Plaintiff's ability to obtain those categories of relief.

That landscape changed unexpectedly and through no act of Plaintiff's. After discovery closed, PHH unilaterally forgave the loan—without an agreement and without a settlement, and in

the middle of litigation. That act reshaped the case, and on July 28, 2026, and as a direct result of the loan discharge the Court granted summary judgment for Defendants on six claims and narrowed the two remaining claims to statutory damages and fees under RESPA and emotional distress and attorney fee and cost damages under intentional interference. Dkt. 200. The intentional-interference claim (Claim 6) is now the sole surviving vehicle through which Plaintiff can recover emotional-distress damages and attorney's fees and costs as damages, and is a claim on which the intent dispute is dispositive relating to PHH's defense of mistake. The confluence of PHH's post-discovery loan forgiveness and the resulting summary-judgment ruling is what made this Motion necessary now. Plaintiff could not have anticipated either event at the time discovery closed.

Defendants argue the motion should be denied as untimely because it was not filed within seven days after the close of fact discovery on February 13, 2026, invoking the commentary to Civil Local Rule 37-3. This Court has discretion in the interpretation and implementation of the local rules and should find that the circumstances justify hearing the motion at this time for the reasons explained. A court's authority to enforce and vindicate its own orders is not extinguished by a local rule about timing and the Court retains authority to address that disobedience whenever it is presented, including on the eve of trial when the consequences of the violation have crystallized. Furthermore, FRCP 1 provides that rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Allowing the Motion to be heard is just and will allow the matter to be speedily tried on the merits.

To the extent Defendants argue that a standard of excusable neglect applies to determine whether to hear this Motion after a local rule deadline, the Ninth Circuit applies a four part balancing test for determining whether there has been excusable neglect regarding filing deadlines: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004). This test comes from the Supreme Court which explained "we conclude that the determination is at bottom an equitable one, taking account of all

relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, all four factors support hearing the motion after the local rule timeline. PHH suffers no cognizable prejudice from the Court reaching the merits. The only "prejudice" PHH can claim is being held to the consequences of its own disobedience—and a party may not claim legally cognizable prejudice from being prevented from profiting by its own misconduct. A party that willfully violates court orders cannot shield itself behind timing arguments, particularly where its own post-discovery conduct altered the posture of the case. Declining to reach the merits would reward PHH's gamesmanship and penalize Plaintiff for circumstances entirely outside his control. The second factor demonstrates that the six-month delay will have no adverse impact on the proceedings because it only relates to establishing issues for trial, and will streamline trial. The third factor shows that the reason for the delay is justified and the circumstances creating the unavoidable need for this motion were outside Plaintiff's control. The fourth factor is established because Plaintiff's conduct is in good faith in bringing the motion as soon as possible after the summary judgment was entered in July 2026.

Furthermore, the Court possesses inherent authority to sanction litigation misconduct that is independent of, and not cabined by, the local rules. Beyond Rule 37(b), a district court has inherent power to impose sanctions for bad faith conduct that abuses the judicial process. The magistrate judge found Defendant's conduct in opposing the depositions to be bad faith and gamesmanship, and even after that PHH still defiantly refused to comply with the order. This is precisely the kind of conduct that inherent authority exists to address. A local rule about timing for filing does not limit that power. This Court can hear the motion regardless of the local rule, or grant leave to hear it, or find that circumstances justify hearing the matter outside that window.

## CONCLUSION

PHH identified Naik and Dsouza as the witnesses with direct and highest-level knowledge of the reversals, then defeated their depositions on the promise of a corporate representative it never prepared, and then disobeyed two Orders compelling their production. The result is that PHH holds the only evidence of why the admitted accounting failures occurred and has ensured Plaintiff can

never obtain it. The just and directly related remedy is to establish the intent PHH concealed and to preclude the innocent-mistake defense PHH engineered. Plaintiff respectfully requests that the Court grant the Motion.

DATED: August 14, 2026

/s/ Andrew J. Christensen

Andrew J. Christensen
Attorney for Plaintiff Cory Mayer

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Nicholas Heath Wooten (SBN: o77n-1870)
3125 Carlton Road
Cumming, GA. 30041
Tel: (833) 937-6389
Nick@nickwooten.com

Attorneys for Plaintiff
Cory Mayer

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| Cory Mayer,<br>Plaintiff,<br>v.<br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A.;<br>PHH MORTGAGE CORPORATION; WESTERN PROGRESSIVE, LLC; DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive,<br>Defendants. | CASE NO.: 5:25-cv-00182-NW<br>Unlimited Jurisdiction<br><br>**Declaration of Andrew J. Christensen in Support of Plaintiffs' Motion for Issue Sanctions Under FRCP 37 Against Defendant PHH Mortgage Corporation For Failing to Obey Order Compelling Depositions of Priya Naik and Amlein Dsouza**<br><br>Date: September 25, 2026<br>Time: 9:00 a.m.<br>Place: San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113<br>Honorable Judge Noël Wise<br>Action Filed: August 9, 2024<br>Trial Date: September 28, 2026 |

I, Andrew J. Christensen, am the attorney for Plaintiff Cory Mayer. The statements made herein are based upon my personal knowledge except to those matters which are herein alleged on information and belief, and as to those matters, I believe them to be true. If called as a witness in this matter, I could and would testify competently to each and all of the statements made herein.

1. **Exhibit A** is a true and correct copy of PHH Mortgage Corporation's supplemental responses to Plaintiff's Interrogatories 3 and 4, served on August 14, 2025, that I received from PHH's counsel in response to Plaintiff's discovery requests in this matter.

2. **Exhibit B** is a true and correct copy of relevant excerpts of the transcripts of the hearings held before the magistrate judge in this matter on July 2, 2025 and September 11, 2025, that I received from the court reporter.

3. **Exhibit C** is a true and correct copy of relevant excerpts of the transcript of the December 19, 2025 deposition of PHH Mortgage Corporation's Rule 30(b)(6) representative, Benjamin Verdooren, that I received from the court reporter.

4. Exhibit D is a true and correct copy of the magistrate judge's January 2, 2026 order compelling the depositions of Priya Naik and Amlein Dsouza, entered at Docket 93, that I obtained from the Court's docket in this matter.

5. Exhibit E is a true and correct copy of this Court's January 27, 2026 order denying PHH Mortgage Corporation's motion for relief from the magistrate judge's order, entered at Docket 111, that I obtained from the Court's docket in this matter.

6. PHH Mortgage Corporation's initial disclosures in this matter did not identify any witness by name other than Plaintiff and Plaintiff's counsel. PHH has never identified Priya Naik or Amlein Dsouza in its initial disclosures or in any amendment to them.

7. On June 5, 2025, I served Plaintiff's Interrogatory 3 and Interrogatory 4 on PHH Mortgage Corporation.

8. On July 7, 2025, PHH served its responses to Plaintiff's first set of discovery requests. PHH's responses to Interrogatories 3 and 4 did not identify any person by name, and PHH produced no documents with those responses.

9. On November 24, 2025, I served notices of deposition for Priya Naik and Amlein Dsouza. The day before the noticed deposition dates, PHH's counsel advised me that PHH would not produce either witness.

10. PHH's counsel asked me to withdraw the deposition notices for Ms. Naik and Mr. Dsouza permanently, writing that PHH had "scheduled the Rule 30(b)(6) deposition for December 16, 2025, and the deposition will cover the application of the reinstatement payment, including the reversal and reapplication of the payment," such that "there is no need for the deposition of Priya

Naik and Amlein D'Souza, the two individuals involved with the reversal and reapplication of the reinstatement payment."

11. I served PHH with a notice of deposition of its corporate representative that included deposition topics 5, 6, 7, and 8, which sought testimony identifying who requested the reapplication of the reinstatement funds, whether anyone in the research department was involved, the persons involved in applying and reversing the reinstatement funds and their job titles within the organization, and all managers, officers, supervisors, and anyone above the level of the person who applied the reinstatement funds. PHH produced Benjamin Verdooren as its Rule 30(b)(6) representative on December 19, 2025.

12. On January 31, 2026, I emailed PHH's counsel, Timothy Schneider, asking him to advise when Mr. Dsouza and Ms. Naik would be available for deposition. Mr. Schneider responded, "We are reviewing this request with our client and will get back to you." Neither witness was ever produced for deposition.

13. I have reviewed the four privilege logs PHH served in this matter, one of which is filed at Docket 127-2. I performed some word searches and used a software program to analyze these and my software appeared to identify approximately 256 entries pertaining to the reversal, the application of the reinstatement payment, the accounting of the loan, or similar subject matter. Of those entries, approximately 193 appear to involve Mr. Dsouza and approximately 159 appear to involve Ms. Naik. It appears that about 230 of these line items in the logs are emails that include either Naik, or Dsouza or both, and where no attorney is included in the communication. I spot checked this analysis but have not individually checked each result, and the logs have insufficient data to rule out duplicates because there are no time stamps, so these counts are only approximate.

14. Prior to filing this Motion, I asked PHH Mortgage Corporation's counsel to consent to a hearing date on this Motion. PHH's counsel refused to consent, asserting that the Motion is untimely because Plaintiff knew of the failure to obey the orders at the close of discovery in February 2026 but did not file this Motion until August 2026.

15. I swear under the penalty of perjury that this is true and correct, and that this declaration was executed on the following date in Oakland California.

DATED: August 14, 2026

/s/ Andrew J. Christensen

Andrew J. Christensen
Attorney for Plaintiff Cory Mayer

Andrew J. Christensen (SBN: 260748)
Law Offices of Andrew J. Christensen, P.C.
2063 Mountain Blvd. Suite 2
Oakland, CA 94611
Tel: (510) 761-7183
Fax: (510) 680-3430
Andrew@CaliforniaHomeLawyer.com

Nicholas Heath Wooten (SBN: o77n-1870)
3125 Carlton Road
Cumming, GA. 30041
Tel: (833) 937-6389
Nick@nickwooten.com

Attorneys for Plaintiff
Cory Mayer

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| Cory Mayer,<br>Plaintiff,<br>v.<br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A.;<br>PHH MORTGAGE CORPORATION;<br>WESTERN PROGRESSIVE, LLC;<br>DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive,<br>Defendants. | CASE NO.: 5:25-cv-00182-NW<br>Unlimited Jurisdiction<br><br>**[Proposed] Order Imposing Issue Sanctions Against Defendant PHH Mortgage Corporation for Failing to Obey Order Compelling Depositions of Priya Naik and Amlein Dsouza**<br><br>Date: September 25, 2026<br>Time: 9:00 a.m.<br>Place: San Jose Courthouse, Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113<br>Honorable Judge Noël Wise<br>Action Filed: August 9, 2024<br>Trial Date: September 28, 2026 |

The matter of Plaintiffs' *Motion for Issue Sanctions Under FRCP 37 Against Defendant PHH Mortgage Corporation for Failing to Obey Order Compelling Depositions of Priya Naik and Amlein Dsouza* that was filed on August 14, 2026, came before the court for hearing on September 25, 2026. The Court has considered the briefing and evidence submitted and the arguments of the parties at the hearing. The Court finds good cause to grant the Motion. The Court finds that Defendant PHH Mortgage Corporation ("PHH") willfully failed to obey discovery orders Dockets 93 and 111 to produce Priya Naik and Amlein Dsouza for depositions. The Court finds that the

failure to obey was willful and without justification for the reasons stated in the motion and shown by the evidence submitted in support of the Motion and on the docket. The Court finds the sanctions just and related to the purpose for which the discovery was sought for the reasons stated in the motion. Pursuant to FRCP 37(b)(2)(A) the Court hereby orders as follows that the following facts be taken as established for the purposes of this action in accordance with Plaintiff's claims:

1. Priya Naik and Amlein Dsouza directed and ratified the application and reapplication of Plaintiff's payment of $168,468.78 to the Loan;

2. PHH intentionally directed that the $33,120.95 not be credited to the Loan pursuant to the Settlement Agreement;

3. That PHH's reversals and reapplications of the $168,468.78 reinstatement payment, and its failure to apply the $33,120.95 credit required by the Settlement were intentional acts;

4. That PHH's reversals and reapplications of the $168,468.78 reinstatement payment, and its failure to apply the $33,120.95 credit required by the Settlement Agreement were not mistakes, and were not the product of any misunderstanding of whether the $33,120.95 was a "lien" or a "credit";

5. That PHH's reversals and reapplications of the $168,468.78 reinstatement payment, and its failure to apply the $33,120.95 credit required by the Settlement Agreement undertaken with the intent to disrupt Plaintiff's performance of his promissory note, deed of trust, and loan modification contracts, including by keeping the loan in default and preventing Plaintiff from reinstating, curing, or refinancing; and

6. That PHH's reversals and reapplications of the $168,468.78 reinstatement payment, and its failure to apply the $33,120.95 credit required by the Settlement Agreement were undertaken knowing that disruption of Plaintiff's performance of those contracts was certain or substantially certain to result, including making his performance more difficult and burdensome.

7. That these acts were done knowing they were certain or substantially certain to cause severe emotional distress.

IT IS SO ORDERED.

DATED:

Honorable Noel Wise
United States Distirct Court Judge