# Exhibit A

Brian A. Paino (SBN 251243)
bpaino@hinshawlaw.com
Helen Mosothoane (SBN 254511)
hmosothoane@hinshawlaw.com
Zeeshan Iqbal (SBN 337990)
ziqbal@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
Telephone: 213-680-2800
Facsimile: 213-614-7399

Attorneys for *Defendants* **PHH MORTGAGE CORPORATION and HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST, SERIES 2006-AR2**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CORY MAYER,<br><br>Plaintiff,<br><br>vs.<br><br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A; PHH MORTGAGE CORPORATION; WESTERN PROGRESSIVE, LLC; DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 5:25-cv-00182-NW<br><br>**DEFENDANT PHH MORTGAGE CORPORATION'S SUPPLEMENTAL RESPONSES TO PLAINTIFF CORY MAYER'S INTERROGATORIES, SET ONE** |

**PROPOUNDING PARTY:** *Plaintiff* CORY MAYER

**RESPONDING PARTY:** *Defendant* PHH MORTGAGE CORPORATION

**SET NUMBER:** ONE

Pursuant to Rule 26(d)(1) and Rule 33 of the Federal Rules of Civil Procedure, *defendant* PHH Mortgage Corporation ("PHH") provides these supplemental responses to *plaintiff* Cory Mayer's ("Plaintiff") Interrogatories, Set One (the "Interrogatories," and, individually, an "Interrogatory").

///

privilege or attorney work-product doctrine, or any other applicable right, privilege, protection, or doctrine.

Subject to and without waiving the foregoing objections, and assuming the term "person(s)" refers to PHH's employees, PHH responds as follows: The answer to this Interrogatory can be determined by examining PHH's business records and the burden of deriving the information will be substantially the same for either party. Thus, PHH refers Plaintiff to the servicing notes served within the Production. PHH's investigation is otherwise ongoing and PHH will supplement this response if and when it identifies additional information responsive to this Interrogatory.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 3:**

Priya Naik (Comment User ID 8B6), Senior Specialist, Cashiering, requested the reversal and reapplication of funds. Amlein Dsouza (Comment User ID 2DA), Assistant Manager, Cashiering, reversed and re-applied funds. They can be contacted through PHH's counsel of record.

**INTERROGATORY NO. 4:**

IDENTIFY the person(s) with the highest level of authority that knew about the reversals and reapplication of payments to the SUBJECT LOAN from January 2020 to present.

**ANSWER TO INTERROGATORY NO. 4:**

PHH objects to this Interrogatory on the ground that it seeks information which is not relevant to Plaintiff's claims and is therefore not proportional to the needs of the case, as required under Fed. R. Civ. P. 26(b)(1). PHH further objects to this Interrogatory on the ground that it is vague and ambiguous as to the term "highest level of authority."

Subject to and without waiving the foregoing objections, and assuming the term "person(s)" refers to PHH's employees, PHH responds as follows: The answer to this Interrogatory can be determined by examining PHH's business records and the burden of deriving the information will be substantially the same for either party. Thus, PHH refers Plaintiff to the servicing notes served within the Production. PHH's investigation is otherwise ongoing and PHH will supplement this response if and when it identifies additional information responsive to this Interrogatory.

///

///

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 4:**

PHH responds as follows: Amlein Dsouza (Comment User ID 2DA), Assistant Manager, Cashiering, who can be contacted through PHH's counsel of record.

**INTERROGATORY NO. 5:**

IDENTIFY each individual whose name or ID number or other identifier is found in the records of the servicing history of the loan, including, but not limited to, in the servicing notes, collection comments, escalations, or escrow department records. This shall include the persons full name, job title, whether they are currently employed by YOU, their address, phone number, and email address.

**ANSWER TO INTERROGATORY NO. 5:**

PHH objects to this Interrogatory on the grounds that it is overly-broad and unduly burdensome because it seeks information that is not reasonably limited in scope, time, or subject matter. Indeed, the Loan was originated in March 2006 and PHH has serviced the Loan since 2019, and Plaintiff otherwise waived and released all claims through April 2020, yet this Interrogatory contains no temporal limitations whatsoever. This is improper. *See Rabb*, 2024 U.S. Dist. LEXIS 161653, at *9. PHH further objects to this Interrogatory on the ground that it seeks information that is not relevant to any of Plaintiff's claims. More specifically, it seeks the identity of individuals without regard to whether they handled the processing of Plaintiff's payments, including the reinstatement payment, or were involved with the recordation of the recorded documents at issue in the case, and seeks information that pre-dates the Settlement Agreement, pursuant to which Plaintiff expressly released all claims through April 2020. Information unrelated to Plaintiff's dispute is not relevant to any of Plaintiff's claims and is therefore not proportional to the needs of the case as required under Fed. R. Civ. P. 26(b)(1). PHH further objects to this Interrogatory on the ground that it is made for the purpose of harassment as, not only does it seek information that is irrelevant to Plaintiff's claims, but it disregards the fact that Plaintiff received nearly 2,000 pages of records for the Loan in connection with his prior lawsuit. PHH further objects to this request on the grounds that it is vague, ambiguous, and overbroad as to terms "other identifier," "collection comments," and "escalations."

///

///

# Exhibit B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan van Keulen, Magistrate Judge

MAYER, )
)
Plaintiff, )
)
vs. ) No. C 25-00182-NW
)
HSBC BANK USA, NATIONAL )
ASSOCIATION, et al., )
)
Defendants. )
_______________________________)

San Jose, California
Wednesday, July 2, 2025

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 10:37 - 11:03 = 25 MINUTES

APPEARANCES:

For Plaintiff:

Law Office of Andrew J. Christensen, P.C.
2063 Mountain Boulevard
Suite 2
Oakland, California 94611
BY: ANDREW J. CHRISTENSEN, ESQ.

For Defendants:

Hinshaw & Culbertson, LLP
350 South Grand Avenue
Suite 3600
Los Angeles, California 90071
BY: ZEESHAN IQBAL, ESQ.

Transcribed by:

Echo Reporting, Inc.
Contracted Court Reporter/
Transcriber
echoreporting@yahoo.com

MR. CHRISTENSEN: Right. So, yes, it's basically mortgage servicing misconduct that has gone on since then. So, it's part breach of the settlement agreement and then other parts mortgage servicing misconduct since then.

THE COURT: All right. I -- I know I saw this, but remind me, Mr. Christensen, what was the date of the settlement?

MR. CHRISTENSEN: It was mid 2020

THE COURT: 2020. That's what I had in mind. All right. Okay.

Mr. Iqbal, so, the -- you are prepared to -- or the Defendants are preparing to serve responses, is that --

MR. IQBAL: That's correct, your Honor.

THE COURT: -- right?

MR. IQBAL: That's correct, your Honor. I apologize.

THE COURT: Okay. And will there be substantive responses? Is it all a set of objections? I mean, I don't have them in front of me. It doesn't matter. I just want to know -- I want to understand where this is headed?

MR. IQBAL: There will be objections included, but they're mostly substantive responses.

THE COURT: Okay. I did see in your portion of the joint statement where you started to raise some concerns about breadth and scope, and I assume that that will be

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan van Keulen, Magistrate Judge

| | |
|---|---|
| MAYER,<br><br>Plaintiff,<br><br>vs.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, et al.,<br><br>Defendants. | No. C 25-00182-NW |

San Jose, California
Thursday, September 11, 2025

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 11:04 - 12:07 = 1 HOUR AND 3 MINUTES

APPEARANCES:

For Plaintiff:
Law Office of Andrew J. Christensen, P.C.
2063 Mountain Boulevard
Suite 2
Oakland, California 94611
BY: ANDREW J. CHRISTENSEN, ESQ.

For Defendants:
Hinshaw & Culbertson, LLP
350 South Grand Avenue
Suite 3600
Los Angeles, California 90071
BY: HELEN G. MOSOTHOANE, ESQ.

Transcribed by:
Echo Reporting, Inc.
Contracted Court Reporter/Transcriber
echoreporting@yahoo.com

ever seen that it doesn't matter. That doesn't make -- take the Roosevelt Act out of being applicable.

So, that's the main argument why they're not answering all these requests. And, so, as a legal matter, that is not -- there is no reason this --

THE COURT: I understand the argument. I understand the argument.

MR. CHRISTENSEN: Yeah.

THE COURT: I -- I have overruled the request for supplementation, and the request (sic) that they don't have enough information for the reasons stated is sufficient. You may -- you may prove them wrong as the case goes forward.

(Simultaneous speaking.)

MR. CHRISTENSEN: -- denial so that they can --

THE COURT: -- you can address that issue at the appropriate time. Again, understanding what the disputes are, that's the whole point of the -- of the joint submission.

Moving on to the interrogatories to PHH. Interrogatory 4 asks -- this is -- I think we touched on this earlier. This is asking for the person with the highest level of authority. The Defendant answers it. The Plaintiff disagrees with the answer. I understand. I saw your argument here. But that's not -- okay. You -- you

disagree. That's what a deposition's for. You follow up, and you can -- you can prove them wrong. You can explore the issue, but this is the answer that they've given. Not liking the answer doesn't -- doesn't -- I mean, you don't get to --

MR. CHRISTENSEN: Well --

THE COURT: -- compel, Give me an answer I like better.

MR. CHRISTENSEN: Normally I would understand that. The problem here, your Honor, is that -- that they -- there's later in the request with the charts --

THE COURT: Yeah.

MR. CHRISTENSEN: -- with some names of witnesses.

THE COURT: Yeah.

MR. CHRISTENSEN: That's incomplete. We think that that chart's complete that to at least people with higher authority. But, I mean, the main problem is, your Honor, what's the consequence when we find out, which has happened in every case that there are people with higher levels of authority, and what is the consequence for not disclosing it now. You know, is, Well, we got that motion to compel denied, and then we find out that it was misrepresented. Then what's the consequence.

THE COURT: Yeah.

MR. CHRISTENSEN: There's no violation of --

# **Exhibit C**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| CORY MAYER,<br><br>Plaintiff,<br><br>vs.<br><br>DEUTSCHE ALT A SECURITIES MORTGAGE LOAN TRUST SERIES 2006-A.; PHH MORTGAGE CORPORATION; WESTERN PROGRESSIVE, LLC; DOES 1-20; and all persons unknown claiming any interest in the property, inclusive and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:25-cv-00182-NW |

VIDEOTAPED DEPOSITION OF PERSON MOST KNOWLEDGEABLE FOR PHH MORTGAGE CORPORATION, BENJAMIN VERDOOREN
Dallas, Texas
Friday, December 19, 2025
VOLUME I

Remotely and Stenographically Reported by:
RENEE D. ZEPEZAUER, RPR, CRR
CSR No. 6275
JOB No. 7772551
PAGES 1 - 221

A I e-mailed his name -- I'll just spell it for you, A is in apple, m as in Mary, l as in Larry, e-i-n as in Nancy. That's his first name. His last name is D'Souza, D as in David, S-o-u-z-a. 09:30:30
Q When did you e-mail him? 09:30:55
A This past week.
Q How many e-mails between the two of you?
A I think about two maybe.
Q Okay. What's his job title?
A I don't remember if it's team lead or manager. It's one of those two within -- he's within the cashiering department. 09:31:11
Q All right. What did you discuss with him?
A I asked him about an e-mail that he mentioned in a comments in our servicing platform. I asked him about an Excel spreadsheet that he mentioned or that was mentioned either by him or by someone else within the servicing platform. 09:31:34
Q Okay. And what did he tell you?
A He sent me the e-mail chain. Then he sent me the Excel spreadsheet. 09:31:58
Q When did you get those?
A E-mail chain was earlier this week. The spreadsheet came in last night.
Q Okay. And what's on the spreadsheet? 09:32:24

A It is a -- I guess you could say a breakdown of the payments that need to be applied to the loan. 09:32:28
Q Do you know if that document was produced in discovery in this case?
A I don't know. 09:32:53
MR. CHRISTENSEN: Ms. Mosothoane, do you know if that's been produced or, if not, can you e-mail it to me?
MS. MOSOTHOANE: It hasn't been produced because I did not previously receive it. I received it this morning. So, yes, I can send that to you. 09:33:11
MR. CHRISTENSEN: Okay.
Q All right. What else did you speak about with Mr. D'Souza to prepare for today?
A Just those two -- just those two items. 09:33:27
Q Okay. What else did he tell you about it?
A One was just "Here's a spreadsheet." The other one "Here is the e-mail chain."
Q Did he tell you anything about how or why the payments were reversed or reapplied? 09:33:46
A We did not talk about that.
Q Why not?
A I didn't ask him.
Q Why did you not ask him?
A I didn't have the need to ask him. 09:34:05

Q Isn't he the one that did the -- applied the 09:34:10
payments and reapplied them?
A He was one of the people, yes.
Q Okay. Did you speak with anyone else about why
they applied or reapplied the payments, the $158,000? 09:34:26
A About the payment application, for example, I
didn't talk to anyone about that, anyone else about
that.
Q Okay. So to prepare for today, the only -- you
didn't speak to anyone else at PHH or any other employee 09:35:00
about why the payments were reversed and reapplied
except for this exchange with Amlein D'Souza; is that
right?
A Correct, about the reversal and reapplication
of payments, I did not discuss that with anyone else. 09:35:20
At least not that I can remember.
Q Okay. All right. Was there anything else that
Amlein D'Souza told you in your communications with him
that you haven't already told me?
A No. 09:35:42
Q Okay. Did you speak with anyone else, any
other employees to prepare for today?
A I spoke with -- his name is going to be very
difficult. I don't remember how to spell his first
name, but I have his last name. 09:36:06

THE WITNESS: 2020, 2021, probably at that time our in-house counsel. I mean, different departments, different people have different levels of authority. But for the highest at the time is probably somebody -- probably our in-house counsel. 10:45:17 10:45:33

BY MR. CHRISTENSEN:

Q Who is that?

A I believe at the time was Carol -- I don't know how to say or spell her last name. Fantozzi. Fantozzi.

Q Fantozzi? 10:45:51

A Carol F. I don't remember her entire last name.

Q Okay. Anyone besides counsel -- who is the highest level supervisor, manager, VP, anybody that knew about this request for reversal? 10:46:04

MS. MOSOTHOANE: I'm going to object to vague as to "highest level" of authority.

THE WITNESS: I'm trying to remember the e-mails from the cashiering team at the time. I'm not 100 percent sure of the person of the highest authority. 10:46:37 I believe Priya Naik. P-r-i-y-a, first name N-a-i-k. I think she's a team lead. That's all I can remember right now.

BY MR. CHRISTENSEN:

Q Okay. Did you ask anyone to find out who was 10:47:07

the highest level of authority? 10:47:09
A I did not.
Q Why not?
A I have e-mail chains from this time period that Evelyn sent me. And I'm just trying to recall who is 10:47:23 the highest one and the only person I could think of was her, Priya Naik. I don't recall the other names in the e-mail chain so there could be somebody else with higher authority or that might have been it I just don't remember right now. 10:47:43
Q Okay. Did you ask any of these people who the highest level supervisor or manager or officer was aware of it?
A No.
Q Okay. Who is the person that actually did the 10:48:04 reversal here on the -- the first reversal of the funds on March 15th, 2021?
A That request per the comment log was done by Priya Naik.
Q Well, she requested it or did it? 10:48:24
A That I don't know 100 percent. I don't know -- I don't know. Because she entered the task to reverse the funds, but when the reversal takes place in the comment history, it's not showing who actually did it.
Q Did you ask -- 10:48:46

A That is correct. 10:51:56
Q Okay. What was different this time around?
A This time they charged the entirety of the escrow amount of 13 -- let me back up.
At the time his required escrow, his payment is 10:52:07 1,315.52. So when they reapplied the funds, they used that escrow amount for all those payments.
Q This 1,316.52?
A Yes. Sorry. 1,316.52.
Q It looks like the first due date is May, 2020; 10:52:37 why is that?
A That's referencing -- the due date is to the left, look to the left.
Q Yeah.
A The other column is the effective date. 10:52:59
Q Okay. So the second time around I guess you tried to fix it by using a higher dollar amount for the escrow impound from 2014 to present, I guess to 2020; right?
A Correct. 10:53:37
Q Well, did that work out?
A Well, I don't know if that was the reasoning behind it, but that's how that got applied which was done incorrectly.
Q Okay. What was incorrect about it? 10:53:51

2015. You see the application starts in 2016. So they didn't -- they left off a couple years on this August 13th reapplication. 11:39:06

Q Okay. Was that because the reversals didn't reverse back that far? 11:39:22

A Could you scroll up some more? Keep going. No. They just forgot to reverse those payments as well.

Q So it wasn't a full reversal?

A Correct. Whoever did it forgot to do 2015 and 2014 reversals. 11:39:45

Q Oh, I see. Why would that have happened? How would they have forgotten what parts to reverse or apply? Was that not part of the request or did Priya Naik not tell them or something?

A No. It was in the comment that Priya Naik entered. It started with 2014 Amlein's spreadsheet, starts at 2014. I don't know whoever did the reversal just did -- I didn't ask them who did it. I just know that it was done incorrectly because they didn't reverse the 2014 and 2015 payments. 11:40:10 11:40:27

Q Okay. So who did the reversal?

A I would have to ask. I don't know who did this particular reversal.

Q Okay. Okay. So on this application of funds, this fourth attempt to apply them on August 13th, was 11:40:51

them -- told everyone at PHH to do this, these were all 11:42:31
attempts to comply with that direction; is that right?
A Yes. After her discussion with Brian and Brian reaching out to me and me to Evelyn, all this stems from that. 11:42:51
Q Okay. So from the instructions of -- of Fantozzi and with you and Pierre, all the people that you've named; is that right?
A Correct.
Q Okay. So besides D'Souza, during this fourth 11:43:05 reversal, there was no one else new involved; is that your understanding?
A Yeah. Anybody else communicating within the e-mail chain, Amlein D'Souza was the one who took over to get this done correctly. 11:43:24
Q Okay. Why did he take over?
A I didn't ask him why he took over. You know, I just see it in the history that the previous one that was done with Priya Naik requesting it was done incorrectly. He seemed to step in to make sure it got 11:43:43 done properly.
Q Oh, so he took over for Priya Naik in her role?
A From what I can see in the e-mails, that's what I inferred from them.
Q Oh, I see. 11:44:00

large amounts like that. 01:00:00
Q Like five times in a row?
A I don't know if it's five times in a row, but it was a couple times in a row.
Q So would you say that's unusual? 01:00:10
A I mean, that's just my experience with these -- from what I have witnessed. I don't know if it's unusual over all. I've just rarely seen it, but, again, you're equating -- I look at it as they reversed it twice because once in March and once in August, but yet 01:00:31 I understand when you look at it, the reverse applied, and reverse applied in March, did it two times in August. But to me I count that as two completely -- those are two instances.
Q Okay. So I guess what I'm trying to figure out 01:00:50 is, you know, is this unusual and what could explain this kind of highly unusual five attempts, what could explain this difficulties, someone like you who has seen this kind of stuff or been around a long time or around a lot of cases, what could explain why there was so 01:01:09 many -- such a difficult time applying the payments correctly?
A I don't know. I've been around. I've seen reversals happen before and reapplications. There's different reasons for that. I couldn't tell you why it 01:01:24

happened on this one. I know why it got reapplied and reversed in August, because it was done incorrectly in March. 01:01:28

Q I guess what I'm saying, why all these errors? Are these inexperienced people who messed it up a couple of times? Incompetence, in other words? Is it some other -- computer system glitch? Or is it being directed by somebody? I don't know what was the plan. 01:01:39

MS. MOSOTHOANE: Objection. Calls for speculation. Asked and answered. 01:01:55

THE WITNESS: I mean, for this instance, I wouldn't call it incompetence. Nobody is directed to make these mistakes. I really don't know why they happened, why the mistakes happened. Because, honestly, the first time it was applied, it was applied correctly, it was just the accounting error of not including the credit. And then after that it looks like just a miscommunication of how the funds should be applied for that one time in March. By the time August rolls around, they finally did it again like they did the first time. 01:02:15 01:02:31

So I wouldn't call it -- it's not a direction from anyone to say, hey, screw this up. And it's not at least any incompetence, I think it's just a miscommunication of somebody putting in a wrong number 01:02:46

somewhere. Simple mistake. 01:02:50
BY MR. CHRISTENSEN:
Q Right. Okay. Do you remember responding to interrogatories in this case? You signed some Answers to Interrogatories, didn't you? 01:03:08
A I did.
Q Do you remember stating in there PHH didn't think that the settlement agreement required waiving 33,000 credit on the loan?
A I'm sorry. Could you repeat that again? 01:03:36
Q Do you remember -- so, let's see here. I'm going to share my screen. So I'm sharing on the screen here, do you remember these PHH Responses to Interrogatories, Set One, here? Let's scroll down. This is a verification. This is your signature; is that 01:04:56 right, on July 3, 2025?
A That's correct. Yes.
Q So in here it says -- in response to interrogatory 17, we said, "If you contend that you credited the subject loan $33,120.95 pursuant to the 01:05:12 settlement agreement, state when this occurred and what documents demonstrate this."
So then your answer it says here, "PHH responds as follows: PHH was not required under the terms of the settlement agreement to credit the loan $33,120.95, 01:05:31

# **Exhibit D**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY MAYER,<br>Plaintiff,<br>v.<br>HSBC BANK USA, NATIONAL ASSOCIATION, et al.,<br>Defendants. | Case No. 25-cv-00182-NW (SVK)<br><br>**DISCOVERY ORDER RE DKT. NOS. 90, 91, 92** |

Before the Court are three discovery disputes between Plaintiff and a varying combination of Defendants HSBC and PHH. Each dispute is properly and most efficiently handled without oral argument. Civ. L.R. 7-1(b). Having carefully considered the Parties' arguments, the relevant law and, as relevant, the litigation history between the Parties, the Court rules as set forth herein.

I. **Depositions of Ms. Naik and Mr. Dsouza (Dkt. 90)**

**PHH employees Ms. Naik and Mr. Dsouza will appear for deposition as ordered below.** In both instances, the employees were identified in verified discovery responses as key actors vis a vis the subject loan. Dkt. 90 at 2-3. At a hearing before this Court on this very point – the level of authority of these employees – PHH stood by its responses, a point which the Court confirms from its review of the audio recording. *See also id.* PHH does not, presumably because it cannot, dispute the representations made to the Court as to the veracity of its verified interrogatory responses. Instead, PHH now claims that it was merely relying on its servicing notes in identifying Ms. Naik and Mr. Dsouza, rather than conducting the reasonable and diligent investigation ***required*** by the Federal Rules of Civil Procedure. Dkt. 90 at 12.[1] PHH's plea is

[1] The Joint Submission exceeds this Court's ten page limit, even discounting the pleading cover page. Accordingly, the Court accepts only 5 pages of argument from each side and considers nothing beyond this limit.

United States District Court
Northern District of California

unavailing in light of its interrogatory responses and representations to this Court.

In addition, PHH's responses to the deposition notices for Ms. Naik and Mr. Dsouza fail to comply with the Rules to such a degree as to demonstrate bad faith. First, PHH does not dispute that the depositions were noticed on November 24, 2025 for depositions to proceed on December 10 and that PHH failed to meet and confer with Plaintiff's counsel until just two days before the depositions, on December 8. At that late hour, PHH raised its objections for the first time – including that the witnesses were located in India and would need to be served via the Hague Convention. Any and all such objections have been waived. The proper method to object to a deposition notice is to move for a protective order under Federal Rule 26(c). And the requisite first step is to meet and confer:

> The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.

Federal R. Civ. Pro. 26(c)(1). The Joint Submission, filed post-deposition, does not begin to satisfy Rule 26(c)(1); a protective order precedes the deposition. *Id.* Finally, PHH's belated reliance on the Hague Convention on this record further demonstrates its discovery gamesmanship. The time to inform Plaintiff of the location of these witnesses was at the time of disclosure. Indeed, once identified as key actors in response to verified interrogatories and by representations to this Court, PHH had an obligation to amend its initial disclosures to include these witnesses and provide contact information. Fed. R. Civ. Proc. 26(a). If proper disclosure did not raise the question of whether service under the Hague Convention would be necessary, then PHH was obligated to raise it in a meaningful meet and confer upon receipt of the notice, in which, as noted above, PHH failed to engage. In sum, PHH identified Ms. Naik and Mr. Dsouza as key actors with relevant information, and Plaintiff's inference as to their status as managing agents on this record, thereby rendering notices of depositions sufficient under Rule 26, was reasonable. PHH's arguments against making these witnesses available for remote video deposition do not sound in good faith, have been waived and are otherwise utterly unavailing. The Court does note PHH's belated reference to Ms. Naik's maternity leave. Upon verification



United States District Court
Northern District of California

Case 5:25-cv-00182-NW Document 207-1 Filed 08/14/26 Page 27 of 31

that Ms. Naik is on such leave, by production to Plaintiff of the formal authorization for such leave by PHH, Ms. Naik's deposition shall be conducted on a date and time of her choosing (subject to the deadline below) and limited to 2.5 hours. These depositions shall be completed **no later than January 16, 2026**.

II. **Depositions of Ms. Pierre and Ms. Drexel. (Dkt. 91)**

**PHH employees Ms. Pierre and Ms. Drexel will appear for deposition as ordered below.** Ms. Pierre frequently appears in the operative servicing notes and in emails identified in the privilege log. As such, Plaintiff's inference that she had an active and significant role vis a vis the subject loan is not unreasonable. PHH has withheld additional facts, such as the titles of other participants in privileged discussions, which might have informed such an inference. Dkt. 91 at 2. Similarly, Ms. Drexel has been identified as one of just two "managers" and also appears in privileged email discussions during the relevant time period. *Id*. at 3. Again, PHH has not provided additional facts as to other members of the email chains to attack Plaintiff's reasonable inference regarding Ms. Drexel's role at PHH. *Id*. As for PHH's objection that a corporate designee has already testified as to the handling of the loan, the Court calls PHH's attention to Federal Rule 30(b)(6), which provides in relevant part:

> This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

PHH's remaining objections are waived for the reasons identified in re Dkt. 90 above and incorporated herein, to wit PHH's failure to properly and timely object to the deposition notices by engaging in good faith meet and confer efforts and then, if necessary, move for protective order. Fed. R. Civ. Pro. 26(c)(1). Raising objections on the eve of scheduled depositions is not sufficient.

III. **Confidentiality Designations (Dkt. 92)**

Plaintiff objects to Defendants' HSBC and PHH producing a Servicing Agreement and an Asset Purchase Agreement with designations of "Confidential" as provided under the Protective Order. Plaintiff argues that Servicing Agreements in general often appear in public court filings and suggests that the specific Asset Purchase Agreement at issue here was published in an



United States District Court
Northern District of California

Case 5:25-cv-00182-NW Document 93 Filed 01/02/26 Page 4 of 4

United States District Court
Northern District of California

unidentified Bankruptcy Court docket. Dkt. 92 at 2-3. Defendants point to specific confidentiality provisions in each agreement, requiring the parties thereto to take reasonable steps to maintain confidentiality.[2] *Id.* at 4.

The Court agrees with Defendants that Plaintiff's argument regarding Servicing Agreements in general is not persuasive in the context of these proceedings and the express confidentiality provision in the Servicing Agreement at hand. The confidentiality designation for the Servicing Agreement stands. As for the Asset Purchase Agreement, if it is already a matter of public record, then further protection is unwarranted, notwithstanding the confidentiality provision. Plaintiff has **until January 9, 2026** to provide the specific case name, number and docket citation to the public filing of the Asset Purchase Agreement such that Defendants can verify its status. As stated above, if the Asset Purchase Agreement at hand is already a matter of public record, then Defendants are to promptly re-produce it without the confidentiality designation. If Plaintiff does not provide the relevant information by the deadline, then the confidentiality designation stands.

**SO ORDERED.**

Dated: January 2, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

[2] The Court is familiar with such agreements and the standard confidentiality requirements set forth therein and therefore declines the invitation to review these documents *in camera*.

# **Exhibit E**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORY MAYER,

Plaintiff,

v.

HSBC BANK USA, NATIONAL ASSOCIATION, et al.,

Defendants.

Case No. 25-cv-00182-NW

**ORDER DENYING MOTIONS FOR RELIEF FROM ORDER**

Re: ECF Nos. 104, 106, 107, 108

Plaintiff Cory Mayer sued PHH Mortgage Corporation ("PHH") and HSBC Bank USA, National Association as trustee for Deutsche Alt-A Securities Mortgage Loan Trust Series 2006-AR2 ("HSBC") (collectively, Defendants) seeking to enforce a settlement agreement between the parties regarding his home mortgage. The parties are now engaging in discovery, which appears, given the record currently before this Court, highly acrimonious.

Before the Court are the parties' four motions for relief (ECF Nos. 104, 106, 107, 108) from three nondispositive pretrial discovery orders issued by Magistrate Judge van Keulen over eight days:

- Defendants object to Judge van Keulen's January 2, 2026 Order that required Defendants to facilitate the depositions of PHH employees Ms. Naik and Mr. Dsouza, who were identified by PHH in verified discovery responses as key actors.
- As to the same January 2, 2026 Order, Plaintiffs object to Judge van Keulen's Order permitting Defendants to include "confidential designations" as provided in a protective order when it produces a Servicing Agreement and an Asset Purchase Agreement.
- Plaintiff also objects to Judge van Keulen's January 6, 2026 Order, requiring

Defendants to "re-produce the servicing notes from 2020 to present with redactions adjusted as directed by the Court" during an *in camera* hearing.

- Plaintiff additionally objects to Judge van Keulen's January 10, 2026 Order that amended the parties' search parameters, and ordered Plaintiff to "select not more than ten (10) ENTRIES in recently produced servicing notes," and for Defendant to then search emails of the employee responsible for that entry for a 60-day period.

The Court DENIES the four motions for the reasons respectively set forth in Judge van Keulen's January 2, 2026, January 6, 2026, and January 10, 2026 Orders. ECF Nos. 93, 95, and 99. The Court finds each of these Orders to be well-reasoned, proportional to the discovery needs of the case, and not clearly erroneous or contrary to the law. *See* 28 U.S.C. § 636(b)(1)(A) (permitting reconsideration only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); *E.E.O.C. v. Peters' Bakery*, 301 F.R.D. 482, 484 (N.D. Cal. 2014) (quoting *Burdick v. C.I.R.*, 979 F.2d 1369, 1370 (9th Cir. 1992) (noting a district court should only overturn a magistrate judge's ruling "if it is left with the 'definite and firm conviction that a mistake has been committed.'")).

All deadlines and dates set in Judge van Keulen's Orders remain in effect.

**IT IS SO ORDERED.**

Dated: January 27, 2026

Noël Wise
United States District Judge