United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY MAYER,<br>Plaintiff,<br>v.<br>PHH MORTGAGE CORPORATION, et al.,<br>Defendants. | Case No. 25-cv-00182-NW<br><br>**ORDER REGARDING RESPA JURY INSTRUCTIONS**<br><br>Re: ECF No. 216 |

The Court held a Trial Readiness Conference on August 19, 2026, during which the Court ordered the parties to file a jointly agreed upon jury instruction for Plaintiff's Real Estate Settlement Procedures Act ("RESPA") claim (claim 8). On August 21, 2026, the parties filed a "Joint Statement Regarding Jury Instruction for Claim No. 8," in which the parties indicated that they were unable to reach an agreement on the RESPA instruction. ECF No. 216. Because the parties instead filed competing instructions as well as argument in support of their proposals, the Court issues this Order outlining the relevant law under RESPA, and the associated jury instructions for Plaintiff's RESPA claim.[1]

Consistent with Plaintiff's First Amended Complaint (ECF No. 34), the following statutory scheme applies to Plaintiff's remaining RESPA claim. RESPA establishes certain duties a loan servicer owes to borrowers. 12 U.S.C. § 2605. Some of these duties are set forth in 12 C.F.R.

[1] The Court and the parties acknowledge that this is an issue of new, if not first, impression. Neither the parties nor the Court were able to identify other cases or sample jury instructions for claims brought under Regulation X.

United States District Court
Northern District of California

§ 1024.17, also known as "Regulation X." 12 C.F.R. § 1024.17;[2] 12 U.S.C. § 2605(k)(1)(E).[3] Plaintiff alleges that Onity failed to comply with two specific duties under Regulation X: 12 C.F.R. § 1024.17(c)(1)(ii) and 12 C.F.R. § 1024.17(i). *See* First Amended Complaint ¶ 148, ECF No. 34 ("Defendants violated 12 CFR §1024.17(c) by overcharging Mayer from July 2020 through February 2022 monthly escrow impound amounts far higher than the 1/12th amount allowed, and more than the 1/6th amount of allowed cushion. Mayer's property taxes ranged from about $8,914.90 to $9,479.98 those years, which would permit only a maximum of $790 per month in escrow impound, but PHH sent billing statements attempting to collect escrow impound amounts in the range of $1,200 and 1,316.52."); *id*. ¶ 149 ("PHH violated 12 CFR §1024.17(i) by sending inaccurate and incorrect escrow accounting information, including the analysis dated February 16, 2024, which incorrectly shows an escrow surplus of $7,386.84.").

To prevail on his RESPA claim, Plaintiff has the burden of proving by a preponderance of the evidence, that: (1) Onity (formerly operating as PHH) was servicing Mayer's loan, 12 U.S.C. § 2605(i)(2); (2) Onity failed to comply with one or both of 12 C.F.R. § 1024.17(c)(1)(ii) and/or 12 C.F.R. § 1024.17(i); and (3) Onity engaged in "a pattern or practice of noncompliance with the requirements," 12 U.S.C. § 2605(f)(1).

For the first element, the Court found in its Order Granting in Part Summary Judgment (ECF No. 200) and the parties agreed during the September 22, 2026 hearing, that PHH was the loan servicer of Mayer's mortgage when he filed this action. PHH now operates under the name Onity.

For the second element, Mayer must prove that Onity violated its obligations under 12 C.F.R. § 1024.17(c)(1)(ii) and/or 12 C.F.R. § 1024.17(i):

---

[2] *Wood v. Nationstar Mortg., LLC*, No. 6:16-CV-02061-MC, 2017 WL 3484664, at *5 (D. Or. Aug. 14, 2017) ("Servicers can also violate RESPA by failing to comply with any other regulations set forth by the Consumer Financial Protection Bureau. 12 U.S.C. § 2605(k)(1)(E). The SAC plausibly alleges that [defendant] violated 12 CFR § 1024.17, a provision limiting the amounts held in escrow accounts.").

[3] 12 U.S.C. § 2605(k)(1)(E) ("A servicer of a federally related mortgage shall not . . . (E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.").

**12 C.F.R. § 1024.17(c)(1)(ii)** – Limits on payments to escrow accounts. (1) A lender or servicer (hereafter servicer) shall not require a borrower to deposit into any escrow account, created in connection with a federally related mortgage loan, more than the following amounts:

> (ii) Charges during the life of the escrow account. Throughout the life of an escrow account, the servicer may charge the borrower a monthly sum equal to one-twelfth ( 1 /12 ) of the total annual escrow payments which the servicer reasonably anticipates paying from the account. In addition, the servicer may add an amount to maintain a cushion no greater than one sixth ( 1 /6 ) of the estimated total annual payments from the account. However, if a servicer determines through an escrow account analysis that there is a shortage or deficiency, the servicer may require the borrower to pay additional deposits to make up the shortage or eliminate the deficiency, subject to the limitations set forth in § 1024.17(f).

**12 C.F.R. § 1024.17(i)** – Annual escrow account statements. For each escrow account, a servicer shall submit an annual escrow account statement to the borrower within 30 days of the completion of the escrow account computation year. The servicer shall also submit to the borrower the previous year's projection or initial escrow account statement. The servicer shall conduct an escrow account analysis before submitting an annual escrow account statement to the borrower.

> (1) Contents of annual escrow account statement. The annual escrow account statement shall provide an account history, reflecting the activity in the escrow account during the escrow account computation year, and a projection of the activity in the account for the next year. In preparing the statement, the servicer may assume scheduled payments and disbursements will be made for the final 2 months of the escrow account computation year. The annual escrow account statement must include, at a minimum, the following (the items in paragraphs (i)(1)(i) through (i)(1)(iv) must be clearly itemized):
>
>> (i) The amount of the borrower's current monthly mortgage payment and the portion of the monthly payment going into the escrow account;
>>
>> (ii) The amount of the past year's monthly mortgage payment and the portion of the monthly payment that went into the escrow account;
>>
>> (iii) The total amount paid into the escrow account during the past computation year;
>>
>> (iv) The total amount paid out of the escrow account during the same period for taxes, insurance premiums, and other charges (as separately identified);
>>
>> (v) The balance in the escrow account at the end of the

period;

(vi) An explanation of how any surplus is being handled by the servicer;

(vii) An explanation of how any shortage or deficiency is to be paid by the borrower; and

(viii) If applicable, the reason(s) why the estimated low monthly balance was not reached, as indicated by noting differences between the most recent account history and last year's projection. Public Guidance Documents entitled "Annual Escrow Account Disclosure Statement—Format" and "Annual Escrow Account Disclosure Statement—Example" set forth an acceptable format and methodology for conveying this information.

(2) No annual statements in the case of default, foreclosure, or bankruptcy. This paragraph (i)(2) contains an exemption from the provisions of § 1024.17(i)(1). If at the time the servicer conducts the escrow account analysis the borrower is more than 30 days overdue, then the servicer is exempt from the requirements of submitting an annual escrow account statement to the borrower under § 1024.17(i). This exemption also applies in situations where the servicer has brought an action for foreclosure under the underlying federally related mortgage loan, or where the borrower is in bankruptcy proceedings. If the servicer does not issue an annual statement pursuant to this exemption and the loan subsequently is reinstated or otherwise becomes current, the servicer shall provide a history of the account since the last annual statement (which may be longer than 1 year) within 90 days of the date the account became current.

(3) Delivery with other material. The servicer may deliver the annual escrow account statement to the borrower with other statements or materials, including the Substitute 1098, which is provided for Federal income tax purposes.

(4) Short year statements. A servicer may issue a short year annual escrow account statement ("short year statement") to change one escrow account computation year to another. By using a short year statement a servicer may adjust its production schedule or alter the escrow account computation year for the escrow account.

(i) Effect of short year statement. The short year statement shall end the "escrow account computation year" for the escrow account and establish the beginning date of the new escrow account computation year. The servicer shall deliver the short year statement to the borrower within 60 days from the end of the short year.

(ii) Short year statement upon servicing transfer. Upon

> the transfer of servicing, the transferor (old) servicer shall submit a short year statement to the borrower within 60 days of the effective date of transfer.
>
> (iii) Short year statement upon loan payoff. If a borrower pays off a federally related mortgage loan during the escrow account computation the servicer shall submit a short year statement to the borrower within 60 days after receiving the payoff funds.

12 C.F.R. § 1024.17(c)(1)(ii); 12 C.F.R. § 1024.17(i).

For the third element, Plaintiff must prove that Onity engaged in "a pattern or practice of noncompliance with the requirements of this section," in reference to 12 U.S.C. § 2605.[4] If Plaintiff does so, "the court may allow" "an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1).

The Court rules that the attached jury instructions for Plaintiff's RESPA claim (claim 8) accurately reflect the law, the scope of Plaintiff's pleadings, and the Court's previous rulings in this case. *See* Attachment A.

For the sake of clarity, and consistent with the Court's rulings regarding the appropriate RESPA jury instructions for this case, the Court also attaches the relevant questions to be posed to the jury in the jury verdict form for Plaintiff's RESPA claim. *See* Attachment B.

**IT IS SO ORDERED.**

Dated: September 25, 2026

Noël Wise
United States District Judge

[4] *Wood v. Nationstar Mortg., LLC*, No. 6:16-CV-02061-MC, 2017 WL 3484664, at *5 (D. Or. Aug. 14, 2017) ("There are two contradicting interpretations of this statute with respect to whether a plaintiff must show actual damages before they may recover. While the issue has not been considered by the 9th Circuit, many courts have held that in order to recover any other statutory damages under § 2605(f), a borrower must first show "actual damages" under (f)(1)(A). *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, No. CV–11–156–HZ, 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011); *Schwartz v. Christiana Trust*, 2016 U.S. Dist. LEXIS 83186, *14, 2016 WL 3512441 (D. Or. June 2, 2016). A reading of the plain language of the statute does not support this interpretation. The statute allows for damages equal to the *sum* of 1) actual damages and 2) additional damages up to $2000 in the case of a pattern or practice of noncompliance. 12 U.S.C. § 2605(f)(1). The statute does not make actual damages a prerequisite for the recovery of additional damages.").

United States District Court
Northern District of California

**ATTACHMENT A**

**REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)**

GENERAL INSTRUCTION

Federal law, known as the Real Estate Settlement Practices Act, or "RESPA", establishes certain duties of a loan servicer owed to borrowers. 12 U.S.C. § 2605. Some of these duties are set forth in 12 C.F.R. § 1024, also known as "Regulation X." 12 C.F.R. § 1024; 12 U.S.C. § 2605(k)(1)(E).

United States District Court
Northern District of California

**REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)**

SERVICER AND SERVICING

The parties do not dispute that PHH, now operating as Onity, was the servicer of Mayer's loan and that PHH was servicing his loan at all times material to this case.

**REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)**

LIMITS ON PAYMENTS TO ESCROW ACCOUNT

Plaintiff Mayer must prove by a preponderance of the evidence that Onity violated RESPA by failing to comply with 12 C.F.R. § 1024.17(c)(1)(ii), which requires that throughout the life of an escrow account, a servicer shall not require a borrower to deposit into any escrow account more than a monthly sum of one-twelfth of the total annual escrow payments and a cushion of one-sixth of the estimated total annual payment. 12 C.F.R. § 1024.17(c)(1)(ii).

The relevant statutory language states:

> A lender or servicer (hereafter servicer) shall not require a borrower to deposit into any escrow account, created in connection with a federally related mortgage loan, more than the following amounts:
>
> > Charges during the life of the escrow account. Throughout the life of an escrow account, the servicer may charge the borrower a monthly sum equal to one-twelfth ( 1 /12 ) of the total annual escrow payments which the servicer reasonably anticipates paying from the account. In addition, the servicer may add an amount to maintain a cushion no greater than one sixth ( 1 /6 ) of the estimated total annual payments from the account. However, if a servicer determines through an escrow account analysis that there is a shortage or deficiency, the servicer may require the borrower to pay additional deposits to make up the shortage or eliminate the deficiency, subject to the limitations set forth in § 1024.17(f).

12 C.F.R. § 1024.17(c)(1)(ii).

United States District Court
Northern District of California

United States District Court
Northern District of California

**REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)**

ANNUAL ESCROW ACCOUNT STATEMENTS

Plaintiff Mayer must prove by a preponderance of the evidence that Onity violated RESPA by failing to comply with 12 C.F.R. § 1024.17(i), which requires a servicer to submit an annual escrow account statement to the borrower within 30 days of the completion of the escrow account computation year, with certain requirements included.

The relevant statutory language states:

> **12 C.F.R. § 1024.17(i)** – Annual escrow account statements. For each escrow account, a servicer shall submit an annual escrow account statement to the borrower within 30 days of the completion of the escrow account computation year. The servicer shall also submit to the borrower the previous year's projection or initial escrow account statement. The servicer shall conduct an escrow account analysis before submitting an annual escrow account statement to the borrower.
>
> (1) Contents of annual escrow account statement. The annual escrow account statement shall provide an account history, reflecting the activity in the escrow account during the escrow account computation year, and a projection of the activity in the account for the next year. In preparing the statement, the servicer may assume scheduled payments and disbursements will be made for the final 2 months of the escrow account computation year. The annual escrow account statement must include, at a minimum, the following (the items in paragraphs (i)(1)(i) through (i)(1)(iv) must be clearly itemized):
>
> (i) The amount of the borrower's current monthly mortgage payment and the portion of the monthly payment going into the escrow account;
>
> (ii) The amount of the past year's monthly mortgage payment and the portion of the monthly payment that went into the escrow account;
>
> (iii) The total amount paid into the escrow account during the past computation year;
>
> (iv) The total amount paid out of the escrow account during the same period for taxes, insurance premiums, and other charges (as separately identified);
>
> (v) The balance in the escrow account at the end of the period;
>
> (vi) An explanation of how any surplus is being

United States District Court
Northern District of California

handled by the servicer;

(vii) An explanation of how any shortage or deficiency is to be paid by the borrower; and

(viii) If applicable, the reason(s) why the estimated low monthly balance was not reached, as indicated by noting differences between the most recent account history and last year's projection. Public Guidance Documents entitled "Annual Escrow Account Disclosure Statement—Format" and "Annual Escrow Account Disclosure Statement—Example" set forth an acceptable format and methodology for conveying this information.

(2) No annual statements in the case of default, foreclosure, or bankruptcy. This paragraph (i)(2) contains an exemption from the provisions of § 1024.17(i)(1). If at the time the servicer conducts the escrow account analysis the borrower is more than 30 days overdue, then the servicer is exempt from the requirements of submitting an annual escrow account statement to the borrower under § 1024.17(i). This exemption also applies in situations where the servicer has brought an action for foreclosure under the underlying federally related mortgage loan, or where the borrower is in bankruptcy proceedings. If the servicer does not issue an annual statement pursuant to this exemption and the loan subsequently is reinstated or otherwise becomes current, the servicer shall provide a history of the account since the last annual statement (which may be longer than 1 year) within 90 days of the date the account became current.

(3) Delivery with other material. The servicer may deliver the annual escrow account statement to the borrower with other statements or materials, including the Substitute 1098, which is provided for Federal income tax purposes.

(4) Short year statements. A servicer may issue a short year annual escrow account statement ("short year statement") to change one escrow account computation year to another. By using a short year statement a servicer may adjust its production schedule or alter the escrow account computation year for the escrow account.

(i) Effect of short year statement. The short year statement shall end the "escrow account computation year" for the escrow account and establish the beginning date of the new escrow account computation year. The servicer shall deliver the short year statement to the borrower within 60 days from the end of the short year.

(ii) Short year statement upon servicing transfer. Upon the transfer of servicing, the transferor (old) servicer shall submit a short year statement to the borrower within 60 days of the effective date of transfer.

(iii) Short year statement upon loan payoff. If a borrower pays off a federally related mortgage loan during the escrow account computation the servicer shall submit a short year statement to the borrower within 60 days after receiving the payoff funds.

United States District Court
Northern District of California

**REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)**

STATUTORY DAMAGES

If you find that Onity has violated one or both of its RESPA duties as outlined above, you will need to determine if Mayer has demonstrated that Onity has engaged in a pattern or practice of noncompliance with the requirements of RESPA. A pattern or practice means a standard or routine way of operating. There is no magic number of violations that create a pattern or practice of noncompliance.

If you find that Mayer proved that Onity violated at least one of its RESPA duties and engaged in a pattern or practice of noncompliance, then you must find in favor of Mayer, and against Onity on the RESPA claim.

If you find that Mayer has not established that Onity violated at least one of its RESPA duties or that Onity did not engage in a pattern or practice of noncompliance, then you must find in favor of Onity, and against Mayer on the RESPA claim.

United States District Court
Northern District of California

**ATTACHMENT B**

**TENTATIVE JURY VERDICT FORM – RESPA CLAIM**

1. Did Plaintiff prove by a preponderance of the evidence that Onity violated RESPA by failing to comply with 12 C.F.R. § 1024.17(c)(1)(ii) or 12 C.F.R. § 1024.17(i)?

Yes ________ No ________

If you answered "Yes" to Question 1, then answer Question 2.
If you answered "No" to Question 1, then do not answer the remaining questions, and have the Foreperson sign the Verdict Form and return your answer to the Court.

2. Did Plaintiff prove by a preponderance of the evidence that Onity engaged in a pattern or practice of noncompliance with the requirements of RESPA?

Yes ________ No ________