UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORY MAYER,

Plaintiff,

v.

ONITY MORTGAGE CORPORATION f/k/a PHH MORTGAGE CORPORATION,

Defendant.

Case No. 25-cv-00182-NW

**ORDER REGARDING USE OF EXPERT TESTIMONY AT TRIAL, REMAINING ISSUES FOR TRIAL, AND FURTHER BRIEFING**

Re: ECF Nos. 225, 226

On September 22, 2026, the Court held a hearing to discuss the proposed jury instructions for Plaintiff's Real Estate Settlement Procedures Act ("RESPA") claim (claim 8), and to address the potential use of expert testimony at trial. ECF No. 223. The parties could not reach agreement regarding the RESPA jury instructions, or the need for expert testimony. As to the former issue, the Court noted it would issue an Order providing the RESPA jury instructions, and did so on September 25, 2026. *See* ECF No. 224. As to the latter issue, the Court understood that Plaintiff believed expert testimony would be relevant to the RESPA claim. Defendant disagreed. The Court ordered the parties to meet and confer as to that issue (i.e., whether expert testimony would be instructive and relevant for the RESPA claim only), and to file either a stipulation on the scope of expert testimony or a brief of no more than four pages with their respective positions. *Id.* The parties did not reach an agreement, and instead each filed a short statement. *See* ECF Nos. 225, 226.

After reviewing Plaintiff's statement regarding expert testimony, ECF No. 226, it is clear that Plaintiff misunderstands the scope of what is left in his case for trial following this Court's previous Orders, including its Order on Defendants' motion for summary judgment (ECF No. 200,

"MSJ Order"), and the Court's Order regarding the RESPA jury instructions (ECF No. 224, "RESPA Order"). Given that trial is imminent, the Court issues this Order to confirm and clarify the limited scope of the upcoming trial. Consistent with that scope, the Court finds that expert testimony will not be instructive to the narrow issues that remain for the jury.

This case has a long history. The Court discussed a subset of that history in its MSJ Order that granted summary judgment for Defendants on all but two of Plaintiff's claims (Claims 6 and 8). *See* MSJ Order. For ease of reference, the Court quotes that language here:

> Briefly for context here, in March 2006, Mayer borrowed $456,000.00 from HSBC as a mortgage loan to purchase his home in Santa Cruz County, California. PHH was the loan servicer of Mayer's mortgage when Mayer filed this action.[1] In November 2016, after Mayer missed a series of mortgage payments, HSBC foreclosed on Mayer's property and took title. Mayer filed a civil action in Santa Cruz County Superior Court in January 2017 to prevent the foreclosure, arguing that he had in fact been making his required payments and was not in default ("2017 Lawsuit"). Following negotiations between the parties and their counsel, HSBC cancelled the foreclosure and restored title to Mayer in October 2019. A few months later, Mayer, HSBC, and PHH resolved the 2017 Lawsuit by executing a confidential Settlement Agreement ("Settlement Agreement").
>
> The Settlement Agreement contains a release of all known and unknown claims against Defendants up to and including Plaintiff's execution of the Settlement Agreement on March 4, 2020. The settlement had four parts: (1) rescission of the foreclosure by Defendants; (2) reinstatement of the loan by Plaintiff, supported by a January 29, 2020 reinstatement quote ("Reinstatement Quote"); (3) payment of settlement funds by Defendants [$158,125.89]; and (4) adjustment of Plaintiff's credit reporting for the loan by Defendants.
>
> The current dispute arises out of the interpretation of one element of the settlement – whether an amount of $33,120.95 was to be treated as a "lien" as labelled in the Reinstatement Quote, or as a "credit" as labelled in the Settlement Agreement. Defendants contend that the $33,120.95 was intended to be a part of Plaintiff's repayment obligations, and that the difference in the label was simply "a mistake in drafting the Settlement Agreement when incorporating the Reinstatement Quote." ECF No. 160 at 11. Plaintiff argues that the $33,120.95 should be treated as a "credit" per the language of the Settlement Agreement, and that amount should be discharged from his loan. ECF No. 172 at 10. This dispute led to years of additional disputes and negotiations between the parties, culminating with Plaintiff initiating this case in state court in August 2024. Defendants removed the case to this District in March 2025.
>
> Fast forwarding to recent events, on April 22, 2026,

[1] PHH (now, Onity) is the successor company to Mayer's original loan servicer, Ocwen Loan Servicing, LLC.

> Defendants voluntarily discharged the entirety of Plaintiff's loan. A few days later, Defendants recorded a substitution of trustee and deed of reconveyance for the deed of trust. Plaintiff's loan had an undisputed principal balance of $447,655.82 at the time of discharge, plus accrued interest, fees, property tax advances, and recording fees for a total value of approximately $628,718.49. Plaintiff now owns his home outright, and has been relieved of substantial monetary obligations related to his property. For example, since the Settlement Agreement, Defendants also paid $37,523.88 in property taxes on Plaintiff's property. During the July 14, 2026 hearing, Defendants confirmed on the record that the loan has been rescinded, the deed of trust has been reconveyed, and that Defendants had the legal authority to undertake such steps.

MSJ Order at 1-3. This history, along with a brief description of what remains of Plaintiff's two claims (Claims 6 and 8), will serve as the statement of the case that will be read to the jury at the start of trial.

In its MSJ Order, the Court found that only *portions* of Plaintiff's claims 6 and 8 could proceed to trial. *See* Compl., ECF No. 34. Consistent with its previous Orders, the Court addresses the scope of each remaining claim.

**Claim 6: Intentional Interference with Contract.** In his complaint, Plaintiff alleges several forms of harm by Defendant. Compl. ¶¶ 132-136. Specifically, Plaintiff contends that he was harmed by not being able to refinance his mortgage, causing him to be stuck paying a higher interest rate; he alleges he suffered emotional damages and additionally seeks punitive damages. *Id*. ¶¶ 132, 134-136.

In the MSJ Order, the Court found that Plaintiff could proceed to trial on a limited aspect of claim 6 as follows:

- Plaintiff cannot put forward any evidence regarding being denied credit or refinancing opportunities. The Court held that "Plaintiff's theory of damages is speculative and entirely unsupported by the record as Plaintiff has not put forth *any* evidence to show that he was ever denied credit or denied opportunities to refinance at a lower interest rate as a result of Defendants' alleged improper conduct." MSJ Order at 5. Accordingly, Plaintiff may not bring in evidence or testimony regarding his claims for damages based on these allegations.
- Plaintiff cannot put forward any evidence regarding punitive damages. The Court

held that "even drawing all inferences in favor of Plaintiff, neither the undisputed nor disputed facts establish that Defendants willfully engaged in despicable, malicious, oppressive, or fraudulent conduct in conscious disregard of Plaintiff's rights." *Id.*

As a result, for claim 6, the only issues that remain are whether Plaintiff suffered emotional damages and incurred attorney's fees after March 4, 2020, as a result of Defendants' intentional interference with Plaintiff's contracts (i.e., the promissory note, deed of trust, and loan modification) after that date. *See* MSJ Order at 5 ("Because there is a dispute of material fact regarding both the emotional damages Plaintiff experienced, *see* SUMF at 10-11, and the attorney's fees incurred, *see* SUMF at 16, 18, the Court finds summary judgment is not appropriate.").

**Claim 8: Violation of RESPA and Regulation X.** Plaintiff may recover an amount not to exceed $2,000 in statutory damages if he can prove that (1) Defendant failed to comply with RESPA and (2) that Defendant's failure was part of a pattern and practice of noncompliance. Consistent with Plaintiff's complaint, Plaintiff may only present evidence for Defendants' alleged RESPA violations that occurred from July 2020 through February 2022 (20 monthly mortgage statements).[2] Compl. ¶ 148. The first question left for the jury is: "Did Plaintiff prove by a preponderance of the evidence that Onity violated RESPA by failing to comply with 12 C.F.R. § 1024.17(c)(1)(ii) or 12 C.F.R. § 1024.17(i)?" RESPA Order at 15. If the jury answers yes, then the second question the jury must answer is: "Did Plaintiff prove by a preponderance of the evidence that Onity engaged in a pattern or practice of noncompliance with the requirements of RESPA?" *Id.*

In his brief regarding his alleged need for expert testimony, Plaintiff first contends an

[2] In paragraph 149 of his complaint Plaintiff also alleges that Defendant violated RESPA by "sending inaccurate and incorrect escrow accounting information" in an "analysis dated February 16, 2024 which incorrectly shows an escrow surplus of $7,386.84." The parties did not directly address this point in the briefing on the motion for summary judgment, and it is not clear from the complaint how or why this is potentially a RESPA violation. The Court has not yet addressed the parties' motions in liminie ("MILs") but assumes that issue will either be resolved by the parties prior to the hearing on the MILs or will be briefed by the parties in the MILs.



United States District Court
Northern District of California

expert is necessary to explain whether escrow impounds for property taxes are permitted only under the first sentence of § 1024.17(c)(1)(ii), or whether those impounds are also permitted to recover a deficiency and shortage under the latter portion of the statute. ECF No. 226 at 1-2 ("Plaintiff's position is that escrow impounds are only allowed on the current property taxes under the first sentence of §1024.17(c)(1)(ii), but PHH claims the allowed amount is under the second sentence[3] on account of recovering a deficiency and shortage."). To the extent this issue is in dispute, the parties must meet and confer to either resolve the disputed issue via stipulation or provide short supplemental briefs (not to exceed three pages) to the Court by no later than **Friday, November 13, 2026.**

Regardless, Plaintiff is incorrect that this potential dispute is a basis for expert testimony. If there is a dispute, it is a legal one, and it will be for the Court to decide.

Finally, Plaintiff asserts that he requires expert testimony for his argument regarding Defendants' alleged pattern and practice of noncompliance. The Court disagrees. This is a straightforward issue. If the jury finds that Defendants violated RESPA, they then need to determine whether Plaintiff proved by a preponderance of the evidence that Defendants engaged in a pattern and practice of noncompliance. The Court already provided the parties with a comprehensive order and jury instruction on this issue (including defining pattern and practice), *see* RESPA Order at 13, and Plaintiff has provided no clear explanation of why or how an expert would be relevant or would otherwise aid the jury in answering this second question.

/ / /

/ / /

/ / /

/ / /

/ / /

[3] Plaintiff refers to the second sentence of §1024.17(c)(1)(ii), but in context it appears Plaintiff means the third sentence.

**CONCLUSION**

Plaintiff's requests for expert testimony are DENIED. As noted above, the parties shall meet and confer regarding Plaintiff's position on §1024.17(c)(1)(ii) by November 13, 2026. By November 13, 2026, the parties shall either indicate to the Court that they have reached an agreement on the legal issue or shall provide a supplemental briefs of no more than three pages on the issue.

**IT IS SO ORDERED.**

Dated: November 12, 2026

Noël Wise
United States District Judge